# UNITED STATES DISTRICT COURT

for the

Western District of Michigan

Southern Division

|  |  |  |
|---|---|---|
|  |  | Case No.    1:26-cv-10 |
| NICOLE GOODWIN | ) | Honorable: |
| *Plaintiff* | ) |  |
|  | ) |  |
| **-v-** | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) | JURY TRIAL DEMANDED |
|  | ) |  |
|  | ) |  |
| GOODMAN FROST PLLC | ) |  |
| ROBERT J. GOODMAN, TIMOTHY J FROST, | ) |  |
| AND ELLA E.M. BROWN CHARITABLE CIRCLE | ) |  |
| DBA OAKLAWN HOSPITAL | ) |  |
| *Defendants* | ) |  |

## **COMPLAINT**

NOW COMES Nicole Goodwin ("Plaintiff"), by and through her counsel Lighthouse Litigation, PLLC, complaining of the conduct of Goodman Frost, PLLC, Robert J. Goodman, Esq., Timothy J. Frost, Esq. and Ella E.M. Brown Charitable Circle DBA Oaklawn Hospital. ("Oaklawn") (Collectively, "Defendants") as follows:

## <u>NATURE OF THE ACTION</u>

1.      Plaintiff brings this action against the Defendants pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 and the Michigan Collection Practices Act ("MCPA") for Defendant Goodman Frost PLLC, Mr. Goodman, and Mr. Frost's unlawful conduct. Defendants Goodman Frost PLLC, Mr. Goodman, and Mr. Frost conspired with Defendant Oaklawn in attempting to collect an alleged $11,974.46, plus recoverable costs, interest, and/or fees, which it knew were not the Plaintiff's full responsibility.  In addition, all Defendants had actual knowledge that the debt was barred by a contract Oaklawn held with Cigna, and Plaintiff was a third-party beneficiary of the contract.  Yet after having knowledge communicated to Defendant Goodman Frost PLLC, Mr. Goodman, and Mr. Frost verbally and in writing, they filed litigation in 10th District Court, Calhoun County, Michigan, using false and misleading statements to the state court and consumers in the state court proceeding coupled with an unfair practice to attempt to obtain a judgment, and thereby ratifying their violations by filing an amended complaint.

2.      There is a related action currently pending between the parties, ELLA E.M. BROWN CHARITABLE CIRCLE V GOODWIN, 2025-25-05613-GC (10th District Court – Calhoun County), arising from the same date of service, billing, and collection practices at issue in this case. The matter is pending and has not been finally adjudicated.

3.      On December 8, 2025, Plaintiff Nicole Goodwin offered a stipulation to enter judgment under MCR 2.405 in the State Court Action against her:

   a.   Sum Certain and Inclusivity. Judgment shall be entered in favor of Plaintiff and against Defendant in the total amount of $900.00 (comprised of $150.00 emergency co-pay + $750.00 deductible.) This amount is inclusive of all cost and interest then accrued as of the date of the service of this offer." (Exhibit 1)

b.  Scope limited to Plaintiff's claims only. This offer  resolves only the claims asserted

by Plaintiff against Defendant in the operative complaint in this action. It does not

resolve, affect, waive, or release any counterclaim, cross-claims, third-party claims,

or claims by or against any non-parties." (Exhibit 1)

4.    On December 17, 2025, Defendant Goodman Frost, PLLC filed their Acceptance of

the offer of judgment. (Exhibit 2)

5.    On December 23, 2025, a Proposed Judgment was filed with the court, which was

approved to form and substance by both parties. (Exhibit 3)

6.    The case is just waiting for the court to sign the proposed judgment.

7.    Plaintiff expressly alleges and affirms that this action does not challenge, disturb,

invalidate, or seek relief from the stipulated judgment entered in the related state-court matter, Ella

E.M. Brown Charitable Circle d/b/a Oaklawn Hospital v. Goodwin, Case No. 25-05613-GC (10th

District Court, Calhoun County, Michigan), resolving the sum certain of $900.00.

### Res Judicata / Claim-Splitting Disclaimer

8.    Plaintiff expressly alleges that this action is not barred by the doctrine of res judicata

or claim preclusion. Under Sixth Circuit precedent, a prior state-court judgment precludes a

subsequent federal action only where there is a final judgment on the merits involving the same

parties or their privies and the same claim or cause of action, meaning claims that were actually

litigated or could have been litigated in the prior proceeding.

9.     The related state-court collection action resolved only a narrow sum-certain debt

claim and did not adjudicate, and could not have adjudicated, Plaintiff's federal statutory claims under

the Fair Debt Collection Practices Act, her claims for statutory damages, or her independent

common-law tort claims arising from Defendants' debt-collection conduct, misuse of judicial

process, and unauthorized disclosure of confidential medical information. Plaintiff seeks redress here

for distinct injuries and violations that were not decided, and were not capable of full and fair adjudication, in the limited-jurisdiction state-court collection proceeding. Accordingly, because the causes of action, rights vindicated, and damages sought in this case are separate and distinct from those resolved by the stipulated judgment in the state-court action, claim preclusion and issue preclusion do not apply under Sixth Circuit or Michigan law.

## **INTRODUCTION**

10.    This action arises from a calculated and predatory scheme by a medical provider and its debt-collection agents to extract payment for medical charges that were contractually barred and legally unenforceable. Plaintiff Nicole Goodwin sought emergency medical treatment at Oaklawn Hospital, only to be subjected to a series of administrative failures, including negligent registration and a failure to timely bill her insurance provider, Cigna. Despite having actual knowledge that their own contractual breaches prohibited them from billing the patient, Defendants Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost initiated a coercive litigation campaign in Michigan state court to collect nearly $12,000 in unauthorized charges. A complaint must serve as a persuasive opening salvo that informs the court of the nature of the dispute and the specific relief sought.

11.    Central to this action is the unauthorized and offensive disclosure of Plaintiff's highly sensitive and protected medical records. Without Plaintiff's consent, authorization, or a valid court order, Defendant Oaklawn Hospital intentionally transmitted Plaintiff's complete medical history—including diagnoses, laboratory results, and provider notes—to a third-party law firm engaged in debt collection. This disclosure far exceeded the information reasonably necessary to validate a debt and constituted a flagrant intrusion into Plaintiff's private affairs. The act of disclosure itself is a distinct

and actionable event, separate from the underlying billing dispute, and serves as the basis for Plaintiff's common-law privacy and confidentiality claims.

12.    Through this litigation, Plaintiff seeks to hold Defendants accountable for systematic violations of the Fair Debt Collection Practices Act (FDCPA) and the Michigan Collection Practices Act (MCPA). The conduct at issue involves the misuse of the judicial process to pressure a consumer into paying a non-existent debt and the subsequent ratification of these violations through the filing of an amended complaint. By filing meritless pleadings and misleading the state court regarding the enforceability of the debt, Defendants engaged in an abuse of process and silent fraud. This complaint provides the required short and plain statement of the claims showing that Plaintiff is entitled to relief for the economic and emotional harm caused by these deceptive practices.

13.    Ultimately, this lawsuit is brought to vindicate Plaintiff's rights as a consumer and a patient. Plaintiff seeks compensatory damages for the significant emotional distress and financial burden of defending against bad-faith litigation, statutory damages under federal and state collection laws, and exemplary damages for the willful and reckless disregard of her privacy and legal protections. By bringing these claims, Plaintiff intends to ensure that the framework of the litigation clearly establishes the illegality of Defendants' concerted efforts to circumvent insurance contracts through judicial coercion and unauthorized medical disclosures

## **PARTIES**

14.    Plaintiff Goodwin is a natural person who lives and works in Calhoun County, Michigan, in the district.  Plaintiff Goodwin is a consumer.

15.    Goodman Frost PLLC advertises "Unparalleled reputation for honesty and integrity; governed by FDCPA guidelines, and we maintain its standards unequivocally."[1] Goodman Frost PLLC is a professional limited liability company organized under the laws of the State of Michigan,

---

[1] https://www.goodmanfrost.com/, Last Accessed December 30, 2025

and its principal place of business is located at 29100 Northwestern Highway, Suite 405, Southfield, MI 48034.

16.     Goodman Frost, PLLC is a law firm/office. Its Registered Resident Agent is Robert J. Goodman.

17.     Goodman Frost, PLLC represents creditors against consumers in state court litigation in the State of Michigan.

18.     Goodman Frost, PLLC is a "debt collector" under the FDCPA. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013); see also *Kistner v. Law Office of Michael P. Margelefsky*, LLC, 518 F.3d 433, 438 (6th Cir. 2008).

19.     Goodman Frost, PLLC states in its letters to debtors, "**GOODMAN FROST, PLLC, is a debt collector.**" (Exhibit 4).

20.     Robert J. Goodman is a natural person, not known to be a member of the Armed Services. He is the managing partner at Goodman Frost, PLLC.

21.     Robert J. Goodman lives in Royal Oak, MI, in Oakland County.

22.     Defendant Goodman is a "debt collector" under the FDCPA.  See *Heintz v. Jenkins*, 514 U.S. 291 (1995); see also *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013); see also *Kistner v. Law Office of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008).

23.     Timothy J. Frost is a natural person, not known to be a member of the Armed Services. He is a partner of Goodman Frost, PLLC.

24.     Defendant Frost is an "aggressive and tenacious lawyer" at Goodman Frost.[2]

25.     Defendant Frost is a "debt collector" under the FDCPA.  See *Heintz v. Jenkins*, 514 U.S. 291 (1995); see also *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013); see also *Kistner v. Law Office of Michael P. Margelefsky*, LLC, 518 F.3d 433, 438 (6th Cir. 2008).

---

[2] https://www.goodmanfrost.com/about/

26.    MCL 445.251(g)(xi) includes within the definition of "regulated person" an "attorney handling claims and collection on behalf of a client and in the attorney's own name."

27.    Defendants Goodman Frost and Frost each are a "regulated person" under the MCPA. *Misleh v. Timothy E. Baxter & Assocs.*, 786 F. Supp. 2d 1330, 1338 (E.D. Mich. 2011).

28.    Defendant ELLA E. M. BROWN CHARITABLE CIRCLE dba Oaklawn Hospital, is a Non-profit Corporation organized under the Laws of the State of Michigan and its principal place of business is located at 200 N MADISON ST, MARSHALL, MI 49068. The resident Agent Name is Gregg Beeg.

29.    Goodman Frost, PLLC holds itself out to the public that it "has perfected the collection process."[3]



30.    Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

---

[3] https://www.goodmanfrost.com/innovation/

31.     Joinder of Plaintiff's claims against Defendants is proper under Fed. R. Civ. P. 20(a)(2) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and common questions of law or fact will arise

## JURISDICTION AND VENUE

32.     This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692, 28 U.S.C. §§1331, as the action arises under the laws of the United States

33.     In addition, this Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

34.     The state-law claims arise from the same nucleus of operative facts as the federal claims, involve overlapping evidence and witnesses, and are expected to be resolved in a single judicial proceeding. The exercise of supplemental jurisdiction is not barred by 28 U.S.C. § 1367(b), and none of the discretionary grounds for declining jurisdiction under 28 U.S.C. § 1367(c) applies.

35.     Venue and personal jurisdiction over the Defendants in this District:

   a.   Plaintiff resides in the District.

   b.   Defendant Goodman Frost PLLC, Mr. Goodman, and Mr. Frost filed litigation in Calhoun County 10th District Court

   c.   Defendants filed pleadings and motions in the District.

   d.   Defendant Oaklawn Hospital maintains an office at 200 N Madison St, Marshall, MI 49068

   e.   Defendant's conduct at issue occurred within the District.

36.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Defendants previously initiated litigation against Plaintiff in this District, filed pleadings and motions here, and caused judicial proceedings to occur here. Plaintiff's claims arise directly out of Defendants' conduct in that prior action.

## **FACTUAL ALLEGATIONS**

37.    Plaintiff sought emergency medical treatment from Defendant Oaklawn Hospital on March 20, 2023.

38.    Plaintiff at the time of services provided Defendant Oaklawn Hospital with her information, including her mailing address, phone number, email address, and insurance information card.

39.    Plaintiff was insured by an Employee Retirement Income Security Act ("ERISA") employer-provided insurance plan underwritten by CIGNA.

40.    Defendant Oaklawn Hospital employees or agents, through negligence or ineptitude, did not properly register Plaintiff Goodwin during the registration process.

41.    During the registration process, the employee or agent of Defendant Oaklawn Hospital made a typographical error in Plaintiff's home address.

   a.   As Entered 863 Gorsline Rd, Battle Creek, MI 49014

   b.   Correct address was: 8631 Gorsline Rd, Battle Creek, MI 49014

42.    The second error during the registration process was that Defendant Oaklawn Hospital did not properly update Plaintiff Goodwin insurance information in their system.

43.    Defendant Oaklawn Hospital does not employ its own emergency room doctors; it contracts with Kalamazoo Emergency Associates ("KEA"), a Professional Corporation of a

physician-owned group. Kalamazoo Emergency Associates and Defendant Oaklawn bill consumer patients differently.

44.     Kalamazoo Emergency Associates billed CIGNA for the services on May 18, 2023, and processed and paid the claim on May 22, 2023. (Exhibit 5 - Redacted).

45.     Because Kalamazoo Emergency Associates timely billed CIGNA the claim was paid and processed under the plan.

46.     Defendant Oaklawn Hospital employees or agents through negligence or ineptitude during the registration process did not properly notify Plaintiff Goodwin of any outstanding charges.

47.     Defendant Oaklawn Hospital generated Account #42192 where they billed for $11,974.46. (Exhibit 6)

48.     Defendant Oaklawn Hospital claims to have generated and mailed at least three statements to the "863 Gorsline Rd" address. (Exhibit 6)

49.     Plaintiff Goodwin never received those notices.

50.     Defendant Oaklawn Hospital, its employees, or agents should have received return mail from the United States Postal Service ("USPS") stating that there was no such address.

51.     Defendant Oaklawn Hospital, its employees, or agents should have acted in a timely manner when they received the undeliverable mail and attempted to reach out to Defendant Goodwin, by email, phone, text, or electronic communication in their patient portal to seek updated address and insurance information.

52.     Plaintiff Goodwin had no bills, communications, or knowledge that any balance was owed by her until September 13, 2024, which was 1 year, 5 months, and 24 days after she received service, or 543 days.

53.    On September 13, 2024, Defendant Goodman Frost PLLC sent a letter, Reference Number: 24E01226. (Exhibit 7). The letter was sent to the Plaintiff Goodwin, at the proper address, "8631 Gorsline Rd, Battle Creek, Michigan."

54.    This letter stated that Plaintiff Goodwin had until October 25, 2024, to dispute the debt by contacting Defendant Goodman Frost PLLC's office. (Exhibit 4).

55.    Plaintiff Goodwin reached out to Defendant Goodman Frost PLLC and started communication by phone and email with Defendant Goodman Frost PLLC and Defendant Goodman personally.

56.    Plaintiff Goodwin stated that she was shocked that there was a bill and did not understand because she had insurance and had not been given any prior notice.

57.    Defendant Goodman informed her that it had not been billed to insurance and that Plaintiff Goodwin should work on making it billed to insurance.

58.    Defendant Goodman agreed to send Plaintiff Goodwin a copy of the detailed invoice.

59.    Upon receiving the invoice dated September 30, 2024, statement # 21328622, it showed the address listed as "863 Gorsline Rd." which Plaintiff Goodwin brought to the attention of Defendant Goodman and the Defendant firm Goodman Frost PLLC. (Exhibit 6)

60.    During phone calls between Plaintiff Goodwin and Defendant Goodman, several ways to correct the insurance billing problem were discussed.  Defendant Goodman entered into a verbal contract that provided Plaintiff Goodwin would keep in touch with his office every two weeks, and worked to have the bill submitted to insurance, the office would take no action on the debt, and would not sue Plaintiff Goodwin.

61.    Defendant Oaklawn created a "Continuity of Care Document" on September 25, 2024, and transmitted the document to Defendant Goodman Frost PLLC, the protected health

information containing all notes of the March 20, 2023, for Plaintiff Goodwin. (Exhibit 7 – Redacted copy)

62.    The Continuity of Care Document is a standardized, electronic summary of a patient's essential health information, used to share data between different healthcare providers for better care coordination, especially during transitions like hospital discharge or specialist referrals, containing history, medications, allergies, and problem lists in a human-readable yet machine-processable XML format.

63.    Continuity of Care Document is a medical record protected under HIPAA.

64.    That document provided

    a.   Date of Service

    b.   Demographics, age, date of birth, sex, etc

    c.   Medical history

    d.   Current treatment, laboratory, radiology notice, treating provider notes, systems, diagnosis, physical notes, laboratory order, radiology orders, discharge information, provider information

65.    Defendant Goodman provided a copy of the invoice and medical records from the visit via email. (Exhibit 6 & Exhibit 7)

66.    Plaintiff Goodwin did not provide any release for Defendant Goodman to have access to her protected medical records.

67.    Plaintiff Goodwin did not consent to having her medical records sent over an unsecured, unencrypted email.

68.    Defendant Goodman Frost, Defendant Goodman, and Defendant Frost are sending protected health information ("PHI") via unsecured email, subjecting consumers to possible breaches.

69.    Standard email lacks 100% encryption, leaving data vulnerable to interception, making it a HIPAA violation for PHI without extra safeguards.

70.    Upon Information and belief, Defendant Goodman Frost PLLC lacks proper access controls, audit controls, integrity controls, ID authentication, and transmission security mechanisms.

71.    The HIPAA encryption requirements only occupy a small section of the Technical Safeguards in the HIPAA Security Rule (45 CFR §164.312), yet they are some of the most significant requirements in terms of maintaining the confidentiality of electronic Protected Health Information (ePHI) and for determining whether a data breach is a notifiable incident under the HIPAA Breach Notification Rule.

72.    In addition to being significant requirements, when encryption solutions are implemented that comply with NIST SP 800-111 for data at rest and NIST SP 800-52 for data in transit, the encryption solutions contribute toward compliance with a recognized security framework as required by the 2021 amendment to the HITECH Act (HR 7898).

73.    In the course of providing that treatment, Oaklawn obtained Plaintiff's highly sensitive and confidential medical information, including but not limited to diagnoses, treatment notes, provider observations, laboratory results, radiology records, and discharge information.

74.    Oaklawn owed Plaintiff a duty under Michigan common law to maintain the confidentiality of Plaintiff's medical information and to refrain from disclosing such information except as authorized by law or by Plaintiff's informed consent.

75.    Without Plaintiff's authorization, without Plaintiff's consent, and without a valid court order or subpoena, Oaklawn intentionally transmitted Plaintiff's complete medical records from the March 20, 2023, encounter to Defendant Goodman Frost, PLLC, a law firm engaged in debt-collection activities.

76.    The records disclosed went far beyond any information reasonably necessary to identify, bill, or validate an alleged medical debt, and instead included detailed clinical and treatment information wholly unrelated to collection purposes.

77.    Plaintiff did not execute a HIPAA authorization or any other written release permitting Oaklawn to disclose her full medical records to a third-party debt collector or collection attorney.

78.    The disclosure of Plaintiff's complete medical records was not required to collect, bill, or verify the existence, amount, or status of any alleged debt.

79.    Plaintiff Goodwin provided Defendant Goodman Frost, PLLC, through Robert J. Goodman, copies of her insurance card and insurance information so the item could be billed.

80.    Defendant Oaklawn Hospital submitted the claim to Cigna on December 12, 2024. (Exhibit 8).

81.    Cigna Health Care Processed Claim number XXXXXXXXX2666 on December 14, 2024. (Exhibit 8).

82.    Cigna Health Care denied the claim on December 14, 2024. (Exhibit 8).

83.    In the Explanation of Benefits ("EOB") Cigna Showed that Plaintiff Goodwin did not owe any amount $0.00.

84.    The Cigna EOB further stated a reason

    a.    "AO - HEALTH CARE PROFESSIONAL: **THIS CLAIM WAS NOT RECEIVED ON TIME, SO WE CANNOT PAY THE CLAIM. YOUR CONTRACT WITH CIGNA DOES NOT ALLOW YOU TO BILL THE PATIENT AFTER THE TIME LIMIT**. IF YOU DID SUBMIT THE CLAIM ON TIME, PLEASE RESEND THE CLAIM ALONG WITH PROOF OF TIMELY SUBMISSION TO THE ADDRESS ON THE PATIENT'S ID CARD. PLEASE REFER TO YOUR CONTRACT FOR INFORMATION ON CLAIM FILING DEADLINES." (emphasis added) (Exhibit 8).

85.    Upon Information and Belief, Defendant Oaklawn Hospital received the same copy of the EOB that Plaintiff Goodwin received.

86.    Upon Information and Belief, Defendant Oaklawn Hospital had appeal rights they could have used; if they felt Cigna's denial was not proper, they could have appealed, they did not.

87.    Plaintiff Goodwin provides the EOB to Defendant Goodman Frost, PLLC via Defendant Robert J. Goodman, a copy of the EOB.

88.    After the Cigna EOB was provided to Defendant Goodman, Plaintiff Goodwin and Defendant Goodman had a phone call.

89.    Plaintiff Goodwin stated that conversations with Cigna Claims and the EOB she got stated that she owed nothing for this bill.

90.    Plaintiff Goodwin had been told that, because the hospital failed to timely bill the matter, she had no liability for the service.

91.    When Plaintiff Goodwin told Defendant Goodman this, she was told, That's not how I understood it and he went to law school, and she did not, and he had been practicing law for almost 30 years.

92.    Plaintiff Goodwin felt the tone of communication change to being belittled, insulted, and feeling like she was attacked.

93.    As a direct result of Defendants' conduct, Plaintiff Goodwin experienced persistent and escalating stress beginning in or about September 2024 and continuing through the pendency of Defendants' collection and litigation activities. Upon Information and belief, Defendant Goodman Frost, PLLC, contacted Defendant Oaklawn Hospital about the contract between Oaklawn Hospital and Cigna.

94.    Plaintiff experienced ongoing anxiety related to the threatened and actual filing of litigation, including fear of an improper judgment, wage garnishment, damage to credit, and inability to meet basic financial obligations.

95.    Plaintiff suffered significant sleep disruption, including difficulty falling asleep, frequent nighttime waking, and early-morning waking caused by intrusive thoughts about Defendants' demands and legal threats.

96.    Plaintiff experienced physical manifestations of emotional distress, including nausea, gastrointestinal upset, headaches, of heightened collection activity and court-related communications.

97.    Plaintiff experienced persistent worry and rumination that interfered with her ability to concentrate at work and perform ordinary daily tasks.

98.    Plaintiff suffered feelings of humiliation, helplessness, and fear as a result of being sued for amounts she did not believe she legally owed.

99.    Plaintiff experienced increased irritability, emotional exhaustion, and loss of enjoyment of normal activities during the period Defendants pursued collection and litigation.

100.    Plaintiff expended substantial time and emotional energy responding to Defendants' communications, gathering documents, contacting her insurer, and preparing to defend herself against the threatened loss of property and financial security.

101.    Plaintiff's emotional distress was not fleeting or trivial but persisted over an extended period and intensified as Defendants escalated their collection efforts and initiated judicial proceedings.

102.    Plaintiff's distress was foreseeable given the nature of Defendants' conduct, including the use of litigation pressure and demands for payment of disputed and allegedly unenforceable medical charges.

103.    As a direct result of Defendants' conduct, Plaintiff was forced to retain legal counsel to defend against threatened and filed litigation seeking amounts she believed were not legally owed.

104.    Plaintiff experienced significant stress and anxiety related to the financial burden of hiring and paying an attorney, including concern about her ability to afford legal representation while meeting ordinary living expenses.

105.    Plaintiff experienced heightened emotional distress upon realizing that defending herself would require ongoing legal fees, uncertainty regarding total costs, and the risk of additional expenses if Defendants' litigation continued.

106.    The necessity of retaining counsel caused Plaintiff persistent worry, disrupted sleep, and increased anxiety, particularly regarding the possibility of prolonged litigation and escalating legal costs.

107.    Plaintiff experienced feelings of fear and helplessness stemming from the realization that she could not adequately protect her rights without professional legal assistance and that failure to do so risked an improper judgment.

108.    Plaintiff expended substantial emotional energy coordinating with counsel, gathering documents, recounting events, and preparing to defend against Defendants' claims, which further compounded her stress and emotional exhaustion.

109.    Plaintiff's stress related to hiring and paying an attorney was ongoing and foreseeable, given Defendants' escalation of collection efforts into formal litigation.

110.    On or about May 15, 2025, Defendant Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost filed a complaint they dated and signed on April 29, 2025, in the 10th District Court, Calhoun County, State of Michigan, against Plaintiff Nicole Goodwin ("State Court Action") (Exhibit 9).

111.    The State Court Action was filed was captioned Ella E.M. Brown Charitable Circle DBA Oaklawn Hospital v Nicole Goodwin. It was assigned a case number 25-05613-GC.

112.    The Complaint alleged four counts

    a.   Breach of Contract

    b.   Account Stated

    c.   Unjust Enrichment

    d.   Quantum Meruit

113.    The State Court Action Complaint alleges an amount due of $11,974.46, plus costs, interest, and/or fees in each of the four causes of action; however, Defendant Goodman Frost, PLLC, Defendant Goodman, and Defendant Frost had actual knowledge that the debt was barred by Defendant Oaklawn Hospital's Contract with Cigna Health Insurance Company.

114.    Defendant Goodman Frost, PLLC, served the State Court Action Complaint on Plaintiff.

115.    The filing of the State Court action and complaint against the Plaintiff Goodwin for an amount more than was actually owed, as the Defendants had actual knowledge the debt was barred by contract with Cigna.

116.    On September 18, 2025, Defendant Goodman Frost, PLLC, filed a pre-trial statement.

117.    In the pre-trial statement, Goodman Frost, PLLC, filed a statement against the court that "Damages: $11,974.46, in addition to accruing cost and interest. Plaintiff also seeks recoverable attorney fees." (Exhibit 10)

118.    Defendants Goodman Frost, PLLC, Goodman, and Frost knew that the amount of the debt they filed with the court was not actually due and owing, and they willfully attempted to mislead the court.

119.    Plaintiff Goodwin filed her own pre-trial statement. She stated, "Motion to dismiss Plaintiffs' claim as the bill is not legally owed by the defendant due to the Plaintiffs' failure to timely submit the claim to the defendant's insurance, Cigna." (Exhibit 10)

120.     Plaintiff Goodwin further stated, "Defendant disputes owing any amount."

121.     Plaintiff Goodwin further stated, "Insurance (Cigna) Denial letter states the provider breached their contract by failing to file the claim on time, therefore charges cannot be billed to the patient."

122.     Plaintiff Goodwin attended a Zoom pre-trial conference on September 24, 2025, and requested a continuance to secure an attorney.

123.     Plaintiff Goodwin hired Lighthouse Litigation PLLC under a limited scope agreement to draft a demand letter to Goodman Frost, PLLC in an attempt to get them to dismiss the case, as the debt was barred by contract.

124.     Lighthouse Litigation, PLLC, sent the letter via email to Defendant Goodman and Defendant Frost; no response was provided to the letter.

125.     Plaintiff Goodwin hired Lighthouse Litigation to defend her in the state court action.

126.      Lighthouse Litigation entered its notice of appearance on November 6, 2025, and appeared at a pre-trial conference via Zoom on the same day.

127.     Defendant Goodman Frost, PLLC and Defendant Goodman filed an amended complaint with the court and served it on Lighthouse Litigation, PLLC.

128.     Defendant Goodman Frost sent their "First request for admission, interrogatories, and request for production of documents to the defendant." On November 10, 2025.

129.     Plaintiff Goodwin and her counsel had to spend time responding to the request for admission and interrogatories.

130.     On December 2, 2025, Plaintiff, through her counsel, had to file an answer to the state action amended complaint.

131.     Defendant Goodman asked on December 3, 2025, for an Authorization to access Plaintiff's medical records.

132.    Plaintiff Goodwin, through her counsel, objects to such an authorization.

133.    Defendant Goodman asked for a more limited Authorization to access Plaintiff's medical records for just the date of service.

134.    Plaintiff Goodwin, through her counsel, objects to such an authorization.

135.    Plaintiff Goodwin, through her counsel, on December 8, 2025, made a request for a jury trial.

136.    On December 23, 2025, a Proposed Judgment was filed with the court, which was approved to form and substance by both parties.

137.    Plaintiff Goodwin, through her counsel, on December 8, 2025, filed an Offer of Judgment under MCR 2.405 for the emergency room co-pay $150 and the deductible maximum amount of $750.00

138.    Plaintiff Goodwin, through her counsel, on December 9, 2025, sent her first Request for Admission and Interrogatories.

139.    Defendant Goodman Frost accepted the Offer of Judgment on December 17, 2025.

140.    On December 23, a proposed judgment was filed with the court, which had been approved by both parties as to form and substance.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DEFENDANT GOODMAN FROST PLLC,
### ROBERT J. GOODMAN, & TIMOTHY J. FROST
### VIOLATION OF
### FAIR DEBT COLLECTION PRACTICE ACT
(15 U.S.C. § 1692 et seq.)

141.    Plaintiff incorporates all the above paragraphs of this Complaint as though fully stated herein.

142.    At all relevant times Defendants, in the ordinary course of its business, regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

143.    The foregoing acts and omissions of Defendant  Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost, constitute numerous and multiple violations of the FDCPA 15 U.S.C. § 1692 et. seq.

A.  Parties and Debt

    a.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

    b.  The alleged obligation arises from personal medical services and constitutes a "debt" under 15 U.S.C. § 1692a(5).

    c.  At all relevant times, Defendants regularly collected or attempted to collect consumer debts owed or asserted to be owed to another and are therefore "debt collectors" within the meaning of 15 U.S.C. § 1692a(6).

    d.  Defendants acted in their capacity as debt collectors, not as providers of legal advice to Plaintiff.

B.  **Collection Activity**

    a.  Defendants attempted to collect an alleged medical debt in the amount of $11,974.46 on behalf of Defendant Ella E.M. Brown Charitable Circle d/b/a Oaklawn Hospital through written communications, litigation conduct, and oral representations made in connection with a state-court judicial proceeding.

    b.  On or about September 13, 2024, Defendant Goodman Frost, PLLC sent Plaintiff a written debt-collection letter via United States mail to Plaintiff's residence, identifying itself as a debt collector and demanding payment of the alleged medical debt. The letter represented, expressly or implicitly, that Plaintiff was legally obligated to pay the full amount demanded and constituted a communication in

connection with the collection of a debt within the meaning of 15 U.S.C. §§ 1692a(2), 1692e.

c. After Plaintiff timely disputed the alleged debt and provided information demonstrating that the charges were barred by Oaklawn Hospital's provider contract with Plaintiff's health insurer, Defendants nevertheless continued collection activity rather than ceasing collection pending meaningful verification, in violation of the FDCPA.

d. On or about May 15, 2025, Defendants Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost, acting as debt collectors, filed a civil complaint in the 10th District Court for Calhoun County, Michigan, captioned Ella E.M. Brown Charitable Circle d/b/a Oaklawn Hospital v. Nicole Goodwin, seeking to collect the alleged medical debt of $11,974.46, plus costs, interest, and attorney fees.

e. The filing and prosecution of a civil collection lawsuit to obtain payment of a consumer debt constitutes collection activity under the FDCPA, as litigation is a means by which debt collectors induce payment. The Sixth Circuit has repeatedly recognized that debt-collection litigation and related court filings are subject to the FDCPA

f. After filing the initial complaint, Defendants filed an amended complaint in the state-court action, again asserting that Plaintiff owed $11,974.46 and re-pleading multiple collection theories, despite having received documentation establishing that Plaintiff owed no personal liability for the alleged charges.

g. Defendants further engaged in collection activity by filing pretrial statements and other written submissions to the Michigan court affirmatively representing that Plaintiff owed damages in the amount of $11,974.46, together with costs, interest,

and recoverable attorney fees, notwithstanding Defendants' knowledge that the alleged debt was contractually barred and disputed.

h.  In addition to written communications and pleadings, Defendants made oral and verbal representations in connection with the Michigan state-court proceedings and related communications asserting that Plaintiff was legally responsible for the alleged debt and that litigation was a lawful and proper means of collection.

i.  Defendants' written mail communications, court filings, amended pleadings, pretrial submissions, and verbal statements were all undertaken **for the purpose of collecting a consumer debt** and constitute a continuous course of collection conduct governed by the FDCPA.

j.  Through this course of collection activity, Defendants used false, misleading, and deceptive representations and unfair means in connection with the collection of an alleged debt, including misrepresenting the legal status and enforceability of the debt and pursuing judicial action that could not legally be taken.

**C.  Statutory Violations**

    **a.  Defendants attempted to collect an alleged medical debt of $11,974.46 on behalf of Oaklawn Hospital.** *15 U.S.C. § 1692e(2)(A)*

144.  Defendants falsely represented that Plaintiff was legally obligated to pay the alleged balance when Defendants knew or should have known that the provider contract barred patient billing.

145.  A debt collector violates § 1692e(2)(A) when it attempts to collect sums not legally owed. *Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323, 326 (6th Cir. 2012).

    **b.  Threatening or Taking Action That Cannot Legally Be Taken** *15 U.S.C. § 1692e(5)*

146.    Defendants threatened and initiated litigation to collect a debt that could not legally be enforced against Plaintiff.

147.    Filing a lawsuit on a debt known to be unenforceable constitutes a violation of § 1692e(5). *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014).

### c.  Failure to Cease Collection Pending Verification *15 U.S.C. § 1692g(b)*

148.    Plaintiff timely disputed the debt.

149.    Defendants failed to provide meaningful verification demonstrating Plaintiff's legal liability before resuming collection and filing suit.

150.    Plaintiff Goodwin was provided evidence from Cigna that the debt was barred by contract with Defendant Oaklawn, and she had no liability to any part of the debt.

151.    Litigation activity is "collection activity" subject to § 1692g(b). *Scott v. Trott Law, P.C.*, 60 F. App'x 387, 394 (6th Cir. 2019).

### d.  Unfair or Unconscionable Means 15 U.S.C. § 1692f

152.    Defendants used unfair and unconscionable means by leveraging the judicial process to collect a debt barred by contract, which Plaintiff was a third-party beneficiary of, and insurance law.

153.    Defendants violated 15 U.S.C 1692f by using unfair and unconscionable means to attempt to collect an alleged debt by withholding a reply to Plaintiff's timely response for validation and verification of the alleged debt before filing a Summons and Complaint in the court of the STATE OF MICHIGAN IN THE 10th DISTRICT COURT.

154.    Then, Defendants further knowingly and willfully violated the FDCPA by filing an amended complaint after they knew Plaintiff Goodwin was represented by counsel and again disputed the debt with the EOB from Cigna showing no debt was owed.

### e. Harassment or Abuse – 15 U.S.C. § 1692d.

155.    Defendants Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost engaged in conduct the natural consequence of which was to harass, oppress, and abuse Plaintiff in connection with the collection of an alleged debt, in violation of 15 U.S.C. § 1692d.

156.    Defendants' harassing and abusive conduct included, but was not limited to:

a.   Continuing to pursue collection litigation after receiving documentary proof that Plaintiff owed no personal liability for the alleged debt;

b.   Using the authority and coercive power of judicial process as an intimidation tool rather than as a legitimate means of dispute resolution;

c.   Making belittling and demeaning statements to Plaintiff during collection communications, including statements implying Plaintiff's lack of legal education rendered her understanding irrelevant;

d.   Escalating collection pressure through litigation after Plaintiff disputed the debt and provided insurance documentation establishing non-liability;

e.   Exploiting Plaintiff's lack of representation at the time to exert psychological and economic pressure through threatened and actual court proceedings.

157.    The cumulative effect of Defendants' conduct would cause the least sophisticated consumer to feel intimidated, coerced, and abused, and had the natural consequence of harassing and oppressing Plaintiff in violation of § 1692d.

158.    Defendants' conduct went beyond the mere filing of a collection lawsuit and constituted an abusive course of conduct designed to pressure Plaintiff into paying a debt Defendants knew or should have known was not legally owed.

159.    As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1692d, Plaintiff suffered actual damages, including emotional distress, anxiety, humiliation, loss of sleep, and

loss of time, and is entitled to statutory damages, costs, and reasonable attorney fees pursuant to 15 U.S.C. § 1692k.

### D.  Least Sophisticated Consumer Standard

160.    Defendants' representations would mislead the least sophisticated consumer into believing the debt was valid and legally enforceable.  *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015).

### E.  Damages

161.    As a direct and proximate result of Defendants' violations of the Fair Debt Collection Practices Act, Plaintiff suffered actual damages, including but not limited to emotional distress, anxiety, humiliation, loss of sleep, and physical manifestations of stress; loss of time responding to unlawful collection efforts; and out-of-pocket expenses incurred defending against an improper lawsuit.

162.    Plaintiff is further entitled to statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A), together with costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3).

**SECOND CAUSE OF ACTION
DEFENDANT GOODMAN FROST PLLC,
ROBERT J. GOODMAN, & TIMOTHY J. FROST
VIOLATION OF
MICHIGAN COLLECTION PRACTICE ACT**
(M.C.L. § 445.251 et seq.)

163.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

164.    Defendants are "regulated persons' under MCL 445.251(g)(xi).

165.    Defendants violated MCL 445.252(e), (f)(i), (f)(ii), and (q) by misrepresenting Plaintiff's legal liability and filing litigation to collect a non-existent debt.

166.    These violations were willful, entitling Plaintiff to damages and attorney fees under MCL 445.257.

167.    Defendant is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

168.    Plaintiff is a debtor as that term is defined in M.C.L. § 339.901(f).

169.    Defendant's foregoing acts in attempting to collect the alleged debt violated the following provisions of the MOC:

   a.  M.C.L. § 339.915(e), by making an inaccurate, misleading, untrue or deceptive statement or claim in a communication to collect a debt;

   b.  M.C.L. § 339.915(f)(i), by misrepresenting in a communication with a debtor the legal status of a legal action being taken or threatened;

   c.  M.C.L. § 339.915(f)(ii), by misrepresenting in a communication with a debtor the legal rights of the creditor or debtor; and

   d.  M.C.L. § 339.915(q), by failing to implement a procedure designed to prevent a violation by an employee.

   170. Plaintiff has suffered damages as a result of these violations of the MOC.

   171. These violations of the MOC were willful.

172.    Defendant Goodman Frost PLLC's used an abusive method to collect an alleged debt in violation of M.C.L. § 445.252 (n) when Goodman Frost PLLC' filed a Summons and Complaint in the STATE OF MICHIGAN IN THE 10th DISTRICT COURT without first verifying and validating the alleged debt as required by 15 U.S.C § 1692g(b).

173.    Defendant Goodman Frost PLLC's violated M.C.L. §445.252(q) by failing to implement a procedure designed to prevent each of the above listed MCPA violations by its employees.

174.    Defendants are sued solely for debt-collection conduct governed by the FDCPA and MCPA. Plaintiff does not allege legal malpractice, negligence in the provision of legal services, or breach of professional duty owed to a client.

175.    As a direct and proximate result of Defendants' willful violations of the Michigan Collection Practices Act, Plaintiff suffered actual damages, including emotional distress, anxiety, humiliation, loss of time, and out-of-pocket expenses.

176.    Plaintiff seeks recovery of actual damages, statutory damages where applicable, injunctive relief, and reasonable attorney fees and costs pursuant to MCL 445.257

**THIRD CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**ABUSE OF PROCESS**
**(COMMON LAW)**

177.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

**A.  Governing Law and Elements**

a.  Michigan Common Law, requires a claim for abuse of process requires:

i.  The use of legal process;

ii.  An ulterior purpose not proper in the regular conduct of the proceeding; and

iii.  An act in the use of a process that is improper in the regular prosecution of the case, resulting in damages.

178.    *Friedman v. Dozorc*, 412 Mich. 1, 30,(1981); *Lawrence v. Burdi*, 314 Mich. App. 203, 217–18, (2016).

**B.  Use of Legal Process**

a. Defendants knowingly and intentionally invoked judicial process by filing and prosecuting a civil collection lawsuit against Plaintiff in the 10th District Court for Calhoun County, Michigan, seeking to recover $11,974.46 for alleged medical services.

b. Defendants knowingly and intentionally invoked judicial process by filing an amended complaint and prosecuting a civil collection lawsuit against Plaintiff in the 10th District Court for Calhoun County, Michigan, seeking to recover $11,974.46 for alleged medical services.

179.    The filing, service, and prosecution of a civil complaint constitutes the use of legal process under Michigan law. *Bonner v. Chicago Title Ins. Co.*, 194 Mich. App. 462, 472 (1992).

## C. Ulterior and Collateral Purpose

a. Defendants used the judicial process for an **ulterior purpose collateral to the legitimate object of litigation**, including

i. Forcing Plaintiff to pay amounts Defendants knew were contractually barred by the Oaklawn–Cigna provider agreement;

ii. Coercing payment from Plaintiff despite knowing that the dispute was required to be resolved through insurance billing and contractual appeal mechanisms, not patient collection;

iii. Leveraging the cost, stress, and coercive pressure of court proceedings to obtain payment outside lawful and contractual remedies.

iv. Forcing the Plaintiff to find, seek, and hire an attorney to defend the legal action.

180.    Using litigation as economic leverage to extract payment of a debt known to be unenforceable constitutes an improper collateral objective under Michigan law. *Lawrence*, 314 Mich. App. at 218.

**D.**  Improper Act in the Use of Process (Corroborating Conduct)

a.  Defendants committed affirmative acts improper in the regular prosecution of a civil action, including:

i.  Continuing to prosecute the lawsuit after receiving documentation establishing that Plaintiff owed $0.00 under the applicable insurance Explanation of Benefits;

ii.  Proceeding with litigation while knowing that the alleged debt was barred by the provider's contract with Cigna and could not legally be collected from Plaintiff;

iii.  Pleading multiple inconsistent collection theories (including breach of contract, account stated, unjust enrichment, and quantum meruit) despite knowledge that no enforceable patient obligation existed;

iv.  Using the authority of the court to pressure Plaintiff into payment rather than pursuing contractual or insurance based remedies available to Defendants.

181.    These acts constitute misuse of process **after its issuance**, satisfying Michigan's corroborating-act requirement. *Friedman*, 412 Mich. at 30–31; *Young v. Motor City Apartments Ltd. Dividend Hous. Ass'n*, 133 Mich. App. 671 (1984).

**E.  Resulting Damages**

a.  As a direct and proximate result of Defendants' abuse of process, Plaintiff suffered:

i.   Emotional distress, anxiety, and humiliation.

ii.   Loss of time and productivity responding to improper litigation.

iii.   Out-of-pocket costs and expenses.

iv.   Exposure to the risk of an unlawful judgment and associated financial harm.

182.    Damages flowed from Defendants' improper use of the process itself, not merely from participation in ordinary litigation. Bonner, 194 Mich. App. At 472.

183.    As a direct and proximate result of Defendants' abuse of judicial process, Plaintiff suffered compensable damages including emotional distress, humiliation, anxiety, loss of productivity, attorney fees incurred to defend against improper litigation, and exposure to the risk of an unlawful judgment, wage garnishment, and credit damage.

## FOURTH CAUSE OF ACTION
## DEFENDANT ROBERT J. GOODMAN & GOODMAN FROST PLLC,
## SILENT FRAUD/FRAUDULENT MISSREPRESENTATION
## (COMMON LAW)

184.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

### A.  Governing Legal Standard (Michigan Law)

185.    Under Michigan law, silent fraud—also known as fraudulent concealment—occurs when:

a.   The defendant suppresses or conceals a material fact;

b.   The defendant has a legal or equitable duty to disclose the fact;

c.   The suppression is made with intent to defraud or create a misleading impression;

d.   The plaintiff reasonably relies on the resulting false impression; and

e.   The plaintiff suffers damages as a result

186.    A duty to disclose arises when a plaintiff makes a **direct inquiry** and receives an **incomplete or misleading response**, thereby creating a false impression

### B. Duty to Disclose Arising from Direct Communications

a. Defendant Goodman voluntarily engaged in direct communications with Plaintiff regarding the alleged medical debt, including phone calls and written correspondence.

b. During these communications, Plaintiff:

i. Expressly questioned her liability for the alleged balance;

ii. Raised concerns regarding insurance coverage and billing;

iii. Provided documentation demonstrating that the claim should have been billed to insurance and that she believed she owed nothing.

187.    Once Defendant Goodman undertook to respond to these inquiries, Michigan law imposed a duty to disclose material facts necessary to prevent his responses from being misleading.

188.    This duty arose not from an attorney-client relationship, but from Defendant Goodman's affirmative participation in debt-collection communications and his partial responses to Plaintiff's expressed concerns.

### C. Material Facts Suppressed or Concealed

a. Defendant Goodman failed to disclose material facts known to him, including:

i. That Oaklawn Hospital was contractually barred from balance billing Plaintiff under its provider agreement with Cigna once the claim was untimely submitted;

ii. That Plaintiff could not legally be held responsible for the alleged balance under the governing insurance contract;

189.    The suppression of these facts was material because it directly affected Plaintiff's understanding of her legal obligations and her response to Defendants' collection efforts.

D.  Creation of a False and Misleading Impression

    a.  By discussing payment options, continuing collection efforts, and later initiating litigation—while omitting the above material facts—Defendant Goodman created the false impression that:

        i.  Plaintiff was legally obligated to pay the alleged balance; and

        ii.  Litigation was a proper and lawful means of resolving the dispute.

**E.  Intent and Reliance**

190.    Defendant Goodman suppressed the material facts with the intent that Plaintiff rely on the resulting false impression, including by:

    a.  Delaying or discouraging Plaintiff from asserting contractual and insurance defenses;

    b.  Pressuring Plaintiff to consider payment of amounts not legally owed;

    c.  Inducing Plaintiff to expend time, resources, and emotional energy responding to unlawful collection activity.

191.    Plaintiff reasonably relied on Defendant Goodman's incomplete disclosures and representations, believing that she faced legitimate personal liability and imminent litigation exposure

F.  As a direct and proximate result of Defendants' fraudulent concealment and misrepresentations, Plaintiff reasonably relied to her detriment and suffered damages including emotional distress, loss of time, attorney fees, litigation expenses, and exposure to financial harm.

**FIFTH CAUSE OF ACTION**
**ALL DEFENDANTS**
**CIVIL CONSPIRACY**
**(COMMON LAW)**

192.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

193.    Under Michigan common law, a civil conspiracy consists of a combination of two or more persons who, by concerted action, accomplish an unlawful purpose or accomplish a lawful purpose by unlawful means.

194.    Civil conspiracy is a derivative cause of action under Michigan law and requires the commission of an underlying actionable tort.

195.    Defendants Robert J. Goodman, Goodman Frost, PLLC, and Ella E.M. Brown Charitable Circle d/b/a Oaklawn Hospital knowingly entered into an agreement and acted in concert to collect medical charges from Plaintiff that were contractually barred by Oaklawn Hospital's provider agreement with Plaintiff's health insurer.

196.    The conspiracy alleged herein is predicated upon, and derivative of, Defendants' commission of independently actionable underlying torts, including abuse of process, silent fraud or fraudulent misrepresentation, violations of the Michigan Collection Practices Act, and violations of the Fair Debt Collection Practices Act.

197.    Each of the underlying torts identified above is pleaded separately and with particularity elsewhere in this Complaint.

198.    Oaklawn Hospital transmitted Plaintiff's billing records, insurance information, and medical documentation to Goodman Frost, PLLC for the purpose of pursuing collection from Plaintiff.

199.    Goodman and Goodman Frost, PLLC received documentation and information establishing that Oaklawn Hospital was contractually prohibited from billing Plaintiff for the amounts sought.

200.    Despite this knowledge, Goodman and Goodman Frost, PLLC continued to pursue collection and litigation against Plaintiff personally.

201.    Oaklawn Hospital knowingly authorized and ratified Goodman and Goodman Frost, PLLC's continued collection efforts and litigation against Plaintiff, despite knowing that the charges sought were barred by contract.

202.     Defendants jointly filed and prosecuted a state-court collection action seeking amounts Defendants knew, or should have known, were not legally recoverable from Plaintiff.

203.    Defendants' coordinated conduct demonstrates a common plan and mutual understanding to collect unenforceable charges through litigation pressure.

204.    The agreement and concerted action among Defendants may be inferred from circumstantial evidence, including coordinated billing practices, shared documentation, and continued litigation despite knowledge of contractual billing prohibitions.

205.    Defendants' conspiracy had an unlawful purpose, namely the collection of medical charges contractually barred from patient billing.

206.    Defendants further employed unlawful means in furtherance of the conspiracy, including the misuse of judicial process, misrepresentation of Plaintiff's legal obligations, and circumvention of insurance adjudication and contractual appeal requirements.

207.    Using litigation to collect sums known to be unenforceable constitutes unlawful means sufficient to support civil conspiracy liability under Michigan law.

208.    Goodman, Frost and Goodman Frost, PLLC were not acting as mere passive legal advisors, but knowingly and actively participated in the tortious scheme.

209.    Goodman, Frost and Goodman Frost, PLLC continued collection and litigation efforts after acquiring knowledge of the contractual billing prohibition.

210. Goodman, Frost and Goodman Frost, PLLC drafted, filed, and prosecuted pleadings seeking amounts barred by contract.

211. Goodman, Frost and Goodman Frost, PLLC used the authority and coercive power of judicial process to advance the conspiracy's unlawful objective.

212. Where an attorney knowingly joins a client in a concerted effort to commit an actionable tort, the attorney may be held liable as a co-conspirator under Michigan law.

213. As a direct and proximate result of Defendants' civil conspiracy, Plaintiff suffered damages including emotional distress, anxiety, humiliation, loss of time, loss of productivity, and out-of-pocket costs and litigation expenses.

214. Plaintiff was further harmed by exposure to unlawful collection efforts and improper judicial pressure.

215. Each Defendant is jointly and severally liable for all damages caused by acts taken in furtherance of the conspiracy.

216. Plaintiff seeks all compensatory damages available under Michigan law, together with costs, interest, attorneys' fees where authorized, and such other and further relief as the Court deems just and equitable.

217. As a direct and proximate result of Defendants' concerted unlawful conduct, Plaintiff suffered all damages flowing from the underlying torts, including emotional distress, loss of time, attorney fees, litigation costs, and economic harm. Defendants are jointly and severally liable for all such damages.

### SIXTH CAUSE OF ACTION
### DEFENDANT ELLA E.M. BROWN CHARITABLE CIRCLE dba
### OAKLAWN HOSPITAL
### Violations of the Michigan Collection Practices Act
### (MCL 445.251 et seq.)

218.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

219.    Defendant Ella E.M. Brown Charitable Circle d/b/a Oaklawn Hospital is a "regulated person" within the meaning of the Michigan Collection Practices Act, MCL 445.251 et seq., because it engaged in the collection of a consumer debt owed or alleged to be owed by Plaintiff.

220.    The alleged debt arises from medical services provided to Plaintiff primarily for personal, family, or household purposes and constitutes a consumer debt under Michigan law.

221.    At all relevant times, Oaklawn Hospital was contractually bound by a provider agreement with Plaintiff's health insurer that prohibited billing Plaintiff personally for the amounts sought.

222.    Oaklawn Hospital knew, or should have known, that its own agents/employees negligently registered the Plaintiff for the date of service.

223.    Defendant Oaklawn Hospital knew, or should have known, there was a problem when it sent billing invoices that were truncated for an undeliverable address.

224.    Defendant Oaklawn Hospital knew, or should have known, that it did not properly add the Plaintiff's insurance information.

225.    Defendant Oaklawn Hospital could have contacted Plaintiff via its patient portal, email, or phone to timely get insurance information.

226.    Defendant Oaklawn Hospital knew, or should have known, the time limits in its contract with Plaintiff Insurance Carrier.

227.    Oaklawn Hospital knew, or should have known, that the charges it sought to collect from Plaintiff were contractually barred and not legally enforceable against Plaintiff.

228.     Despite this knowledge, Oaklawn Hospital engaged in collection activity directed at Plaintiff, including authorizing and pursuing collection and litigation seeking payment of the barred charges.

229.     Oaklawn Hospital violated the Michigan Collection Practices Act by misrepresenting the legal status, character, and enforceability of the alleged debt, in violation of MCL 445.252.

230.     Oaklawn Hospital further violated the Act by attempting to collect amounts not permitted by law or by contract, including amounts barred by its provider agreement with Plaintiff's insurer.

231.     Oaklawn Hospital authorized, ratified, and continued collection efforts through counsel after receiving notice that Plaintiff disputed the debt and that insurance adjudication remained unresolved.

232.     Oaklawn Hospital used misleading representations and deceptive practices that falsely implied Plaintiff was personally obligated to pay amounts that were not legally recoverable.

233.     Oaklawn Hospital's conduct constitutes unfair, unconscionable, and deceptive collection practices prohibited by the Michigan Collection Practices Act.

234.     Oaklawn Hospital is liable for its own direct collection conduct and for collection actions taken on its behalf by its authorized agents and attorneys.

235.     Plaintiff was further harmed by being subjected to unlawful collection efforts and improper litigation pressure for a debt that was not legally enforceable.

236.     As a direct and proximate result of Oaklawn Hospital's violations of the Michigan Collection Practices Act, Plaintiff suffered actual damages including emotional distress, anxiety, loss of time, loss of productivity, and out-of-pocket expenses. Plaintiff seeks all relief available under MCL 445.257, including attorney fees and injunctive relief.

### SEVENTH CAUSE OF ACTION
### DEFENDANT ELLA E.M. BROWN CHARITABLE CIRCLE dba
### OAKLAWN HOSPITAL
### Invasion of Privacy: Intrusion Upon Seclusion
### (MCL 445.251 et seq.)

237.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

238.    Michigan recognizes the tort of invasion of privacy, including the theory of intrusion upon seclusion

239.    Intrusion upon seclusion occurs when a defendant intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or into that person's private affairs or concerns, in a manner that would be highly offensive to a reasonable person

240.    Defendant Oaklawn's intentional disclosure of Plaintiff's complete medical records for the date of service, including full medical history, constituted an intrusion into Plaintiff's private affairs and seclusion.

241.    Plaintiff had a reasonable and well-established expectation of privacy in her emergency-room medical records and treatment information.

242.    Disclosure of detailed emergency-room medical records to a debt collector would be highly offensive to a reasonable person.

243.    Michigan courts recognize intrusion-upon-seclusion claims where a defendant improperly accesses or discloses highly private information. See *Doe v. Mills*, 212 Mich. App. 73, 88, (1995); *Lewis v. LeGrow*, 258 Mich. App. 175, 193 (2003)

244.    Oaklawn knew or should have known that transmitting Plaintiff's complete medical records to a debt-collection law firm invaded Plaintiff's privacy and exceeded any legitimate billing or collection purpose.

245.    Medical information is among the most sensitive categories of personal information, and unauthorized disclosure of such information may satisfy the intrusion element under Michigan common law.

246.    Although the Health Insurance Portability and Accountability Act of 1996 does not provide a private right of action, HIPAA and its implementing regulations establish nationally recognized standards governing the confidentiality and permissible disclosure of protected health information.

247.    Michigan courts may consider HIPAA standards as evidence of the scope of a healthcare provider's duty of confidentiality and as guidance in determining whether conduct is unreasonable or highly offensive under common-law privacy principles.

248.    Under those standards, disclosure of protected health information must be limited to the minimum necessary to accomplish a lawful purpose.

249.    Disclosure of complete medical records to a third-party debt collector is not required to bill, collect, or validate an alleged medical debt.

250.    The disclosure was designed to aid a third-party debt collector in pursuing Plaintiff for payment and to gain leverage in collection-related litigation.

251.    Oaklawn's conduct occurred in conjunction with and facilitated unlawful or abusive debt-collection practices alleged elsewhere in this Complaint, further demonstrating the intentional and offensive nature of the intrusion.

252.    The use of Plaintiff's detailed medical information as a collection tool transformed a private healthcare relationship into an invasive and coercive intrusion into Plaintiff's personal life.

253.    As a direct and proximate result of Defendant's highly offensive intrusion upon Plaintiff's private affairs, Plaintiff suffered emotional distress, humiliation, loss of dignity, and fear

regarding the misuse and dissemination of her confidential medical information. Plaintiff further seeks exemplary damages under Michigan law due to Defendant's willful and reckless misconduct.

254.    Oaklawn's conduct was willful, reckless, and demonstrated a conscious disregard for Plaintiff's privacy rights.

255.    Oaklawn knew that disclosure of complete medical records to a debt collector was unnecessary, unjustified, and inconsistent with accepted medical privacy standards, yet proceeded anyway.

256.    Plaintiff does not assert an independent cause of action under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d et seq., or its implementing regulations.

257.    Plaintiff alleges HIPAA and its Privacy and Security Rules, including 45 C.F.R. pts. 160 and 164, solely as evidence of the applicable standard of care, the scope of Defendants' duties of confidentiality, and the reasonableness—or offensiveness—of Defendants' conduct under Michigan common law.

258.    Consistent with controlling Sixth Circuit authority, HIPAA is pleaded only as probative of duty, breach, and the highly offensive nature of the unauthorized disclosure of medical information, and not as a source of a private right of action. See *Acara v. Banks*, 470 F.3d 569, 571–72 (5th Cir. 2006) (holding HIPAA creates no private cause of action); accord *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010).

259.    As a result, Plaintiff is entitled to exemplary damages under Michigan law to compensate for the indignity, humiliation, and mental suffering caused by Oaklawn's malicious or wanton misconduct.

### EIGHTH CAUSE OF ACTION
### DEFENDANT ELLA E.M. BROWN CHARITABLE CIRCLE dba
### OAKLAWN HOSPITAL
### Breach of Confidential Relationship

260.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint as though fully restated herein.

261.     Michigan law recognizes that a confidential relationship arises from the physician–patient and hospital–patient relationships, imposing a duty on medical providers to protect the confidentiality of patient medical information.

262.     As a hospital providing emergency medical treatment to Plaintiff, Defendant Oaklawn Hospital stood in a position of trust and confidence with respect to Plaintiff's medical information

263.     This relationship gives rise to a fiduciary-like duty and an implied covenant of confidentiality, independent of any statutory scheme, requiring that patient medical records be used and disclosed only for purposes consistent with patient care or lawful authorization.

264.     Plaintiff entrusted Oaklawn Hospital with highly sensitive medical information obtained during her March 20, 2023 emergency-room visit.

265.     Without Plaintiff's authorization, consent, or a court order, Oaklawn Hospital disclosed Plaintiff's complete medical records from that encounter to a third-party debt-collection law firm.

266.     The disclosure included diagnoses, treatment notes, provider observations, and other confidential medical details unrelated to billing or care.

267.     The disclosure was not necessary for treatment, payment processing, or health-care operations, and exceeded any legitimate administrative purpose.

268.     The disclosure instead served a purely financial and collection-related purpose, namely to assist in the attempted collection of an alleged debt.

269.     By disclosing Plaintiff's confidential medical information for non-care, financial purpose, Oaklawn Hospital:

    a.  Breached its fiduciary and confidential duties arising from the hospital-patient relationship; and

    b.  Breached the implied covenant of confidentiality inherent in the provision of medical care.

270.    Michigan law recognizes that unauthorized disclosure of confidential information by a party in a position of trust constitutes a breach of a confidential or fiduciary relationship, particularly where disclosure is made outside the scope of the relationship's intended purpose.

271.    As a direct and proximate result of Oaklawn Hospital's breach of its confidential relationship with Plaintiff, Plaintiff suffered emotional distress, loss of privacy, humiliation, and consequential damages. Plaintiff seeks compensatory and exemplary damages as permitted under Michigan law.

272.    Oaklawn Hospital's conduct was willful, reckless, or demonstrated a conscious disregard for Plaintiff's confidentiality rights, as the disclosure was knowingly made for financial collection purposes rather than patient care.

### NINTH CAUSE OF ACTION
### DEFENDANT ELLA E.M. BROWN CHARITABLE CIRCLE dba
### OAKLAWN HOSPITAL
### Deceptive Billing and Collection Practices
### *(MCL 445.901 et seq.)*

273.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint as though fully restated herein.

274.    Plaintiff is a "consumer" as defined by MCL 445.902(g) because the hospital services at issue, and the related billing and collection activities, were primarily for personal, family, or household purposes.

275.    Defendant Hospital is a "person" and "merchant" within the meaning of MCL 445.902(d) and (i), engaged in trade or commerce through the provision of hospital services and the administration, billing, and collection of charges for those services.

276.    Following Plaintiff's treatment, Defendant billed Plaintiff for hospital services and related charges.

277.    In connection with its billing and collection activities, Defendant engaged in deceptive and unfair practices, including, but not limited to, misrepresenting the nature, amount, or legality of certain charges billed to Plaintiff.

278.    Defendant further misrepresented whether certain charges were covered by insurance, subject to contractual limitations, or required out-of-pocket payment by Plaintiff.

279.    Defendant imposed and attempted to collect charges that were not reasonably related to the actual cost of the services provided and that were grossly disproportionate to the amounts customarily charged for similar services.

280.    The billing and collection practices challenged herein were administrative and financial in nature and did not involve the exercise of professional medical judgment, diagnosis, or treatment.

281.    Defendant's conduct occurred in the course of trade or commerce as defined by MCL 445.902(i).

282.    Through the acts and practices described above, Defendant engaged in unfair, unconscionable, or deceptive acts or practices in violation of MCL 445.903(1), including, but not limited to, causing a probability of confusion or misunderstanding as to Plaintiff's legal rights, obligations, or remedies with respect to hospital charges and billing obligations, in violation of MCL 445.903(1)(n).

283.    Defendant further represented or implied that its billing would be accurate, authorized, or promptly resolved, when Defendant knew or had reason to know that it would not be, in violation of MCL 445.903(1)(q).

284.    Defendant charged prices that were grossly in excess of the price at which similar services are sold or the actual cost of providing the services, in violation of MCL 445.903(1)(z).

285.    Defendant's conduct is not exempt from liability under MCL 445.904(1)(a) because the specific deceptive billing and collection practices alleged were not specifically authorized by any Michigan or federal statute or regulatory scheme.

286.    The mere fact that hospitals and healthcare providers are regulated does not confer blanket immunity from the Michigan Consumer Protection Act, and the exemption analysis is conduct-specific.

287.    Defendant bears the burden of establishing a statutory exemption and cannot meet that burden with respect to deceptive, misleading, or excessive billing and collection practices.

288.    Plaintiff reasonably relied on Defendant's billing statements and representations concerning the nature, amount, and legitimacy of the charges assessed.

289.    As a direct and proximate result of Defendant's violations of the Michigan Consumer Protection Act, Plaintiff suffered ascertainable losses, including monetary damages from overbilling and improper charges.

290.    Plaintiff further suffered exposure to improper collection efforts and related economic harm as a result of Defendant's deceptive billing practices.

291.    As a result of Defendant's deceptive billing and collection practices, Plaintiff suffered ascertainable losses. Pursuant to MCL 445.911(2), Plaintiff seeks recovery of actual damages or $250.00, whichever is greater, together with reasonable attorney fees and costs. Plaintiff further seeks declaratory and injunctive relief.

### TENTH CAUSE OF ACTION
### DEFENDANT GOODMAN FROST, PLLC & ROBERT J. GOODMAN
### NEGLIGENT MISREPRESENTATION

292.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

293.    Under Michigan law, a claim for negligent misrepresentation exists where a plaintiff justifiably relies to her detriment on information supplied without reasonable care by a defendant who owed the plaintiff a duty of care.

294.    Michigan recognizes negligent-misrepresentation claims in favor of non-contracting third parties where the defendant's provision of information was intended or foreseeably relied upon by the plaintiff.

295.    Defendant Robert J. Goodman, acting individually and through Defendant Goodman Frost, PLLC, voluntarily engaged in **direct debt-collection communications** with Plaintiff concerning the alleged medical debt, including telephone calls, emails, and written correspondence.

296.    During those communications, Defendants:

    a.   Undertook to explain Plaintiff's alleged legal responsibility for the debt;

    b.   Responded to Plaintiff's direct inquiries regarding insurance coverage and liability; and

    c.   Requested and reviewed insurance documentation provided by Plaintiff.

297.    By undertaking to supply information to Plaintiff in response to her direct inquiries, Defendants assumed a duty to exercise reasonable care to ensure that the information conveyed was accurate and not misleading.

298.    This duty arose not from an attorney-client relationship, but from Defendants' role as debt collectors who voluntarily supplied factual and legal-status information to a consumer for the purpose of inducing payment.

299.    Defendants negligently supplied false or misleading information to Plaintiff, including but not limited to:

    a.   Representing that Plaintiff remained legally responsible for the alleged medical charges despite the provider's contractual prohibition on balance billing;

    b.   Representing, expressly or implicitly, that litigation was a lawful and appropriate means of collecting the alleged debt from Plaintiff;

    c.   Failing to exercise reasonable care to ascertain and disclose that Oaklawn Hospital's untimely submission of the claim barred patient liability under the Cigna provider contract.

300.    Defendants supplied this information **without reasonable care or competence**, despite possessing or having access to documentation establishing that Plaintiff owed no personal liability.

301.    Plaintiff justifiably relied on Defendants' representations and omissions by:

    a.   Delaying assertion of her contractual defenses;

    b.   Expending time and emotional energy responding to Defendants' demands;

    c.   Experiencing fear and distress regarding threatened litigation and financial exposure; and

    d.   Ultimately being forced to retain counsel to defend against improper collection litigation.

302.    Plaintiff's reliance was foreseeable and reasonable given Defendants' asserted authority, experience, and role as attorneys communicating directly with a consumer regarding an alleged debt.

303.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff suffered actual damages including emotional distress, anxiety, loss of time, attorney fees incurred in responding to improper collection activity, and other consequential damages.

## ELEVENTH CAUSE OF ACTION
## DEFENDANT ELLA E.M. BROWN CHARITABLE CIRCLE
## d/b/a OAKLAWN HOSPITAL
## NEGLIGENCE AND GROSS NEGLIGENCE
## NEGLIGENT MISREPRESENTATION

304.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

305.     Defendant Oaklawn Hospital owed Plaintiff a duty to exercise reasonable care in its non-medical, administrative, and billing operations, including:

   a.   Accurate patient registration;

   b.   Timely and proper submission of insurance claims;

   c.   Maintenance of accurate contact and insurance information;

   d.   Safeguarding and limiting disclosure of confidential patient information; and

   e.   Compliance with contractual billing restrictions imposed by insurer agreements.

306.     These duties arise independently of medical diagnosis or treatment and concern administrative and operational functions not requiring professional medical judgment.

**Breach of Duty (Negligence)**

307.     Oaklawn Hospital breached its duty of care by, inter alia:

   a.   Failing to accurately register Plaintiff's address and insurance information;

   b.   Failing to timely submit insurance claims within contractual deadlines;

   c.   Failing to act upon returned or undeliverable billing correspondence;

   d.   Failing to contact Plaintiff through readily available alternative communication methods;

   e.   Attempting to collect charges contractually barred from patient billing; and

   f.   Disclosing Plaintiff's complete medical records to a third party debt collection law firm without authorization and beyond any legitimate billing purpose.

**Gross Negligence**

308.    Oaklawn Hospital's conduct constituted gross negligence because it demonstrated a substantial lack of concern for whether injury would result to the Plaintiff.

309.    Despite knowing or having reason to know that:

    a.  The claim was untimely under the Cigna provider contract;

    b.  Plaintiff could not legally be billed;

    c.  Full medical records were unnecessary for billing or collection;

310.    Oaklawn Hospital nonetheless proceeded to disclose Plaintiff's complete medical records and authorized litigation seeking barred charges.

311.    Such conduct went far beyond ordinary carelessness and amounted to reckless disregard for Plaintiff's rights, privacy, and financial security.

**Causation and Damages**

312.    Oaklawn Hospital's negligence and gross negligence were direct and proximate causes of Plaintiff's injuries, including:

    a.  Emotional distress, anxiety, and humiliation;

    b.  Loss of privacy and dignity;

    c.  Financial harm and litigation-related expenses;

    d.  Loss of time and productivity; and

    e.  Exposure to improper collection litigation and judicial coercion.

313.    Plaintiff seeks compensatory damages and exemplary damages permitted under Michigan law for Oaklawn Hospital's willful, reckless, and grossly negligent misconduct.

**TWELVETH  CAUSE OF ACTION**
**DEFENDANT ELLA E.M. BROWN CHARITABLE CIRCLE**
**d/b/a OAKLAWN HOSPITAL**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT RIGHTS**
*(Michigan Common Law; MCL 600.1405)*

314.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

**Governing Law – Third-Party Beneficiary Contracts**

315.    Michigan law expressly authorizes enforcement of contractual promises by intended third-party beneficiaries. *MCL 600.1405* provides that:

    a.    *"Any person for whose benefit a promise is made by way of contract … has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee."*

316.    A party qualifies as an intended third-party beneficiary when the promisor undertakes to do or refrain from doing something directly to or for that person, and such beneficiary's rights vest when the promise becomes legally binding, without any action required by the beneficiary.

**The Provider Agreement and Contractual Promise**

317.    At all relevant times, Defendant Oaklawn Hospital was a participating provider under a written provider agreement with Plaintiff's health insurer, Cigna HealthCare.

318.    At all relevant times, Defendant Oaklawn Hospital was a participating provider under a written provider agreement with Plaintiff's health insurer, Cigna HealthCare.

319.    That provider agreement constituted a valid and binding contract and contained **ex**press provisions governing billing and collection, including provisions that:

    a.    Required Oaklawn Hospital to submit claims for covered services within specified contractual time limits; and

    b.    Prohibited Oaklawn Hospital from billing or collecting from the patient when claims were denied due to the provider's failure to timely submit the claim.

320. Such provisions were intended to directly benefit insured patients, including Plaintiff, by limiting patient financial responsibility and preventing balance billing in circumstances where the provider breached its own contractual obligations.

**Plaintiff as an Intended Third-Party Beneficiary**

321. Plaintiff was an insured member of the Cigna health plan at the time of the March 20, 2023, emergency-room services and was an identifiable and intended beneficiary of the Oaklawn–Cigna provider agreement.

322. The contractual promise not to bill patients for untimely submitted claims was made for the direct benefit of insured patients, not merely for the incidental benefit of Oaklawn Hospital or Cigna.

323. Accordingly, Plaintiff's rights as a third-party beneficiary vested at the time the provider agreement became legally binding on Oaklawn Hospital, pursuant to MCL 600.1405(2)(a).

**Breach of Contractual Obligations**

324. Oaklawn Hospital breached the provider agreement by, among other things:

    a. Failing to timely submit Plaintiff's hospital claim to Cigna within the contractually mandated deadlines;

    b. Failing to correct known registration and insurance-processing errors in a timely manner;

    c. Attempting to bill Plaintiff personally for charges contractually barred from patient billing; and

    d. Authorizing and pursuing collection and litigation against Plaintiff for amounts Oaklawn Hospital had no contractual right to recover.

325. The Explanation of Benefits issued by Cigna expressly confirmed that:

> a.  YOUR CONTRACT WITH CIGNA DOES NOT ALLOW YOU TO BILL
>     THE PATIENT AFTER THE TIME LIMIT."

326.    Despite this clear contractual prohibition, Oaklawn Hospital continued to seek payment from Plaintiff.

**Causation and Damages**

327.    As a direct and proximate result of Oaklawn Hospital's breach of its contractual obligations owed to Plaintiff as an intended third-party beneficiary, Plaintiff suffered damages including:

> a.  Exposure to unlawful billing and collection efforts;
>
> b.  Emotional distress, anxiety, and humiliation;
>
> c.  Attorney fees and litigation expenses incurred defending against improper collection litigation;
>
> d.  Loss of time and productivity; and
>
> e.  Risk of unlawful judgment, wage garnishment, and credit harm. S

**Declaratory Relief**

328.    An actual and justiciable controversy exists regarding Plaintiff's rights under the Oaklawn–Cigna provider agreement.

329.    Plaintiff seeks a declaration that:

> a.  She was and is an intended third-party beneficiary of the provider agreement;
>
> b.  Oaklawn Hospital breached that agreement by attempting to bill and collect from Plaintiff; and
>
> c.  Plaintiff owed no contractual liability to Oaklawn Hospital beyond the $900.00 sum resolved in the state-court action.

**Relief Requested**

330.     Plaintiff seeks all relief available at law and in equity, including compensatory damages, declaratory relief, attorney fees and costs where authorized, and such further relief as the Court deems just and proper.

### TWELVETH  CAUSE OF ACTION
### DEFENDANTS GOODMAN FROST, PLLC,
### ROBERT J. GOODMAN, AND TIMOTHY J. FROST
### Tortious Interference with Contractual Relations
### *(Michigan Common Law)*

331.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully restated herein.

332.     Under Michigan law, a claim for tortious interference with a contractual relationship requires: (1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant. To satisfy the third element, a plaintiff must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights of another.

333.     At all relevant times, Plaintiff was a party to a valid health insurance contract with Cigna HealthCare. Additionally, Defendant Oaklawn Hospital was a party to a valid provider agreement with Cigna. This provider agreement expressly prohibited Oaklawn Hospital from billing Plaintiff personally for charges where the provider failed to timely submit claims. Plaintiff was an intended third-party beneficiary of these contractual protections.

334.     Defendants Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost had actual knowledge of these contractual relationships, including the specific "no-balance-billing" provisions, through their receipt and review of Plaintiff's insurance information and the Cigna Explanation of Benefits (EOB) stating Plaintiff owed $0.00.

335.    Defendants intentionally and improperly interfered with the contractual relations by instigating Oaklawn Hospital's breach of its provider agreement. Defendants' conduct was wrongful per se as it involved acts that are inherently wrongful and can never be justified under any circumstances, including

   a.  The intentional use of false and misleading statements in a judicial proceeding to collect a debt known to be legally unenforceable;

   b.  The filing of a verified amended complaint asserting a debt was due and owing despite possessing documentary proof (the EOB) that the debt was contractually barred.

336.    In the alternative, if Defendants' acts are deemed lawful on their face, they were done with actual malice and were unjustified in law. Plaintiff demonstrates the following specific, affirmative acts that corroborate Defendants' unlawful purpose:

   a.  The "Law School" Intimidation: Defendant Goodman used his status as an attorney to belittle Plaintiff and discourage her from asserting her contractual rights, stating she did not go to law school and could not understand her liability.

   b.  Defendants filed an amended complaint and aggressive discovery requests specifically to increase the economic and emotional burden on Plaintiff, thereby inducing Oaklawn to continue its breach of the "no-billing" clause rather than adhering to its contractual obligations.

337.    As a direct result of Defendants' instigation, Oaklawn Hospital breached its contract with Cigna and its duties to Plaintiff by maintaining a collection action for nearly $12,000. Plaintiff suffered actual damages including emotional distress, physical manifestations of stress, and the necessity of incurring legal fees to defend against the instigated breach.

338.    Plaintiff seeks compensatory and exemplary damages, costs, and attorney fees for Defendants' tortious interference.

## **PRAYER FOR RELIEF**

339.    WHEREFORE, Plaintiff Nicole Goodwin respectfully requests that judgment be entered in her favor and against Defendants, jointly and severally where permitted by law, and that the Court award the following relief:

340.    An award of all compensatory and actual damages proven at trial, including but not limited to:

a.   Emotional distress, anxiety, humiliation, loss of sleep, and physical manifestations of stress;

b.   Loss of time, loss of productivity, and interference with daily activities;

c.   Out-of-pocket expenses incurred responding to unlawful collection activity and defending against improper litigation;

d.   Economic harm and litigation-related losses proximately caused by Defendants' conduct.

341.   **Statutory Damages**

a.   Statutory damages pursuant to *15 U.S.C. § 1692k(a)(2)(A)* for Defendants' violations of the Fair Debt Collection Practices Act;

b.   Statutory damages pursuant to *MCL 445.911(2)* for violations of the Michigan Consumer Protection Act, in the amount of $250.00 or actual damages, whichever is greater;

       c.    All statutory damages authorized under the Michigan Collection Practices Act, *MCL 445.251 et seq.*

342. An award of exemplary damages under Michigan common law to compensate Plaintiff for indignity, humiliation, mental suffering, and emotional harm caused by Defendants' willful, reckless, and malicious conduct, including but not limited to the misuse of judicial process and the unauthorized disclosure of confidential medical information.

343. An award of reasonable attorneys' fees, litigation expenses, and taxable costs as authorized by statute, including but not limited to *15 U.S.C. § 1692k(a)(3)*, *MCL 445.257*, and *MCL 445.911(2).*

344. Declaratory and injunctive relief declaring Defendants' conduct unlawful and enjoining

345. Defendants from engaging in the deceptive, unfair, or abusive practices alleged herein.

346. An award of pre-judgment and post-judgment interest as permitted by law.

347. Such other, further, and additional relief as the Court deems just, equitable, and proper.

## JURY DEMAND

The Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated January 2, 2026,            Lighthouse Litigation, PLLC

                      /s/Joshua S. Goodrich, J.D., LL.M.

                      By: Joshua S. Goodrich, J.D., LL.M. (P83197)
                      Attorney for Plaintiff
                      Lighthouse Litigation, PLLC
                      5208 W Saginaw Hwy, 81142
                      Lansing, MI 48908
                      Phone (269) 312-7435
                      Fax (646) 356-7044
                      Email: jsgoodrich@lighthouse-litigation.com

**<u>NOTICE</u>**

**<u>Document Preservation Demand</u>**

Plaintiff demands that each Defendant preserve all records and direct all vendors, agents, and other third parties with relevant documents or data to do so, too. Please contact the attorneys listed here to discuss this.