**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

NICOLE GOODWIN,

     Plaintiff,

v.

                            Case No. 1:26-CV-10

                            Hon. Jane M. Beckering

GOODMAN FROST, PLLC; ROBERT J.
GOODMAN; and TIMOTHY J. FROST

     Defendants.

---

**\*\* ORAL ARGUMENT REQUESTED\*\***

**DEFENDANTS GOODMAN FROST, PLLC'S, ROBERT GOODMAN AND TIMOTHY FROST'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND BRIEF IN SUPPORT**

Defendant Goodman Frost, PLLC ("Firm"), Robert Goodman and Timothy Frost (jointly, "Defendants") state as follows for their Motion to Dismiss First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Brief in Support:

**Motion to Dismiss**

1.      Plaintiff filed a 347 paragraph complaint, alleging various causes of action arising from an invoice generated from Plaintiff's emergency room visit to Ella E.M. Brown Charitable Circle, d/b/a Oaklawn Hospital ("Oaklawn").  In response to Defendants' Motion to Dismiss, Plaintiff filed a 299 paragraph First Amended Complaint ("FAC") that did not cure the defects raised in Defendants' initial lawsuit.

2.      The core allegations remain the same.  Defendants filed a lawsuit to recover the full amount of the debt owed to Oaklawn for the visit ("Debt") in the 10th District Court ("Underlying Case") and, through counsel, Plaintiff agreed to pay a portion of the Debt.  *See* FAC at ¶117, ECF 17, PageID 188.

4919-7409-8066, v. 2

3.    A copy of the judgment entered by the state court is attached to the FAC as Exhibit 13.  *See* ECF 17-13; PageID 290-291.

4.    Despite her agreement to pay a portion of the Debt, Plaintiff contends that Defendants' efforts to collect the Debt violated various subsection of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §1692, *et al.* and state laws.

5.    The gist of Plaintiff's theory is that, under Oaklawn's agreement with Plaintiff's health insurance carrier, Oaklawn could not sue Plaintiff for payment, if the carrier denied Oaklawn's claim because the claim was not timely submitted.  *See* FAC at ¶¶89 – 91; 122, PageID 185, 189.

6.    Plaintiff was advised of her rights under the FDCPA, including her right to dispute any part of the Debt, in writing, and that if she did not do so, Defendants would assume that the Debt was valid.  *See* FDCPA Notice of Rights, ECF 17-4, PageID 232.

7.    Plaintiff alleges that she disputed the Debt in writing within 30 days of Defendants' advice of rights, as provided in 15 U.S.C. §1692g(4), but the document cited to support that proposition does not.  *See* FAC at ¶61, PageID 182, citing Exhibit, PageID 290-291.  In any event, Plaintiff alleges that Defendants provided her an invoice itemizing the treatment she received.  *See* FAC at ¶66 and ECF 17-6, PageID 239-241. She further alleges that, when she asked for additional information, Defendants provided it.  *See* Plaintiff's Affidavit, ECF 17-12; PageID 286, citing ECF 17-7, PageID 243-265.

8.    Instead, Plaintiff defended the Underlying Case, informing the state court of her theory that she did not owe the Debt because Oaklawn did not submit its claim for reimbursement timely.  *See* Plaintiff's pre-trial statement, ECF 17-11, PageID 282.  *See* Answer in Underlying Case, attached as Exhibit A; Amended Answer in Underlying Case, attached as Exhibit B.

2

9.      Despite this defense and on the advice of her counsel, Plaintiff proposed to resolve the Underlying Case for $900. *See* ECF 17-1, PageID 224.

10.     Defendants, on behalf of Oaklawn, accepted the offer of judgment and, on December 29, 2025, the state court entered judgment in favor of Oaklawn and against Plaintiff for $900.  That judgment has been satisfied.  *See* ECF 17-13; PageID 290-291.

11.     Plaintiff paid the judgment and filed the instant case.

12.     As set forth more fully in the accompanying Brief in Support, Plaintiff's claims fail because (a) the FDCPA claim could have been brought in the state court case and therefore is barred by *red judicata;* and (b) the FDCPA does not bar a debt collector from filing suit to collect a debt that is owed, even if the amount is in dispute.

13.     Defendants therefore ask the Court to dismiss the FDCPA claims, with prejudice, and to dismiss the state law claims, without prejudice, under 28 U.S.C. §1367(c).

14.     As set forth more fully below, each of the companion state law claims also fail as a matter of law and should be dismissed, with prejudice.

15.     Defendants also move, in the alternative, to dismiss the state law claims because they "involve different statutory schemes and will needlessly add complexity to an already complex case."  *Price v. Specialized Solutions Services, LLC,* Case No. 1:20-cv-862, 2021 WL 5924822 (W.D. Mich. April 12, 2021). "[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Pinney Dock & Transport Co v. Penn Cent. Corp.,* 196 F.3d 617, 620 (6th Cir. 1999).  The state law claims outnumber the federal claims and, as in *Price,* raise different statutes and will add complexity to the case.

4919-7409-8066, v. 2

**Certifications Under Local Rules**

16.    Pursuant to Local Rule 7.2(b)(ii), the Firm certifies that this motion and accompanying brief consist of 6186 words, as determined by the "word count" function of Microsoft Word.

17.    Pursuant to Local Rule 7.1, the Firm sought but did not obtain the concurrence of Plaintiff in the relief sought in this motion.

WHEREFORE, there being no just cause otherwise, Defendants respectfully ask the Court to dismiss the FAC Complaint, with prejudice or, in the alternative, to dismiss Count I with prejudice and dismiss the remaining claims without prejudice.

**BRIEF IN SUPPORT**

Plaintiff Nicole Goodwin's FAC represents her second attempt to repackage a straightforward debt collection matter—one that resulted in a final judgment against her in Michigan state court—into federal litigation against the attorneys who represented the creditor. Despite Plaintiff's efforts to amend her pleading, the fundamental defects identified in Defendants' prior Motion to Dismiss remain unremedied.

The FAC's core theory remains unchanged: Plaintiff contends that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by filing and prosecuting a state court collection action on behalf of their client, Oaklawn Medical Group, P.C. ("Oaklawn"), to recover amounts Plaintiff allegedly owed for medical services. That state court action resulted in a judgment— proposed by Plaintiff herself under MCR 2.405—requiring Plaintiff to pay $900. Plaintiff now seeks to collaterally attack that judgment while simultaneously arguing that the very act of filing the lawsuit constituted federal statutory violations.  Her efforts fail for three independent reasons. First, Plaintiff's claims are barred by res judicata; the state court judgment was a final adjudication

4

4919-7409-8066, v. 2

on the merits, the parties are in privity, and Plaintiff's FDCPA claims arose from the same transaction and could have been raised as compulsory counterclaims. Second, Plaintiff fails to state a claim under any provision of the FDCPA because filing and prosecuting a debt collection lawsuit—even one that is ultimately unsuccessful or results in a reduced judgment—does not violate the statute. Third, Plaintiff's state law claims for abuse of process, silent fraud, negligent misrepresentation, civil conspiracy, and interference with contractual relations fail as a matter of law because Defendants owed no duty to Plaintiff and were engaged in legitimate adversarial litigation on behalf of their client.

## I. STATEMENT OF FACTS

On March 20, 2023, Plaintiff received emergency medical services from Oaklawn Hospital. (FAC ¶ 45; PageID 180) At the time of service, Plaintiff provided Oaklawn with her contact information, including her mailing address, phone number, email address, and insurance information. (FAC ¶ 46; PageID 180.) Plaintiff was insured under an Employee Retirement Income Security Act ("ERISA") employer-provided health insurance plan underwritten by Cigna. (FAC ¶ 47; PageID 180.)

Oaklawn Hospital generated Account #42192 and billed $11,974.46 for the services rendered. (FAC ¶ 52; PageID 181.) Plaintiff alleges that Oaklawn Hospital, through "negligence or ineptitude during the registration process," failed to properly notify her of any outstanding charges and sent billing statements to an incorrect address—"863 Gorsline Rd" instead of her correct address, "8631 Gorsline Rd." (FAC ¶¶ 51, 53, 66; PageID 181-182.) Plaintiff alleges she never received these notices and had no knowledge of any outstanding balance until September 13, 2024—543 days after the date of service. (FAC ¶¶ 54, 57; PageID 181.)

4919-7409-8066, v. 2

On September 13, 2024, Defendants sent Plaintiff an initial collection letter (Reference Number: 24E01226) on behalf of Oaklawn, seeking payment and advising Plaintiff of her right to dispute the debt within 30 days. (FAC ¶¶ 58-59; PageID 182.) Plaintiff alleges that she "reached out to Defendant Goodman Frost PLLC and started communication by phone and email with Defendant Goodman Frost PLLC and Defendant Goodman personally." (FAC ¶ 60; PageID 182.) Plaintiff alleges that "[w]ithin the 30-day validation period provided in Defendants' September 13, 2024, letter, Plaintiff disputed the alleged debt in writing and provided insurance documentation demonstrating non-liability" and cites Exhibit 13 to her FAC to support this contention.  (FAC ¶ 61; PageID 182.)  Exhibit 13 to her FAC does not support this allegation.  *See* ECF 17-13; PageID 290.  Moreover, Plaintiff admits that Defendants provided her with both a detailed invoice and an additional lengthy summary of the charges and did so before they filed suit.  *See* Plaintiff's Affidavit, ECF 17-12, PageID 286 (in September 2024, "Mr. Goodman then sent the hospital invoice to my email" and in October 2024, "Mr. Goodman sent me a response email attaching debt verification and my medical records from Oaklawn Hospital").

Plaintiff alleges that Oaklawn Hospital submitted the claim to Cigna on December 12, 2024, and that Cigna processed and denied the claim on December 14, 2024. (FAC ¶¶ 87-89; PageID 185.) According to Plaintiff, the Explanation of Benefits ("EOB") showed that Plaintiff owed $0.00 and stated: "YOUR CONTRACT WITH CIGNA DOES NOT ALLOW YOU TO BILL THE PATIENT AFTER THE TIME LIMIT." (FAC ¶¶ 90-91; PageID 185.)  Plaintiff alleges that she provided the EOB to Defendant Goodman Frost, PLLC, via Defendant Robert J. Goodman. (FAC ¶ 94; PageID 186.) When Plaintiff informed Defendant Goodman that she owed nothing based on the EOB and her conversations with Cigna, Plaintiff alleges Defendant Goodman responded by saying "he went to law school, and she did not, and he had been practicing law for

6

almost 30 years." (FAC ¶ 98; PageID 186.) Plaintiff claims she "felt the tone of communication change to being belittled, insulted, and feeling like she was attacked." (FAC ¶ 99; PageID 186.)

On or about May 15, 2025, Defendants filed a collection action on behalf of Oaklawn in the Michigan 10th District Court (Calhoun County) against Plaintiff, seeking $11,974.46 plus costs, interest, and fees. (FAC ¶¶ 117-120; PageID 188.) The complaint alleged four counts: (1) breach of contract; (2) account stated; (3) unjust enrichment; and (4) quantum meruit. (FAC ¶ 119; PageID 188-89.) Plaintiff alleges that "Defendant Goodman Frost, PLLC, Defendant Goodman, and Defendant Frost had actual knowledge that the debt was barred by Oaklawn Hospital's Contract with Cigna Health Insurance Company." (FAC ¶ 120; PageID 189.)

Plaintiff alleges that on September 18, 2025, Defendants filed a pre-trial statement representing damages of "$11,974.46, in addition to accruing cost and interest" and seeking "recoverable attorney fees." (FAC ¶¶ 123-124; PageID 189.) Plaintiff filed her own pre-trial statement disputing the debt and arguing that Cigna's denial letter showed the provider "breached their contract by failing to file the claim on time, therefore charges cannot be billed to the patient." (FAC ¶¶ 126-128; PageID 189.)

After Plaintiff retained counsel, Defendants filed an amended complaint and served discovery requests. (FAC ¶¶ 134-135; PageID 190.) Plaintiff alleges that she and her counsel "had to spend time responding to the request for admission and interrogatories" and file an answer to the amended complaint. (FAC ¶¶ 136-137; PageID 190.)

On December 8, 2025, Plaintiff—represented by counsel—proposed an offer of judgment under MCR 2.405 in the amount of $900.00, comprised of a $150.00 emergency co-pay and $750.00 deductible. (FAC ¶¶ 4, 144; PageID 172; 191.) Defendants accepted the offer on December 17, 2025. (FAC ¶¶ 5, 146; PageID 173; 191.) On December 23, 2025, a proposed

7

judgment was filed with the court, which was approved by both parties as to form and substance. (FAC ¶¶ 6, 147; PageID 173; 191.) The 10th District Court signed the proposed judgment on December 29, 2025. (FAC ¶ 7; PageID 173.)

On February 28, 2025, Plaintiff filed the instant action against Defendants, asserting claims under the FDCPA and various state law theories. Defendants moved to dismiss, identifying fundamental defects in Plaintiff's claims. Rather than respond to the motion, Plaintiff filed the First Amended Complaint on February 20, 2026.  The FAC includes an extensive "Res Judicata / Claim-Splitting Disclaimer" spanning multiple paragraphs, in which Plaintiff attempts to preemptively defeat Defendants' res judicata defense through self-serving characterizations of the state court judgment. (FAC ¶¶ 10-15; PageID 173-175).

Based on these facts, the FAC asserts eight causes of action:

1. **FDCPA Violations (15 U.S.C. § 1692 et seq.)** – Plaintiff alleges violations of §§ 1692e(2)(A) (false representations of debt status), 1692e(5) (threatening action that cannot legally be taken), 1692g(b) (failure to cease collection pending verification), 1692f (unfair or unconscionable means), and 1692d (harassment or abuse). (FAC ¶¶ 149-171.)

2. **Michigan Collection Practices Act Violations (MCL § 445.251 et seq.)** – Plaintiff alleges Defendants misrepresented her legal liability and filed litigation to collect a non-existent debt in violation of MCL 445.252(e), (f)(i), (f)(ii), and (q). (FAC ¶¶ 172-185.)

3. **Abuse of Process** – Plaintiff alleges Defendants used the judicial process for "an ulterior purpose collateral to the legitimate object of litigation," including "[f]orcing Plaintiff to pay amounts Defendants knew were contractually barred," "[c]oercing payment from Plaintiff despite knowing that the dispute was required to be resolved through insurance billing," and

"[l]everaging the cost, stress, and coercive pressure of court proceedings to obtain payment outside lawful and contractual remedies." (FAC ¶¶ 186-192.)

4. **Silent Fraud/Fraudulent Misrepresentation** – Plaintiff alleges Defendant Goodman "suppressed or concealed a material fact" by failing to disclose "[t]hat Oaklawn Hospital was contractually barred from balance billing Plaintiff under its provider agreement with Cigna" and "[t]hat Plaintiff could not legally be held responsible for the alleged balance." (FAC ¶¶ 193-200.)

5. **Civil Conspiracy** – Plaintiff alleges Defendants "knowingly entered into an agreement, mutual understanding, and acted in concert to collect medical charges from Plaintiff that were contractually barred by Oaklawn Hospital's provider agreement." (FAC ¶¶ 201-230.)

6. **Negligent Misrepresentation** – Plaintiff alleges Defendants "negligently supplied false or misleading information to Plaintiff" regarding her legal obligations when they "assumed a duty to exercise reasonable care" by "voluntarily suppl[ying] factual and legal-status information to a consumer for the purpose of inducing payment." (FAC ¶¶ 231-242.)

7. **Interference with Third-Party Beneficiary Contract Rights** – Plaintiff alleges she "was an intended third-party beneficiary of the Oaklawn–Cigna provider agreement" and that Defendants "interfered with and frustrated Plaintiff's vested contractual rights under MCL 600.1405." (FAC ¶¶ 243-282.)

8. **Tortious Interference with Contractual Relations** – Plaintiff alleges Defendants "intentionally and improperly interfered with the contractual relations by instigating Oaklawn Hospital's breach of its provider agreement." (FAC ¶¶ 283-290.)

9

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court need not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.  Res judicata* may be raised as a defense in a pleading challenge under Rule 12(b)(6). *Smith v. Lerner Sampson & Rothfuss, LLP*, 658 F. App'x 268, 275 (6th Cir. 2016). A court may consider matters of public record without converting a Rule 12(b)(6) motion to one under Rule 56. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017).

## III. ARGUMENT

### A.    Plaintiff's claims are barred by *res judicata.*

Under Michigan law, which governs the preclusive effect of the state court judgment pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, *res judicata* bars a subsequent action when: (1) the first action was decided on the merits; (2) the matter in the second action was or could have been resolved in the first action; and (3) both actions involve the same parties or their privies. *Adair v. State*, 470 Mich. 105, 121 (2004). Michigan applies a broad version of *res judicata* that bars not only claims actually litigated, but also "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*; *see also Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998) (articulating the four-element test for claim preclusion). All three elements are satisfied here.

First, the FAC acknowledges that Plaintiff proposed an offer of judgment under MCR 2.405 and that the court entered judgment in the amount of $900. (FAC ¶¶ 4-7; PageID172-173.) An MCR 2.405 judgment constitutes a final adjudication on the merits for *res judicata* purposes. *Hanley v. Mazda Motor Corp.*, 239 Mich. App. 596, 602 (2000) (holding that an "accepted, entered and satisfied offer of judgment" is a final judgment on the merits). Plaintiff's attempt to characterize the judgment as merely a "strategic litigation compromise" that resolved "only the claims asserted by Plaintiff against Defendant" is unavailing. (FAC ¶ 3; PageID 172.) A party cannot unilaterally limit the preclusive effect of a judgment through self-serving language in a proposed order. The preclusive effect of a judgment is determined by operation of law, not by the parties' subjective intent or characterizations. *See Knue v. Smith*, 478 Mich. 88 (2007); *Marilyn Froling Revocable Living Trust v. Bloomfield Hill Country Club*, 283 Mich. App. 264, 300 (2009) ("It would undermine the function of MCR 2.405 to allow a defendant to offer an entry of judgment by condition such offer on the judgment not having the effect of an ordinary judgment on the merits."). Plaintiff cannot defeat claim preclusion by inserting disclaimer language into a subsequent pleading. The question is whether the FDCPA claims could have been raised in the prior action—not whether Plaintiff attempted to reserve them for later litigation.

Second, Plaintiff's FDCPA claims arise directly from Defendants' conduct in sending the September 13, 2024 collection letter and filing the Underlying Case.  These claims arose from the same transaction as the underlying debt collection lawsuit and could have been brought in that action.  Indeed, the Sixth Circuit has squarely held that FDCPA claims arising from the same debt collection efforts are barred by *res judicata* when not raised in the underlying state court action. In *Forgues v. Select Portfolio Servicing*, 690 F. App'x 896, 901 (6th Cir. 2018), the court affirmed dismissal of FDCPA claims on *res judicata* grounds, holding that claims arising out of the same

11

transaction or occurrence as a prior suit are precluded, even if based on different legal theories. Plaintiff's allegation that the Michigan 10th District Court was a "limited-jurisdiction proceeding" that prevented "full and fair litigation" of her federal claims is meritless. (FAC ¶ 13; PageID 174.) Michigan district courts have jurisdiction over counterclaims regardless of amount in controversy. MCL 600.8401(2). Plaintiff could have raised her FDCPA claims as counterclaims in the state court action and chose not to do so. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 746 (6th Cir. 2002) (applying Michigan claim preclusion law and noting that claims that might have been raised in the first action through reasonable diligence are barred).

Finally, there was privity between Oaklawn and the Defendants.  The FAC's attempt to avoid privity by arguing that Defendants are sued "for their independent statutory misconduct as debt collectors" rather than as Oaklawn's agents is a distinction without a difference. (FAC ¶ 14; PageID 175.) The attorney-client relationship is "a quintessential principal-agent relationship," *CIR v. Banks*, 543 U.S. 426, 436 (2005), and attorneys who represent creditors in collection actions are in privity with their clients for res judicata purposes. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (recognizing preclusion where there is a pre-existing substantive legal relationship between the person to be bound and a party to judgment); *Wallace v. JP Morgan Chase Bank, N.A.*, Case No. 13-13862, 2014 WL 4772029, at *5 (E.D. Mich. Sept. 24, 2014) (attorney representing creditor in debt collection proceeding is in privity with creditor for *res judicata* purposes); *Sandlin v. CitiMortgage*, 19-cv-02368, 2021 WL 1581771, at *7 (W.D. Tenn. Mar. 1, 2021).

Plaintiff's FDCPA claims are based entirely on actions Defendants took in their capacity as counsel for Oaklawn—sending collection letters and filing the collection lawsuit. (FAC ¶¶ 117-120, 152-153.) Plaintiff cannot evade privity by recharacterizing Defendants' role as "debt collectors" when the complained-of conduct is attorney representation in litigation. Michigan law

12

defines privity broadly, finding where the interests of the nonparty are so closely aligned with those of a party in the prior litigation that the party effectively represents the same legal right being asserted in the subsequent case. *Peterson Novelties, Inc. v. City of Berkeley*, 259 Mich. App. 1, 13 (2003).

Each of the elements of *res judicata* are present in this case and warrant the dismissal of each of the FDCPA claims, with prejudice.

### B.      The FAC fails to state a claim under the FDCPA.

Even if Plaintiff's claims were not barred by res judicata, the FAC fails to state a plausible claim under any provision of the FDCPA.

### 1. **Plaintiff Fails to State a Claim Under 15 U.S.C. § 1692g(b)**

The FAC asserts that Defendants failed to verify the debt in response to Plaintiff's dispute. (FAC ¶¶ 157-160.) However, Section 1692g(b) requires a debt collector to cease collection activities and verify the debt only if the consumer disputes the debt "in writing" within thirty days of receiving the initial validation notice. 15 U.S.C. § 1692g(a)(3)-(4). While the FAC now alleges that Plaintiff "disputed the alleged debt in writing," these allegations are conclusory and do not establish that Plaintiff submitted a proper written dispute of the debt itself. (FAC ¶ 61; PageID 182.)  Moreover, the document cited in support of that proposition does not support it. *Id* at 17-13; PageID 290-91.

In any event, Plaintiffs' own statements, made under oath, establish that Defendants ***did*** validate the debt before they filed suit by providing both a detailed invoice and the medical records that supported the invoice.  This is sufficient under controlling law.  "The verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment

13

obligation." *Haddad v. Alexander, Zelmanski, Danner & Fioritto,* 758 F.3d 777, 785-86 (6th Cir. 2014).  "This information does not have to be extensive. It should provide the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on a certain date."  All of this information is contained in the documents Plaintiff admits – under oath – that she reviewed prior to the filing of the Underlying Case.

### 2. Plaintiff Fails to State a Claim Under 15 U.S.C. § 1692e(2)(A)

Plaintiff claims Defendants violated § 1692e(2)(A) by falsely representing the character, amount, or legal status of the debt. (FAC ¶¶ 152-154.) This claim fails for two independent reasons.

First, the state court judgment confirms that Plaintiff owed a debt. Plaintiff herself proposed the $900 judgment, thereby acknowledging liability.  Plaintiff cannot simultaneously agree to pay a debt and claim that any representation of that debt was "false."

Second, even if the original amount sought ($11,974.46) exceeded what was ultimately owed, seeking a higher amount in litigation does not constitute a "false representation" under the FDCPA. As the Sixth Circuit has explained, "a lawyer does not 'misrepresent' facts by making factual contentions that turn out to be incorrect." *Van Hoven v. Buckles & Buckles, P.C.*, 947 F.3d 889, 895-96 (6th Cir. 2020). The Sixth Circuit further held that "merely advancing an ultimately unsuccessful claim for relief does not, in and of itself, rise to an FDCPA violation." *Snyder v. Finley & Co., L.P.A.*, 37 F.4th 384, 390 (6th Cir. 2022) (citing *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995)). The FAC's theory that the debt was "contractually barred" under the Oaklawn-Cigna provider agreement does not salvage this claim. Whether Oaklawn was permitted to bill Plaintiff under its provider agreement with Cigna was a contested legal question—not an established fact that Defendants knowingly misrepresented.

14

The fact that Plaintiff agreed to a judgment confirms the debt was not invalid. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 332-33 (6th Cir. 2006) (holding that filing a state court lawsuit without immediate means of proving debt does not constitute a deceptive practice under § 1692e(10) where plaintiff did not deny the debt's existence or allege the amount was misstated).

### 3. **Plaintiff Fails to State a Claim Under 15 U.S.C. § 1692e(5)**

Section 1692e(5) prohibits threats to take action that cannot legally be taken. 15 U.S.C. § 1692e(5). The FAC alleges Defendants violated this provision by filing the state court lawsuit. (FAC ¶¶ 155-156.) This claim fails as a matter of law.

Filing a debt collection lawsuit is not a threat—it is an action. And filing a lawsuit that turns out to be unsuccessful, or that results in a judgment for less than the amount sought, does not violate § 1692e(5). The Supreme Court has held that "the fact that a lawsuit turns out ultimately to be unsuccessful" does not "make the bringing of it an 'action that cannot legally be taken.'" *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995). The Sixth Circuit has specifically addressed this issue. In *Harvey v. Great Seneca Financial Corp.*, the court held that filing a lawsuit "is certainly an authorized means of collecting a debt" and does not constitute harassment or abuse under the FDCPA. 453 F.3d at 330. Similarly, in *Van Hoven*, the court held that a debt collector does not violate § 1692e(5) merely because its legal position is ultimately unsuccessful. 947 F.3d at 895-96.

Here, Defendants filed a lawsuit, the case was litigated, and a judgment was entered. That the judgment was for less than the amount originally sought does not transform legitimate litigation into an FDCPA violation.

15

#### 4. Plaintiff Fails to State a Claim Under 15 U.S.C. § 1692f

Section 1692f prohibits the use of "unfair or unconscionable means" to collect a debt. 15 U.S.C. § 1692f. The FAC alleges Defendants violated this provision by "leveraging the judicial process to collect a debt barred by contract." (FAC ¶ 161.) This claim fails for the same reasons as the § 1692e(5) claim. Filing and prosecuting a lawsuit is not "unfair or unconscionable" conduct under the FDCPA—it is the quintessential lawful means of debt collection. *See Harvey*, 453 F.3d at 330. The fact that Plaintiff disputes the underlying debt does not make the lawsuit unfair; it makes the lawsuit contested. Courts resolve contested claims every day; the existence of a dispute does not make litigation improper. *See Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 510 (6th Cir. 2007) (applying the "least sophisticated consumer" standard and noting no reasonable consumer would find lawful litigation conduct to violate the FDCPA).

#### 5. Plaintiff Fails to State a Claim Under 15 U.S.C. § 1692d

Section 1692d prohibits conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The FAC alleges that Defendant Goodman made "belittling and demeaning statements" during collection communications, including telling Plaintiff that "he went to law school, and she did not." (FAC ¶¶ 98, 165.)  Even accepting these allegations as true, they do not state a claim under § 1692d. A single conversation in which an attorney asserts his professional qualifications does not constitute "harassment, oppression, or abuse." The statute targets conduct such as threats of violence, obscene language, repeated telephone calls intended to annoy, and publication of "shame lists." 15 U.S.C. § 1692d(1)-(6). The Sixth Circuit has held that "any attempt to collect a default debt will be unwanted by a debtor but employing the court system in the way alleged . . . cannot be said to be an abusive tactic under the FDCPA." *Harvey*, 453 F.3d at 330-31. The FAC's remaining allegations

16

under § 1692d relate to the filing of the state court lawsuit, which, as explained above, cannot constitute harassment. *Id.*

### C.     Plaintiff's state law claims fail.

The FAC adds several state law claims; each fails as a matter of law.

#### 1.     Count II.

It is not clear from Count II whether Plaintiff is alleging violations of the Michigan Regulation of Collection Practices Act [MCL 445.227] or the provisions of the Michigan Occupational Code that are applicable to collection agencies. *See* FAC at ¶¶173-178; PageID 198. A law firm is not a "collection agency," under the MOC. MCL 339.901(1)(b)(xi); *Montgomery v. Shermeta, Adams & Von Allmen, P.C.,* 885 F. Supp. 2d 849, 858 (W.D. Mich 2012). ("The plain language of the [MOC] excludes the Law Firm from the definition of 'collection agency'.")

In any event, because Plaintiff "does not allege that Defendants violated any specific provision of the MRCPA" but rather, relies on the same factual allegations as the FDCPA claim, the MRCPA claims should be dismissed. *Newman v. Trott & Trott, P.C.,* 889 F. Supp. 2d 948, 967 (E.D. Mich 2012). Claims under the MRCPA which 'simply duplicate" claims under the FDCPA "need not be addressed separately."

#### 2.     Abuse of Process (Third Cause of Action)

To state a claim for abuse of process under Michigan law, a plaintiff must allege: (1) an ulterior purpose, and (2) an act in the use of process that is improper in the regular prosecution of the proceeding. *Friedman v. Dozorc*, 412 Mich. 1, 30 (1981). Critically, "the improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself." *Id.*

4919-7409-8066, v. 2

The FAC alleges Defendants filed the state court lawsuit "to force Plaintiff to pay an amount she did not lawfully owe." (FAC ¶¶ 188-189.) This is not an "ulterior purpose"—it is the very purpose of a debt collection lawsuit. Filing suit to collect a debt, even a disputed one, is the regular and proper use of legal process. Plaintiff's disagreement with the merits of the underlying claim does not transform legitimate litigation into abuse of process. *See Lawrence v. Burdi*, 314 Mich. App. 203, 217-18 (2016) (requiring that the defendant use process for a purpose "collateral to the legitimate object of litigation").

### 3. Silent Fraud (Fourth Cause of Action)

Silent fraud requires: (1) suppression of a material fact, (2) that the defendant had a duty to disclose, (3) with the intent to defraud. *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 28 (1998). The FAC alleges Defendants committed silent fraud by failing to disclose that Plaintiff did not owe the debt. (FAC ¶¶ 197-198.) This claim fails because Defendants—as opposing counsel in adversarial litigation—had no duty to an adverse, non-client litigant. *Friedman v. Dozorc,* 412 Mich 1, 23 (1981).  Attorneys have ethical obligations to their clients, not to adverse parties. The adversarial system presumes that each party will advocate for its own interests. Defendants had no duty to tell Plaintiff she did not owe the debt, particularly when that issue was contested.

Moreover, to sustain a claim of common-law fraud, the plaintiff must allege that she relied on the misrepresentation and that the reliance was reasonable.  *Foreman v. Foreman,* 266 Mich App 132, 141-142 (2005).   A claim for silent fraud likewise requires a plaintiff's reliance to be reasonable.  *UAW-GM Human Resource Ctr v. KSL Recreation Corp.,* 228 Mich App 486, 504 (1998).  Even before she retained counsel, Plaintiff asserted that she did not owe the debt, because of the statement allegedly made by CIGNA in the EOB it sent her.  *See* FAC at ¶¶89-91, 97, PageID

18

185 - 186.  Plaintiff, as a matter of law, did not rely on Defendants' failure to inform her that she

"did not owe the debt."  Count IV must be dismissed, with prejudice.

### 4. Negligent Misrepresentation (Sixth Cause of Action)

To state a claim for negligent misrepresentation, a plaintiff must allege that the defendant

made a false statement while under a duty to provide accurate information. *Unibar Maint. Servs.,*

*Inc. v. Saigh*, 283 Mich. App. 609, 621 (2009).  Defendants, as counsel for Oaklawn, owed no duty

to Plaintiff to provide accurate information about her liability. To the contrary, Defendants' duty

ran to their client. Imposing liability on attorneys for advocating their client's position in litigation

would fundamentally undermine the adversarial system.  Moreover, as with the claim for fraud, a

claim for negligent misrepresentation requires reasonable reliance by the plaintiff.  *DBD Kazoo,*

*LLC v. Western Michigan LLC* (Case No. 361299)*, ___* Mich App ___ (2024 WL 500208) (Mich

App Feb. 8, 2024).  As a matter of law, that cannot be established in this case.

### 5. Civil Conspiracy (Fifth Cause of Action)

Civil conspiracy is a derivative claim that requires an underlying tort. *Advocacy Org. for*

*Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384 (2003). Because Plaintiff

has failed to state a claim for any underlying tort, her civil conspiracy claim necessarily fails. (FAC

¶¶ 201-230.)

### 6. Interference with Third-Party Beneficiary Rights (Seventh Cause of Action)

The FAC alleges Plaintiff was a third-party beneficiary of the provider agreement between

Oaklawn and Cigna, and that Defendants interfered with her rights under that agreement. (FAC ¶¶

243-282.) This novel theory fails because Plaintiff has not adequately alleged that the Oaklawn-

Cigna provider agreement was intended to benefit her directly. Under Michigan law, a party

claiming third-party beneficiary status must show that the contract was entered into for that party's

direct benefit—not merely that the party might incidentally benefit. *Schmalfeldt v. N. Pointe Ins. Co.*, 469 Mich. 422, 428 (2003). Insurance provider agreements are contracts between insurers and healthcare providers; patients are at most incidental beneficiaries. Moreover, even if Plaintiff were a third-party beneficiary, her claim would be against Oaklawn for breach of the provider agreement—not against Defendants for representing Oaklawn in litigation.

### 7. Tortious Interference with Contractual Relations (Eighth Cause of Action)

Under Michigan law, a claim for tortious interference requires: (1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant. *Health Call of Detroit v. Atrium Home & Health Care Servs.,* 268 Mich App 83, 89 (2005).  Plaintiff does not claim that Defendants caused CIGNA to deny her claim or in any other way breach a contract with her.   In other words, Plaintiff has not pled and cannot plead a material element of this claim.

### D.     Alternatively, the Court should decline supplemental jurisdiction.

If the Court dismisses Plaintiff's federal FDCPA claims, it should decline to exercise supplemental jurisdiction over the remaining state law claims. Under 28 U.S.C. § 1367(c)(3), a district court may decline supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. The Sixth Circuit has consistently held that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). There is a "strong presumption" against retaining supplemental jurisdiction once all federal claims have been dismissed. *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011).

Given that this case is at an early stage and the state law claims present novel questions of Michigan law, dismissal without prejudice would be appropriate.

20

4919-7409-8066, v. 2

## IV.    CONCLUSION.

Plaintiff had a full and fair opportunity to litigate the validity of the Debt in the Underlying Case.  She has an attorney and, presumably on the advice of that attorney, elected to resolve the Underlying Case with a judgment.  She cannot attack Defendants' filing of the Underlying Case in a new lawsuit.  The FDCPA simply does not recognize a claim on these facts.  The claims against the Defendants must be dismissed, accordingly.

Respectfully submitted,

Dated: March 6, 2026

*/s/Kathleen H. Klaus*
Kathleen H. Klaus (P67207)
Attorney for Defendants Goodman Frost PLLC, Timothy J. Frost, Robert J. Goodman
Maddin, Hauser, Roth & Heller, P.C.
One Towne Square, Fifth Floor
Southfield, MI 48076
(248) 359-7520
kklaus@maddinhauser.com

4919-7409-8066, v. 2

## PROOF OF SERVICE

The undersigned states that on the March 6, 2026, he served the *Defendants Goodman Frost, PLLC's, Robert Goodman and Timothy Frost's Motion to Dismiss First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Brief in Support* and this Proof of Service on the Clerk of the Court and the attorneys of record by CM/ECF electronic filing system.

I declare the foregoing statement to be true to the best of my information, knowledge and belief.

/s/ Almado Doko
Almado Doko

22

4919-7409-8066, v. 2