**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

**NICOLE GOODWIN,**

**Plaintiff,** Case No. 1:26-CV-10

v.

**GOODMAN FROST, PLLC, et al,**

**Defendants.**

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Plaintiff's Response confirms rather than refutes the fundamental deficiencies in the First Amended Complaint ("FAC"). Despite twenty-five pages of argument, Plaintiff cannot escape the central facts of this case: she proposed a judgment in the underlying state court action, the state court entered it, she paid it, and she now asks this Court to permit a collateral attack on that judgment under the guise of a claim under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff's Response mischaracterizes controlling Sixth Circuit and Michigan authority, relies on inapposite out-of-circuit decisions, and asks this Court to adopt novel legal theories that no court in this Circuit has endorsed. For the reasons set forth in Defendants' opening brief and as further explained below, the FAC should be dismissed.

**A. Plaintiff's Claims Are Barred by Res Judicata.**

Plaintiff's Response raises three arguments against *res judicata*, each of which fails.

1. **The MCR 2.405 Judgment Was a Final Adjudication on the Merits**.

Plaintiff contends that the MCR 2.405 judgment did not constitute a final adjudication on the merits of her FDCPA claims because the offer of judgment contained language purporting to limit its scope. This argument is legally untenable. Michigan law is clear that the preclusive effect of a judgment is determined by operation of law, not by the parties' subjective intent or self-serving



4921-6709-2637, v. 3

characterizations. The Michigan Court of Appeals has squarely held that "[i]t would undermine the function of MCR 2.405 to allow a defendant to offer an entry of judgment by conditioning such offer on the judgment not having the effect of an ordinary judgment on the merits." *Marilyn Froling Revocable Living Trust v. Bloomfield Hills Country Club*, 283 Mich. App. 264, 300 (2009). A party cannot unilaterally insert disclaimer language into an offer of judgment and thereby defeat the preclusive effect that attaches to the resulting judgment as a matter of law.

*Hanley v. Mazda Motor Corp.*, 239 Mich. App. 596, 602 (2000), only reinforces Defendants' position. *Hanley* held that "an accepted, entered and satisfied offer of judgment" constitutes a final judgment on the merits—full stop. Plaintiff attempts to carve out an exception for claims "expressly excluded from the offer's scope," but *Hanley* recognizes no such exception, and Plaintiff cites no Michigan authority permitting parties to contractually limit the preclusive effect of a final judgment through disclaimer language. The preclusive effect of a judgment is a matter of public policy, not private agreement.

Moreover, Michigan applies a broad version of res judicata that bars "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. State*, 470 Mich. 105, 121 (2004). The question is not whether the state court adjudicated Plaintiff's FDCPA claims on their merits. The question is whether those claims arose from the same transaction and could have been raised. They plainly did and could have been.

Finally, Plaintiff claims that Defendants are “equitably estopped” from arguing that parties cannot dictate the prelusive effect of a judgment. It offers no case law or even argument to support this contention. “Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible

argument in the most skeletal way, leaving the court to...put flesh on its bones." *McPherson v. Kelsy*, 125 F.3d 989, 995-96 (6th Cir. 1997). The argument – such as it is – is waived.

**2. Privity Exists Between Defendants and Oaklawn.**

Plaintiff argues that because Defendants were counsel—not named parties—in the underlying state court action, no privity exists for *res judicata* purposes. This argument elevates form over substance and ignores controlling authority.

Plaintiff attempts to distinguish *CIR v. Banks*, 543 U.S. 426, 436 (2005), by arguing that it addressed a different issue. But the Supreme Court's observation that the attorney-client relationship is "a quintessential principal-agent relationship" states a general legal principle that applies with full force here. More directly, the Supreme Court in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), expressly recognized preclusion where there is a "pre-existing substantive legal relationship" between the person to be bound and a party to the judgment. The attorney-client relationship is precisely such a relationship.

Plaintiff cites *Bates v. Township of Van Buren*, 459 F.3d 731, 737 (6th Cir. 2006), for the proposition that privity requires "substantial identity of interests" and a "working functional relationship." That standard is satisfied here. Defendants' actions in sending the collection letter and filing the state court lawsuit were undertaken solely in their capacity as counsel for Oaklawn. The FAC itself confirms this: every act Plaintiff complains of was performed by Defendants as Oaklawn's attorneys. *See* FAC ¶¶ 117-120, 152-153, ECF 17, PageID 188; 194-195. The interests of Defendants and Oaklawn in collecting the debt were entirely aligned, and Oaklawn's prosecution of the collection action through Defendants functionally represented the same legal right that Plaintiff now challenges. Under Michigan law, privity "includes a person so identified in interest with another that he represents the same legal right, such as a principal to an agent[.]"

*Peterson Novelties, Inc. v. City of Berkeley*, 259 Mich. App. 1, 12-13 (2003). Clearly, Defendants represented the "same legal right" in that case as Oaklawn, and the claims in the instant case all relate to Defendants' work pursuant to its privity with Oaklawn. Plaintiff's argument that Defendants are sued "in their independent capacity as debt collectors" rather than as Oaklawn's agents is a distinction without a difference. The FDCPA claims arise exclusively from Defendants' conduct as counsel for Oaklawn in the debt collection effort. Plaintiff cannot recharacterize the same conduct as "independent" merely by invoking a different legal theory.

**3. Plaintiff's FDCPA Claims Could Have Been Raised in the State Court Action.**

Plaintiff argues that she could not have raised FDCPA counterclaims in the state court action because Defendants were not parties and because the 10th District Court was a court of limited jurisdiction. Both arguments fail.

As to jurisdiction, Michigan district courts have jurisdiction over counterclaims regardless of amount in controversy. MCL 600.8401(2). State courts have concurrent jurisdiction over FDCPA claims, and Plaintiff does not dispute this. Plaintiff's vague assertion that "federal question jurisdiction under 28 U.S.C. § 1331 is not the same thing as Michigan district court jurisdiction" is a *non sequitur*. The question is whether Plaintiff had a forum in which she could have raised her claims, and she did.

As to whether FDCPA claims could have been raised against opposing counsel, Plaintiff relies on out-of-circuit authority—principally *Azar v. Hayter*, 874 F. Supp. 1314 (N.D. Fla. 1995) and *O'Driscoll v. Arbor Grove Condo. Ass'n*, 2023 WL 3197877 (M.D. Fla. 2023)—for the proposition that FDCPA claims are not ***compulsory*** counterclaims. Michigan does not recognize compulsory counterclaims. *Klock v. Vaughn,* unpublished *per curiam* decision of the Michigan Court of Appeals, decided November 23, 2021 (Docket 354778) ("In other words, MCR

2.203(A) does not require that a counterclaim or a cross-claim be raised, but rather provides that if a counterclaim is raised, the counterclaimant must raise all other counterclaims arising out of the transaction or occurrence that is the subject matter of the action.") In any event, Plaintiff's Middle and Northern District of Florida cases are not binding on this Court and are factually distinguishable. In this Circuit, the Sixth Circuit has applied Michigan's broad claim preclusion doctrine to bar claims arising from the same transaction, regardless of the legal theory on which they are based. *Forgues v. Select Portfolio Servicing*, 690 F. App'x 896, 901 (6th Cir. 2018); *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 747 (6th Cir. 2002).

Critically, Plaintiff could have joined Defendants as third-party defendants or counter defendants in the state court action. Michigan court rules permit a defendant to bring claims against non-parties whose conduct gives rise to the defendant's claims. MCR 2.203(G) ("Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim, subject to MCR 2.205 and 2.206.") Plaintiff's failure to avail herself of this procedural mechanism does not excuse her from the preclusive effect of the state court judgment. *Res judicata* bars claims that could have been raised through "reasonable diligence," *Adair*, 470 Mich. at 121, and the availability of joinder and third-party practice means Plaintiff had the procedural tools to raise her FDCPA claims against Defendants in the underlying action.

**4. Stolicker and Todd Are Inapposite.**

Plaintiff places heavy reliance on *Stolicker v. Muller, Muller, Richmond, Harms, Myers, and Sgroi, P.C.*, 387 F. Supp. 2d 752 (W.D. Mich. 2005), and *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 348 F. Supp. 2d 903 (S.D. Ohio 2004), *aff'd*, 434 F.3d 432 (6th Cir. 2006). Neither supports Plaintiff's position here.

First, neither case considered whether the subsequent claim was barred by *res judicata,* which is the argument Defendants raise. *Stolicker* involved allegations that the defendant law firm submitted a false affidavit in connection with a default judgment application. The court held that this specific claim—alleging a "separate and discrete" violation of federal law based on a fabricated document— was not barred by the *Rooker-Feldman* doctrine and did not constitute a collateral attack on the state judgment. *Stolicker*, 387 F. Supp. 2d at 755. Under Michigan law, a collateral attack on a judgment "occurs whenever a challenge is made to a judgment in any manner other than through a direct appeal." *People v. Howard,* 212 Mich App 366, 369 (1995). Defendants have not argued that the instant case is an attack on the judgment or that it is barred by the *Rooker-Feldman* doctrine; rather, they argue that the pending claims are barred by that judgment. Because *Stolicker* did not reach this issue, it is inapposite.

Second, *Todd* involved FDCPA claims based on an allegedly false affidavit submitted with an application to secure a post-judgment garnishment from an Ohio state court. The *Todd* court found that, because the state court action had already proceeded to a judgment by the time of the alleged FDCPA violation, it was not possible to assert a counterclaim. *Todd,* 387 F. Supp. 2d at 911, 912. Here, the purported FDCPA violations occurred before the judgment, during a time when a counterclaim should have been filed. In any event, the Sixth Circuit has determined that a writ of garnishment (the alleged "order" in *Todd)* is not a "judgment" under Michigan law. *VanderKodde v. Mary Jane Elliot,* 951 F.3d 397, 402 (6th Cir. 2020) (citations omitted). *Todd* does not stand for the broad proposition that FDCPA claims can never be precluded by a prior state court judgment, and Plaintiff's characterization of the case misstates its holding. It merely stands for the proposition that an FDCPA violation based on post-judgment conduct cannot be barred by *res judicata.* The case is inapposite, because Plaintiff's allegations allege pre-judgment conduct.

**B. The FAC Fails to State a Claim Under the FDCPA.**

Even setting *res judicata* aside, Plaintiff's FDCPA claims fail as a matter of law.

**1. Plaintiff's "Actual Knowledge" Theory Does Not Salvage Her Claims.**

The linchpin of Plaintiff's FDCPA theory is her assertion that Defendants had "actual knowledge" that the debt was "contractually barred" based on the Cigna Explanation of Benefits ("EOB"), and that this purported knowledge transforms otherwise lawful litigation conduct into an FDCPA violation. This theory is foreclosed by binding Sixth Circuit authority and rests on a fundamental misunderstanding of both the EOB's legal significance and the FDCPA's scope.

First, as a threshold matter, the Cigna EOB is not—and cannot be—dispositive of Plaintiff's legal liability. An explanation of benefits is an insurer's unilateral, internal determination of coverage under its agreement with the healthcare provider. It is not a judicial finding, an arbitration award, or any form of adjudication of the patient-debtor's liability. The EOB's statement that Oaklawn's "contract with Cigna does not allow you to bill the patient after the time limit" reflects Cigna's interpretation of its contract with Oaklawn—not a binding legal determination that the underlying debt never existed or was extinguished. Indeed, Plaintiff's own conduct undermines her theory: she proposed a $900 judgment rather than asserting the debt was zero, implicitly acknowledging that the debt's validity was a contested legal question rather than a settled fact. An insurer's denial of a provider's reimbursement claim does not extinguish the patient's underlying obligation as a matter of law, and Plaintiff cites no authority—in this Circuit or any other—holding that an EOB constitutes proof of debt invalidity.

Second, and dispositively, the Sixth Circuit has squarely rejected the argument that a debt collector "misrepresents" facts by advancing a legal position that ultimately proves unsuccessful. In *VanHoven v. Buckles & Buckles, P.C.*, 947 F.3d 889, 895-96 (6th Cir. 2020), the court held that

"a lawyer does not 'misrepresent' the facts by making a factual contention later proved wrong[.]" The court reasoned that allowing FDCPA claims premised on unsuccessful legal theories would "transform every unsuccessful debt-collection lawsuit into a potential FDCPA violation"—a result Congress did not intend. *Id.* Van Hoven is directly controlling here. Plaintiff attempts to distinguish it by arguing that *Van Hoven* involved a "legal dispute about the correct interpretation of a contractual provision" whereas this case involves "documentary proof" the debt was barred. This distinction collapses upon examination: Plaintiff's case is precisely a legal dispute about the correct interpretation of the Oaklawn-Cigna provider agreement. The EOB reflects one party's interpretation of that agreement—Cigna's—not an authoritative adjudication. That Plaintiff treats Cigna's interpretation as conclusive does not make it so. The Sixth Circuit does not permit litigants to transform contested legal questions into FDCPA misrepresentation claims merely by labeling their documentary evidence as definitive "proof."

Third, Plaintiff's reliance on *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 614 (6th Cir. 2009), is misplaced. Hartman established that an FDCPA claim may lie where a debt collector "knew or should have known" that a debt was "invalid," such as when a collector pursues a debt it fabricated or that has been discharged in bankruptcy. Id. at 614. But Hartman's "actual knowledge" standard requires knowledge that a debt is legally void—not merely that a debtor has a potential defense or that an insurer has taken an adverse coverage position. Here, Defendants had an objectively reasonable basis to pursue collection: Oaklawn provided medical services, Plaintiff received those services, and the scope of insurance coverage was a contested legal question subject to good-faith dispute. The fact that Plaintiff negotiated and proposed a reduced judgment—rather than obtaining a dismissal—confirms that the debt's validity was genuinely disputed, not that Defendants "knew" it was invalid. As the Sixth Circuit held in *Snyder v. Finley & Co., L.P.A.*, 37

F.4th 384, 387 (6th Cir. 2022), "merely advancing an ultimately unsuccessful claim for relief does not, in and of itself, rise to an FDCPA violation." Snyder and Van Hoven together establish that the FDCPA distinguishes between (1) pursuing debts in good faith based on a colorable legal theory, and (2) pursuing debts the collector actually knows to be fraudulent, void, or fabricated. Plaintiff’s allegations fall squarely in the former category.

**2. Filing a Lawsuit Is Not a "Threat" Under § 1692e(5).**

Plaintiff argues that the September 13, 2024 collection letter constituted a "threat" to take action that could not legally be taken, in violation of § 1692e(5). This argument fails for two independent reasons. First, Defendants did not merely “threaten” action—they filed suit and obtained a judgment. Section 1692e(5) prohibits threats “to take any action that cannot legally be taken or that is not intended to be taken.” 15 U.S.C. § 1692e(5). When a debt collector follows through on a stated intention by actually filing suit, the communication is not a “threat” at all—it is a statement of intent that was carried out. Second, even if the letter could be characterized as a threat, the Supreme Court in Heintz v. Jenkins, 514 U.S. 291, 296 (1995), held that “the fact that a lawsuit turns out ultimately to be unsuccessful” does not “make the bringing of it an ‘action that cannot legally be taken.’” The Court reasoned that Congress could not have intended to expose debt collectors to FDCPA liability for filing lawsuits that are later resolved against them, as this would chill legitimate debt collection litigation. Plaintiff attempts to circumvent *Heintz* by arguing that filing suit "with actual knowledge that the underlying debt is contractually unenforceable" is categorically different. But as demonstrated above, Plaintiff’s “actual knowledge” theory rests on a fundamental mischaracterization: an insurer’s *adverse* coverage determination on a contested contractual question does not constitute “knowledge” that a debt is fraudulent or legally void. The Sixth Circuit has never held that awareness of an adverse coverage position constitutes “actual

knowledge" sufficient to transform the filing of a lawsuit into an "action that cannot legally be taken," and Plaintiff cites no authority—in this Circuit or elsewhere—adopting such a rule.

**3. Plaintiff's § 1692g(b) Claim Remains Deficient.**

Plaintiff asks this Court to accept as true her bare allegation that she disputed the debt "in writing" within thirty days. But even at the pleading stage, the Court need not accept conclusory allegations unsupported by the FAC's own exhibits. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff cites Exhibit 13 to the FAC in support of her written dispute, but that exhibit—the judgment itself—does not support the allegation. Moreover, Plaintiff's own sworn affidavit establishes that Defendants provided both a detailed invoice and medical records before filing suit, satisfying the verification requirements under *Haddad v. Alexander, Zelmanski, Danner & Fioritto*, 758 F.3d 777, 785-86 (6th Cir. 2014). This admission is dispositive of this claim.

**4. The § 1692f and § 1692d Claims Fail for the Same Reasons.**

Plaintiff's § 1692f claim rests entirely on the theory that Defendants filed suit on a debt they "knew" was unenforceable. For the reasons set forth above, possession of a disputed EOB does not equate to knowledge that a debt is legally barred. Filing suit to collect a debt—even a contested one—is "the quintessential lawful means of debt collection." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006).

Plaintiff's § 1692d claim fares no better. Plaintiff now argues that the claim is based not merely on Defendant Goodman's reference to his legal credentials during a conversation, but on a broader "pattern of conduct" including filing the lawsuit, amending the complaint, and propounding discovery. But these are all ordinary incidents of litigation. The Sixth Circuit has held that "any attempt to collect a default debt will be unwanted by a debtor but employing the court system in the way alleged . . . cannot be said to be an abusive tactic under the FDCPA." *Harvey*,

453 F.3d at 330-31. The routine prosecution of a lawsuit—filing pleadings, engaging in discovery, and filing pre-trial statements—is not "harassment" under § 1692d, regardless of how unwelcome it may be to the opposing party.

**C. Plaintiff's State Law Claims Fail.**

Plaintiff's Response adds little to the state law claims and does not cure their fundamental deficiencies.

**1. Michigan Collection Practices Act (Count II).**

Plaintiff now clarifies that Count II invokes the Michigan Regulation of Collection Practices Act ("MRCPA"), MCL § 445.251 *et seq.*, rather than the Michigan Occupational Code. Even so, the MRCPA claims rest on the identical factual allegations as the FDCPA claims and fail for the same reasons. MRCPA claims that "simply duplicate" FDCPA claims "need not be addressed separately." *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 967 (E.D. Mich. 2012). Plaintiff identifies no independent basis for her MRCPA claims.

**2. Abuse of Process (Count III).**

Plaintiff argues that the "ulterior purpose" was to "coerce payment of a debt Defendants knew was contractually unenforceable." But filing a lawsuit to collect a debt is not a purpose "collateral to the legitimate object of litigation"—it is the very purpose of the litigation. *Lawrence v. Burdi*, 314 Mich. App. 203, 217-18 (2016). Plaintiff's disagreement with the merits of the underlying claim does not transform the filing of a collection suit into an abuse of process. Her allegation that Defendants filed an amended complaint and propounded discovery after Plaintiff retained counsel describes the ordinary course of litigation, not the kind of "irregular act" required to sustain this tort.

**3. Silent Fraud (Count IV) and Negligent Misrepresentation (Count VI).**

Plaintiff's theory that Defendants assumed a duty to disclose by "voluntarily supplying information" to a consumer is a transparent attempt to impose disclosure obligations on opposing counsel in adversarial litigation. Defendants—as counsel for Oaklawn—had no duty to advise Plaintiff of defenses to their client's claims. *Friedman v. Dozorc*, 412 Mich. 1, 23 (1981). Plaintiff's argument that Defendants' status as "debt collectors" under the FDCPA creates a common law duty of disclosure conflates statutory and common law obligations. The FDCPA creates its own remedial scheme; it does not impose a common law duty to disclose information favorable to the debtor.

Moreover, as Defendants demonstrated in their opening brief, reasonable reliance cannot be established as a matter of law. Plaintiff was aware of the Cigna EOB and maintained throughout the underlying litigation that she did not owe the debt. She cannot simultaneously claim she believed the debt was invalid and claim she relied on Defendants' failure to tell her the debt was invalid.

**4. Civil Conspiracy (Count V).**

Because Plaintiff has not stated a viable underlying tort, her civil conspiracy claim necessarily fails. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384 (2003).

**5. Third-Party Beneficiary (Count VII) and Tortious Interference (Count VIII).**

Plaintiff argues that a "no-balance-billing" clause in the Oaklawn-Cigna provider agreement was entered for her "direct benefit," making her an intended third-party beneficiary. But Plaintiff has not alleged the terms of the Oaklawn-Cigna provider agreement, has not attached it to the FAC, and relies solely on the Cigna EOB for the proposition that such a clause exists.

Even accepting the allegation at face value, insurance provider agreements are contracts between insurers and healthcare providers; patients are at most incidental beneficiaries. *Schmalfeldt v. N. Pointe Ins. Co.*, 469 Mich. 422, 428 (2003).

Plaintiff's tortious interference claim remains fatally defective. Plaintiff alleges that Defendants "instigated Oaklawn's breach" of the provider agreement by filing the collection lawsuit. But attorneys do not "instigate" their client's breach of a contract by performing the legal services they are retained to provide. Defendants filed a lawsuit on behalf of their client—an act squarely within the scope of their professional responsibilities. Plaintiff has not alleged that Defendants caused any third party to breach a contract with Plaintiff; she alleges only that Defendants represented their client in litigation. This does not state a claim for tortious interference.

**D. The Court Should Decline Supplemental Jurisdiction Over the State Law Claims.**

Plaintiff argues that judicial economy favors retaining the state law claims even if the FDCPA claims are dismissed. However, this case remains at an early stage, no discovery has occurred, and the state law claims involve multiple theories of Michigan law. The Sixth Circuit has consistently held that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). There is a "strong presumption" against retaining supplemental jurisdiction once all federal claims have been dismissed. *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011). Dismissal of the state law claims without prejudice is appropriate.

**E. Conclusion**

Plaintiff's Response does not cure the fundamental deficiencies in the FAC. Her FDCPA claims are barred by res judicata, fail to state a claim under any provision of the statute, and her state law claims are legally untenable. The Court should grant Defendants' Motion to Dismiss the FDCPA claims with prejudice and dismiss the state law claims without prejudice, or alternatively, dismiss all claims with prejudice.

Dated: April 14, 2026

*/s/Kathleen H. Klaus*
Kathleen H. Klaus (P67207)
Attorney for Defendants
One Towne Square, Fifth Floor
Southfield, MI 48076
(248) 359-7520
kklaus@maddinhauser.com

Pursuant to Local Rule 7.2(b)(ii), the Firm certifies that this reply and accompanying brief consist of 4088 words, as determined by the “word count” function of Microsoft Word.

*/s/Kathleen H. Klaus*

**PROOF OF SERVICE**

The undersigned states that on April 14, 2026 he served *Defendants' Reply in Support of Motion to Dismiss First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)* on the parties of record through the CM/ECF Electronic Service system.

I declare the foregoing statement to be true to the best of my information, knowledge and belief.

*/s/ Almado Doko*
Almado Doko