UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE GOODWIN,

Plaintiff,

v.

GOODMAN FROST, PLLC, et al.,

Defendants.
______________________________/

Case No. 1:26-cv-10

HON. JANE M. BECKERING

**OPINION AND ORDER**

Now pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim (the Motion) (ECF No. 19). This case involves Defendants' attempt to recover an alleged debt that Plaintiff incurred when Oaklawn Hospital (Oaklawn) provided emergency medical services to Plaintiff. Oaklawn hired Defendants, debt-collection attorneys, to collect the debt. But Plaintiff alleges that Defendants' collection activity—including a lawsuit in Michigan court—violated various federal and state laws. Defendants assert that some of Plaintiff's claims are barred by res judicata, and that all Plaintiff's claims are inadequately pled. Defendants therefore move to dismiss for failure to state a claim upon which relief may be granted. For the following reasons, the Court grants in part and denies in part the Motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff sought emergency medical treatment from Oaklawn on March 20, 2023 (Am. Compl. [ECF No. 17] ¶ 45). At the time, Plaintiff was insured under an employer-provided insurance plan underwritten by Cigna (*id.* ¶ 47). Oaklawn does not employ its own emergency

room doctors but instead contracts with Kalamazoo Emergency Associates, a professional corporation of a physician-owned group (*id.* ¶ 48). Kalamazoo Emergency Associates billed Cigna for the services on May 18, 2023, and processed and paid the claim on May 22, 2023 (*id.* ¶ 49). Because Kalamazoo Emergency Associates timely billed Cigna, the claim was paid and processed under the plan (*id.* ¶ 50).

Oaklawn did not properly notify Plaintiff of any outstanding charges (*id.* ¶ 51). Oaklawn claims to have generated and mailed three statements to Plaintiff, but Oaklawn sent the statements to the wrong address (*id.* ¶¶ 53, 58).

Hence, Plaintiff first learned of an alleged outstanding debt when Defendant Goodman Frost PLLC sent Plaintiff a letter to the correct address on September 13, 2024 (*id.* ¶¶ 57–58; *id.* at Ex. 4, ECF No. 17-4). The letter stated that Plaintiff had until October 25, 2024, to dispute the debt by contacting Defendant Goodman Frost PLLC's office (*id.* ¶ 59). Plaintiff reached out to Defendant Goodman Frost PLLC and started communication by phone and email with Defendant Goodman Frost PLLC and Defendant Robert Goodman personally (*id.* ¶ 60).

Plaintiff attaches to the Amended Complaint a "Timeline of Relevant Events" that describes her interactions with Defendant Goodman (*id.* at Ex. 12, ECF No. 17-12 at PageID.285). After Plaintiff received the September 13, 2024 letter, she "disputed the charges by email to Mr. Goodman" (*id.*). And "[a]fter no response, [Plaintiff] emailed again a couple of days later to ensure that the dispute was received, which [Defendant Goodman] finally replied that it was" (*id.*). Next, also in September 2024, Plaintiff had a phone call with Defendant Goodman and learned for the first time about the bill from Oaklawn (*id.* at PageID.286). Afterwards, Defendant Goodman sent the hospital invoice to Plaintiff's email (*id.*). The invoice was from Oaklawn and indicated a balance allegedly owed for services (*id.*). Plaintiff had a second phone call with Defendant

Goodman during which he told Plaintiff to keep in touch with his office every two weeks (*id.*), and in exchange, Defendants would not sue Plaintiff (*id.* ¶ 67). Defendant Goodman again emailed Plaintiff "debt verification" along with Plaintiff's medical records (*id.* at Ex. 12, ECF No. 17-12 at PageID.286).

Meanwhile, Plaintiff attempted to take care of the bill (*id.*). On December 14, 2024, Plaintiff received from Cigna an Explanation of Benefits (*id.*; *id.* at Ex. 8, ECF No. 17-8). The Explanation of Benefits included the following language:

> Health care professional: This claim was not received on time so we cannot pay the claim. Your contract with Cigna does not allow you to bill the patient after the time limit. If you did submit the claim on time, please resend the claim along with proof of timely submission to the address on the patient's ID card (*id.* at PageID.269).

Plaintiff emailed the Explanation of Benefits to Defendant Frost (*id.* at Ex. 12, ECF No. 17-12 at PageID.287). In April or May of 2025, Plaintiff again informed Defendants that the debt was not owed because Cigna had denied the claim for untimely submission and because the provider agreement prohibited billing Plaintiff (*id.*; *id.* ¶ 94). When Plaintiff told Defendant Goodman she did not owe Oaklawn, Defendant Goodman told Plaintiff, "That's not how I understand it and [I] went to law school, and [you] did not, and [I have] been practicing law for almost 30 years" (*id.* ¶ 98).

Because of Defendants' conduct, Plaintiff retained counsel to defend against threatened litigation (*id.* ¶ 110). Oaklawn, through Defendants, sued Plaintiff in the 10th District Court in Calhoun County, Michigan, on or about May 15, 2024 (*id.* ¶ 117; *id.* at Ex. 9, ECF No. 17-9). The complaint included four counts—breach of contract, account stated, unjust enrichment, and quantum meruit—and alleged that Plaintiff owed Oaklawn $11,974.46 (plus costs, interest, and fees) for medical services (*id.* at Ex. 9, ECF No. 17-9 at PageID.273–275).

Defendants served the complaint on Plaintiff (*id.* ¶ 121) and, on September 18, 2025, filed a pretrial statement (*id.* ¶ 123). The pre-trial statement represented that the entire $11,974.46 (plus costs, interest, and fees) was due and owing (*id.* at Ex. 10, ECF No. 17-10 at PageID.278). Plaintiff filed her own pre-trial statement in which she denied owing Oaklawn anything (*id.* at Ex. 11, ECF No. 17-11 at PageID.282). Plaintiff attended a Zoom pre-trial conference, where she requested a continuance to secure an attorney (*id.* ¶ 129).

Plaintiff hired Lighthouse Litigation PLLC under a limited scope agreement to draft a demand letter to Defendants to convince them to dismiss the case (*id.* ¶ 130). Lighthouse Litigation PLLC sent the letter, but Defendants did not respond (*id.* ¶ 131). Hence, Plaintiff hired Lighthouse Litigation PLLC to represent her in the state court action (*id.* ¶ 132). Lighthouse Litigation PLLC appeared for Plaintiff during a Zoom pre-trial conference on November 6, 2025 (*id.* ¶ 133).

Defendant Goodman Frost PLLC filed an amended complaint (*id.* ¶ 134) and sent discovery to Plaintiff (*id.* ¶ 135). Plaintiff and her attorney responded to this discovery (*id.* ¶ 136) and filed an answer to the complaint (*id.* ¶ 137). Defendant Goodman asked for authorization to access Plaintiff's medical records (*id.* ¶¶ 138, 140), and Plaintiff, through her counsel, objected (*id.* ¶¶ 139, 141).

On December 23, 2025, a proposed judgment was filed with the court, which was approved to form and substance by both parties (*id.* ¶ 143). The judgment resulted from an offer of judgment made under Michigan Court Rule 2.405 for the emergency-room copay of $150 and the deductible maximum amount of $750 (*id.* ¶ 144). The judgment states the following:

> The Judgment is entered for purposes of compromise only and shall not be construed as an admission of liability, fault, or wrongdoing by any party (*id.* at Ex. 13, ECF No. 17-13 at PageID.291).

The Calhoun County District Court entered the judgment on December 29, 2025 (*id.*).

### B. Procedural Posture

On January 2, 2026, Plaintiff sued Defendants in this Court (ECF No. 1). Defendants filed a Motion to Dismiss the Complaint for failure to state a claim (ECF No. 12). The Court ordered that Plaintiff file an amended complaint or a response (ECF No. 15). Plaintiff filed an Amended Complaint (ECF No. 17).[1] Defendants filed a Motion to Dismiss the Amended Complaint for failure to state a claim (ECF No. 19). Plaintiff filed a Response (ECF No. 21), and Defendants filed a Reply (ECF No. 22). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

Defendants' motion is filed pursuant to Federal Rule of Civil Procedure 12(b)(6). FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) authorizes the court to dismiss a claim for relief in any pleading if it "fail[s] to state a claim upon which relief can be granted[.]" To survive a motion to dismiss, a complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

[1] Plaintiff's original Complaint named Ella E.M. Brown Charitable Circle as a defendant (ECF No. 1). But Plaintiff's Amended Complaint does not assert any claims against Ella E.M. Brown Charitable Circle (Am. Compl., ECF No. 17). For this reason, Ella E.M. Brown Charitable Circle is dismissed from this case, and "Defendants" in this Opinion and Order does not include Ella E.M. Brown Charitable Circle.

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss for failure to state a claim, the court generally does not consider matters outside the pleadings unless the court treats the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). On the other hand, the court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt*, 835 F.3d at 640.

**B. Discussion**

The Amended Complaint includes eight causes of action:

(1) The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692a–1692p (Am. Compl. ¶¶ 149–71).

(2) The Michigan Regulation of Collection Practices Act (MRCPA), MICH. COMP. LAWS ANN. §§ 445.251–445.258 (*id.* ¶¶ 172–85).[2]

(3) Abuse of process (*id.* ¶¶ 186–92).

(4) Silent fraud or fraudulent misrepresentation (*id.* ¶¶ 193–200).

(5) Civil conspiracy (*id.* ¶¶ 201–30).

(6) Negligent misrepresentation (*id.* ¶¶ 231–42).

(7) Tortious interference with third-party beneficiary contract rights (*id.* ¶¶ 243–82).

(8) Tortious interference with contractual relations (*id.* ¶¶ 283–90).

Defendants move to dismiss all Plaintiff's causes of action (Mot., ECF No. 19 at PageID.293). Defendants argue that because of the judgment against her in the debt collection litigation against Oaklawn, res judicata bars Plaintiff's FDCPA claims (*id.* at PageID.295). Defendants also argue that Plaintiff fails to state any claim on the merits (*id.* at PageID.305–312). Finally, Defendants ask the Court not to exercise supplemental jurisdiction over Plaintiff's state law claims if the Court dismisses her FDCPA claims (*id.* at PageID.312).

As more fully explained below, the Court concludes that res judicata does not bar Plaintiff's FDPCA claims, most of which are adequately plead. Nevertheless, the Court agrees that Plaintiff has not plausibly stated any state-law claim besides her MRCPA claim. The Court therefore grants in part and denies in part Defendants' Motion.

**1. <u>Res Judicata</u>**

Michigan law governs the preclusive effect of judgments entered in Michigan courts. *See Moore v. Hiram Twp.*, 988 F.3d 353, 357 (6th Cir. 2021) (quoting *Ohio ex rel. Boggs v. City of*

[2] The Amended Complaint lists the statutory cause of action as the "Michigan Collection Practices Act" (Am. Compl., ECF No. 17 at PageID.198). But Plaintiff's Response narrows the cause of action to the MRCPA (Resp., ECF No. 21 at PageID.347–348).

*Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011)). As Plaintiff and Defendants agree, res judicata bars a second action when (1) the first action was decided on the merits, (2) the matter in the second action was or could have been resolved in the first action, and (3) both actions involve the same parties or their privies (Mot., ECF No. 19 at PageID.302 (citing *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004); Resp., ECF No. 21 at PageID.334 (quoting *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006)). The Michigan Supreme Court has taken a "broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 680 N.W.2d at 396 (citing *Dart v. Dart*, 597 N.W.2d 82, 88 (Mich. 1999)). The "same transaction" test—which is more pragmatic and views claims on factual terms—is broader than the "same evidence" test—which is tied to the theories of relief asserted by a plaintiff. *Id.* at 397–98 (citation omitted).

Defendants believe every element of res judicata is satisfied; Plaintiff contends that none is. The Court concludes that res judicata does not apply because Defendants are not Oaklawn's privies.

*(a) The Oaklawn Litigation Was Decided on the Merits.*

Michigan Court Rule (MCR) 2.405 creates a process for parties to stipulate to a judgment in Michigan courts. MICH. COMP. LAWS ANN. § 2.405. Although judgments entered under MCR 2.405 are not judgments entered after a verdict, the Michigan Court of Appeals has observed that "an offer of judgment more nearly emulates a judgment after a trial rather than a form of settlement." *Hanley v. Mazda Motor Corp.*, 609 N.W.2d 203, 208 (Mich. Ct. App. 2000). Accordingly, an offer of judgment "has all the attributes of a judgment after full litigation, is considered a final adjudication on the merits, and implicates the doctrine of res judicata." *Marilyn*

*Froling Revocable Living Tr. v. Bloomfield Hills Country Club*, 769 N.W.2d 234, 255 (Mich. Ct. App. 2009). Parties cannot avoid the preclusive effect of an offer of judgment by "condition[ing] such offer on the judgment not having the effect of an ordinary judgment on the merits." *Id.*

Plaintiff made Oaklawn an offer of judgment under MCR 2.405, Oaklawn accepted, and the Calhoun County District Court entered judgment accordingly (Am. Compl. ¶¶ 4–7; *id.* at Ex. 13, ECF No. 17-13). This judgment is "a final adjudication on the merits, and implicates the doctrine of res judicata." *Marilyn Froling Revocable Living Tr.*, 769 N.W.2d at 255. Plaintiff contends that the offer of judgment is not on the merits because the offer expressly limited its scope (Resp., ECF No. 21 at PageID.336). But this language does not prevent the judgment from "having the effect of an ordinary judgment on the merits." *Marilyn Froling Revocable Living Tr.*, 769 N.W.2d at 255. The offer of judgment is therefore a judgment on the merits.

*(b) Plaintiff's FDCPA Claims that Depend on the Enforceability of the Oaklawn Debt Could Have Been Brought in the Debt Enforcement Proceeding.*

"Res judicata bars every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 680 N.W.2d at 397 (citing *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 224–25 (Mich. 2001)). "The test in Michigan is whether the same facts or evidence are essential to the maintenance of the two actions, not a comparison of the grounds for relief." *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 748 (6th Cir. 2002) (citing *Jones v. State Farm Mut. Auto. Ins. Co.*, 509 N.W.2d 829, 834 (Mich. Ct. App. 1994)). "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit . . . ." *Adair*, 680 N.W.2d at 398 (emphasis in original) (citation omitted).

The Sixth Circuit in *Forgues v. Select Portfolio Servicing, Inc.*, 690 F. App'x 896 (6th Cir. 2017), found that res judicata barred several of the plaintiff's FDCPA claims. There, the plaintiff and her husband entered into a mortgage agreement on which they defaulted. *Id.* at 897. After defaulting, the plaintiff allegedly mailed a rescission notice to her loan servicer. *Id.* But the lender nonetheless sued to foreclose on the plaintiff's property. *Id.* The plaintiff defaulted, and a judgment was entered against her. *Id.* at 897–98. Although the plaintiff filed a motion for relief from judgment, her motion was denied, and the judgment was affirmed on appeal. *Id.* at 898. The plaintiff then brought FDCPA claims against the loan servicer in district court, alleging that she "had rescinded her mortgage loan . . . , and that any debt-collection activity by [the loan servicer] was in relation to a loan that no longer existed." *Id.* at 900.

The Sixth Circuit, applying Ohio's version of the "same transaction" test for claim preclusion, "affirm[ed] the district court's conclusion that res judicata bar[red] consideration of any claims arising from the alleged . . . rescission." *Id.* at 901. As the Sixth Circuit explained, "the question of rescission is an affirmative defense or counterclaim that could have been raised in the initial state-court proceeding." *Id.* Hence, "in this particular case, and on these specific facts, the doctrine of res judicata bars consideration of any claims that are based on [the plaintiff's] alleged . . . mortgage rescission." *Id.* at 901–02.

Like the plaintiff in *Forgues*, Plaintiff here bases the following FDCPA claims on Defendants' continued collection of an allegedly extinguished debt to Oaklawn:

- 15 U.S.C. § 1692e(2)(A) (false or misleading representations) (Am. Compl. ¶¶ 152–54).
- 15 U.S.C. § 1692e(5) (false or misleading representations) (*id.* ¶¶ 155–56).
- 15 U.S.C. § 1692f (unfair practices) (*id.* ¶¶ 161, 163).
- 15 U.S.C. § 1692d (harassment or abuse) (*id.* ¶ 165.a, d).

Plaintiff could have disputed her liability to Oaklawn in Michigan court, just as the plaintiff in *Forgues* could have disputed hers to the lender in Ohio court. But Plaintiff did not do so; rather, like the plaintiff in *Forgues*, Plaintiff allowed judgment to be entered against her and in Oaklawn's favor (Am. Compl. ¶¶ 4–7; *id.* at Ex. 13, ECF No. 17-13). Plaintiff cannot now, in a subsequent action, challenge the existence of the Oaklawn debt in litigation against Oaklawn or its privies.

This conclusion accords with Michigan law's "broad approach to the doctrine of res judicata," *Adair*, 680 N.W.2d at 396 (citation omitted), which focuses on the facts and evidence essential to the plaintiff's claims, not the grounds for relief, *Dubuc*, 312 F.3d at 748 (citation omitted). Plaintiff bases the above-listed claims on the Oaklawn debt's unenforceability, which was the issue decided in Oaklawn's debt collection action in Michigan court. Thus, Michigan law required Plaintiff to bring these FDCPA claims against Oaklawn in that action, not this one. *See Buck v. Thomas M. Colley L. Sch.*, 597 F.3d 812, 816–18 (6th Cir. 2010) (barring the plaintiff's federal claims "because she had an opportunity to seek permission from the state trial court to amend her complaint to add recent events after remand, before judgment was entered"). This result does not change because Plaintiff is asserting federal claims that were not before the Michigan court. *Dubuc*, 312 F.3d at 748 (noting that Michigan law focuses on "facts or evidence . . . , not a comparison of the grounds for relief").

Nevertheless, the following FDCPA claims do not depend on the unenforceability of the Oaklawn debt:

- 15 U.S.C. § 1692g(b) (validation of debts) (Am. Compl. ¶¶ 157–60).
- 15 U.S.C. § 1692f (unfair practices) (*id.* ¶ 162).
- 15 U.S.C. § 1692d (harassment or abuse) (*id.* ¶¶ 164, 165.b, c, e, 167).

Under *Forgues*'s logic, therefore, res judicata does not bar these claims. Indeed, the Sixth Circuit in *Forgues* affirmed the dismissal and summary adjudication of several of the plaintiff's other

claims on grounds other than res judicata. *Forgues*, 690 F. App'x at 900 (affirming dismissal of § 1692e claim because a loan modification was not false or misleading); *id.* at 902 (affirming dismissal § 1692e(8) claim because the plaintiff untimely sought validation of her loan); *id.* at 903–05 (affirming summary judgment of § 1681s-2(b) claim that loan servicer's investigation was unreasonable). These claims, unlike the plaintiff's other claims, were not based on the alleged rescission. *Cf. id.* at 900 ("Each of these claims related to an allegation that Forgues had rescinded her mortgage loan in 2010, and that any debt-collection activity by SPS was in relation to a loan that no longer existed."). That the district court did not dismiss all the plaintiff's FDCPA and related claims on res judicata grounds, and that the Sixth Circuit affirmed, indicates that res judicata did not bar these claims because they did not "relate to an allegation" that the plaintiff "had rescinded" her loan. *Id.* Similarly here, res judicata does not bar Plaintiff's FDCPA claims that do not "relate to an allegation" that Plaintiff's debt to Oaklawn was not enforceable.

This conclusion accords with Michigan law because Plaintiff can prove these FDCPA claims without facts or evidence about whether the Oaklawn debt is enforceable. *See Dubuc*, 312 F.3d at 748 (citation omitted). For example, even conceding the debt is enforceable, Plaintiff may argue that Defendants violated 15 U.S.C. § 1692g(b) by failing to cease collection after Plaintiff disputed the debt. Because these FDCPA claims are factually separate from whether Defendants could enforce Oaklawn's debt, Michigan law did not require Plaintiff to bring them against Oaklawn in Michigan court.

*(c) Defendants and Oaklawn Are Not in Privity.*

"[R]es judicata . . . appl[ies] only when the parties in the subsequent action were parties or privies of parties to the original action." *Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, 983 N.W.2d 401, 406 (Mich. 2022). "To be in privity is to be so identified in interest

with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair*, 680 N.W.2d at 386 (citing *Baraga Co. v. State Tax Comm'n*, 645 N.W.2d 13, 16–17 (Mich. 2002)). "The outer limit of the doctrine traditionally requires both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation." *Id.* (quoting *Baraga Co.*, 645 N.W.2d at 16–17).

"[A] judgment rendered in an action in which one of the parties appears in a representative capacity is not operative under the doctrine of res judicata in a subsequent action involving the same party in his individual right." *Howell v. Vito's Trucking & Excavating Co.*, 191 N.W.2d 313, 316 (Mich. 1971) (citations omitted). "Th[is] rule[] ha[s] been denied application, however, where a party to one action in his individual capacity and to another action in his representative capacity is in each case asserting or protecting his individual rights." *Id.* (citations omitted).

*McPherson v. Alten Homes, Inc.* demonstrates these principles. No. 368756, 2025 WL 3246902 (Mich. Ct. App. Nov. 20, 2025) (to be published). After McPherson allegedly suffered injuries because a railing gave out in the house he rented, he sued Alvin Sallen, the sole shareholder of Alten Homes, Inc., which owned the house. *Id.* at *1. This action was dismissed because Sallen was not McPherson's landlord. *Id.* McPherson next sued Alten Homes, Inc. for the same injuries. *Id.* The Michigan Court of Appeals applied the rules in *Howell* to find that res judicata did not bar McPherson's second suit. *Id.* at *3–4. According to the court, "[t]he fact that Sallen could not be held liable for the damages stemming from the injuries that plaintiff purportedly sustained, whereas Alten Homes could be held liable for those damages," indicated that Sallen and Alten Homes were "not in common potential liability." *Id.* at *4. And because Sallen and Alten Homes

did not have common potential liability, they did not have substantial identity of interests and were not in privity. *Id.*

Defendants were not parties to the debt collection action against Plaintiff; instead, Defendants were Oaklawn's attorneys (Am. Compl. ¶¶ 117–47). Consequently, Defendants may benefit from the judgment against Plaintiff only if Defendants are in privity with Oaklawn. *Mecosta Cnty. Med. Ctr.*, 983 N.W.2d at 406. But a party appearing in a representative capacity in one action cannot claim the benefit of res judicata in a subsequent action against him in his individual capacity. *Howell*, 191 N.W.2d at 316 (citations omitted). Therefore, Defendants, who appeared as Oaklawn's attorney in the debt collection action, cannot claim the benefit of res judicata in this case involving Plaintiff's FDCPA claims against Defendants. Furthermore, Defendants were not asserting or protecting their individual rights in Oaklawn's debt collection action. *See id.* Whether Oaklawn recovered the debt that Plaintiff allegedly owed Oaklawn did not affect Defendants' individual rights or liabilities. As in *McPherson*, where Sallan and Alten Homes did not have common potential liability, Defendants and Oaklawn did not have common potential of recovery from Plaintiff in the debt collection suit. Thus, Defendants are not in privity with Oaklawn, and res judicata does not bar Plaintiff's FDCPA claims against Defendants.

**2. <u>FDCPA (First Cause of Action)</u>**

Turning to the plausibility of the FCDPA claims, Plaintiff invokes five provisions in the FDCPA (Am. Compl. ¶¶ 149–71). The Court concludes Plaintiff has plausibly alleged each FDCPA claim besides her claim under 15 U.S.C. § 1692d. "In determining whether any particular conduct violates the FDCPA, the courts . . . use[] an objective test based on the least sophisticated consumer." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) (citing *Smith v. Transworld Sys. Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992)).

*(a) Plaintiff Plausibly States a 15 U.S.C. § 1692g(b) Claim.*

Section 1692g(a) requires debt collectors to give written notice to consumers about certain information about their debts. 15 U.S.C. § 1692g(a). Importantly for Plaintiff's § 1692g(b) claim, a debt collector must provide a consumer

> a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt . . . is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

*Id.* § 1692g(a)(4). The debt collector must provide this written notification "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt . . . ." *Id.* § 1692g(a). Next, if the consumer disputes the debt in writing within thirty days, the debt collector "shall cease collection of the debt . . . until the debt collector obtains verification of the debt or a copy of a judgment, . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector." *Id.* § 1692g(b).

"[T]he 'baseline' for verification is to enable the consumer to 'sufficiently dispute the payment obligation.'" *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785 (6th Cir. 2014). "Although the answer to that question depends on the facts of a particular situation, the cases reflect that an itemized accounting detailing the transactions in an account that have led to the debt is often the best means of accomplishing that objective." *Id.*

Plaintiff plausibly alleges that she did not receive any written notification about the Oaklawn debt until September 13, 2024, when Defendant Goodman Frost PLLC sent Plaintiff a letter, because all previous written notifications were sent to the wrong address (Am. Compl. ¶¶ 51–59; *id.* at Ex. 4, ECF No. 17-4). Plaintiff also plausibly alleges that she "disputed the charges by email to Mr. Goodman," and that "[a]fter no response, [she] emailed again a couple of days later to ensure that the dispute was received, which he finally replied that it was" (Am. Compl. Ex.

12, ECF No. 17-12 at PageID.285). The bullet point containing these allegations is in a "Timeline of Relevant Events" between two other bullet points labeled "September 2024" (*id.* at PageID.285–286). The Court must therefore infer that Plaintiff emailed Defendant Goodman her dispute within thirty days of the September 13, 2024 email, thus triggering Defendants' duty to provide verification under § 1692g(b). *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (citation omitted) (requiring courts to draw all reasonable inferences in the plaintiff's favor when ruling on a motion under Rule 12(b)(6)).

Notwithstanding Plaintiff's written dispute, Defendants never "mailed to" Plaintiff a verification of the alleged debt. To be sure, Defendant Goodman emailed Plaintiff an invoice and medical records that may have satisfied § 1692g(b)'s verification requirement if mailed (Am. Compl. Exs. 6, 7, 12, ECF Nos. 17-6, 17-7, 17-12 at PageID.286). But in § 1692g(b), Congress required that debt collectors mail, not email, verification. Indeed, Congress could have required debt collectors to send consumers verification by a "communication," which FDCPA broadly defined as "conveying of information regarding a debt directly or indirectly to any person *through any medium*." 15 U.S.C. § 1692a(1) (emphasis added); *cf. id.* § 1692j (prohibiting a person from "furnish[ing]" certain forms to a consumer). But because Congress specified the medium of transmission—mail—Defendants' email to Plaintiff does not satisfy the verification requirement. *See Lopez-Campos v. Raycraft*, 175 F.4th 713, 723 (6th Cir. 2026) (quoting *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 383 (6th Cir. 2026) ("[W]hen Congress deliberately uses different words, we presume those words to 'have different meanings.'"). Consequently, Plaintiff has plausibly alleged that all Defendants' debt collection activity after Plaintiff's September 2024 email violated § 1692g(b).

*(b) Plaintiff Plausibly States a 15 U.S.C. § 1692e(2)(A) Claim.*

Plaintiff also brings claims under 15 U.S.C. § 1692e, which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." This prohibition includes false representations of "the character, amount, or legal status of any debt." *Id.* § 1692e(2)(A). "Section 1692e applies to debt-collection efforts utilizing the legal process." *Snyder v. Finley & Co., L.P.A.*, 37 F.4th 384, 387 (6th Cir. 2022) (citing *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 893–94 (6th Cir. 2020)).

Although § 1692e "at a minimum covers some misstatements about state law," *Van Hoven*, 947 F.3d at 894–95 (citing *Currier v. First Resol. Inv. Corp.*, 762 F.3d 529, 536–37 (6th Cir. 2014), "Congress did not turn every violation of state law into a violation of the FDCPA," *Currier*, 762 F.3d at 537. The Sixth Circuit has listed several factors that distinguish between actionable and non-actionable misstatements about state law. *Van Hoven*, 947 F.3d at 894–97. To fall within § 1692e's prohibition, "[t]he statement must be material, which is to say capable of influencing the consumer's decision-making process." *Id.* at 894 (citing *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596–97 (6th Cir. 2009)). Also, a statement must be false "at the time it was issued"; a statement is not false "whenever a higher court over time takes a different position in a later case." *Id.* at 895. The Sixth Circuit analogized statements violating § 1692e to statements violating Federal Rule of Civil Procedure 11, implying that § 1692e prohibits only "legally indefensible" and "groundless" misstatements about state law. *Id.* at 896 (citations omitted).

Such misstatements "include, for example, misquoting a case, relying on a statute no longer in existence, invoking an overruled decision, claiming that a one-year statute of limitations runs for two years, saying today that the FDCPA does not apply to attorneys collecting debts, suing on a time-barred debt, and filing a writ of garnishment against a debtor current on his payments."

*Snyder*, 37 F.4th 387–88 (internal quotations and alterations omitted) (citing *Van Hoven*, 947 F.3d at 895–96 (collecting cases)).

Plaintiff plausibly alleges that Defendants made a "representation" in the Oaklawn debt collection action that "the full $11,974.46 was legally due and collectible" (Am. Compl. ¶¶ 152–53; *id.* at Ex. 9, ECF No. 17-9 at PageID.273–275; *id.* at Ex. 10, ECF 17-10 at PageID.278). Plaintiff further alleges that—before Defendants sued Plaintiff on Oaklawn's behalf—Plaintiff emailed Defendants an Explanation of Benefits explaining that Oaklawn's contract with Cigna did not allow Oaklawn to bill Plaintiff outside a specified time (*id.* at Ex. 12, ECF No. 17-12 at PageID.286–287). It is therefore plausible that Defendants knew the contents of the Explanation of Benefits before they sued Plaintiff. Furthermore, the Court must accept as true Plaintiff's allegation that the Explanation of Benefits was sufficiently clear to inform Defendants that Oaklawn could not collect from Plaintiff (*e.g.*, *id.* ¶¶ 152–53). *See Handy-Clay*, 695 F.3d at 538. As a result, Plaintiff has plausibly alleged that Defendants represented to Plaintiff and the Michigan court that Plaintiff owed a debt Defendants knew was unenforceable against Plaintiff. This conduct violates § 1692(e) as much as suing on a time-barred debt or filing a writ of garnishment against a debtor current on his payments. *See Snyder*, 37 F.4th at 387–88.

Defendants argue that their representations in Michigan court could not be false because Plaintiff acknowledged she was liable by agreeing to judgement against her for $900 (Mot., ECF No. 19 at PageID.306). But the judgment states that it "shall not be construed as an admission of liability" (Am. Compl. Ex. 13, ECF No. 17-13 at PageID.291), and Plaintiff plausibly alleges that the judgment "did not constitute an admission of legal liability" but instead was "a strategic litigation compromise made to mitigate further economic harm and avoid additional attorney fees" (*id.* ¶ 3). Given that res judicata does not bar Plaintiff's FDCPA claims in this case, Plaintiff's

allegations sufficiently show that the debt was unenforceable, and that Defendants knew as much before suing Plaintiff in Michigan court. *Cf. Currier*, 762 F.3d at 537 ("[W]hether or not First Resolution had reason to believe that the lien was valid when filed is an issue of fact that is not relevant at the motion to dismiss stage.").

Defendants also assert that they did not misrepresent anything to Plaintiff or the Michigan court because "[w]hether Oaklawn was permitted to bill Plaintiff under its provider agreement with Cigna was a contested legal question" (Mot., ECF No. 19 at PageID.306). But the Amended Complaint does not characterize the Oaklawn debt's enforceability as "a contested legal question." Rather, Plaintiff plausibly alleges that Cigna's contract with Oaklawn prohibited Oaklawn from suing Plaintiff to collect the debt—and that Defendants knew the debt was not enforceable before suing Plaintiff in Michigan court. Thus, Plaintiff has stated a claim under § 1692e(2)(A).

*(c) Plaintiff Plausibly States a 15 U.S.C. § 1692e(5) Claim.*

Section 1692e also prohibits "[t]he threat to take any action that cannot legally be taken . . . ." *Id.* § 1692e(5). For the reasons stated above, Plaintiff has plausibly alleged that Defendants, on Oaklawn's behalf, could not legally collect the medical debt from Plaintiff. Hence, any threat to collect the debt from Plaintiff is a "threat to take an[] action that cannot legally be taken . . . ." *Id.* The Amended Complaint includes several plausible allegations of such threats by Defendants. For example, "Defendant Goodman entered into a verbal contract that provided [that if] Plaintiff Goodwin would keep in touch with his office every two weeks, and worked to have the bill submitted to insurance, the office would take no action on the debt, and would not sue Plaintiff Goodwin" (Am. Compl. ¶ 67). Further, when Plaintiff told Defendant Goodman that she owed nothing, Defendant Goodman told Plaintiff, "That's not how I understood it and [I] went to law

school, and [you] did not, and [I have] been practicing law for almost 30 years" (*id.* ¶ 98). Drawing all inferences in favor of Plaintiff, these are threats to collect the Oaklawn debt from Plaintiff, which Plaintiff plausibly alleges was not legal.

Additionally, "[c]ourt filings can be a threat under the FDCPA." *Currier*, 762 F.3d at 535 (collecting cases). "The fact that the threat appears in a lawsuit or other court filing does not diminish the threatening nature of the communication for purposes of the FDCPA." *Id.* (citing *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28–29, 30 (6th Cir. 2007)). "Nor does it matter that the filing is also an 'action' because '"attempts" and "threats" are not necessarily mutually exclusive concepts.'" *Id.* at 536–37 (quoting *Gionis*, 238 F. App'x at 28–29). "In light of the Act's overarching purpose to prevent false, deceptive, or misleading representations, whether a filing's metaphysical description is more an attempt to collect a debt or more a threat is essentially wordplay." *Id.* at 536 (alterations omitted) (quoting *Gionis*, 238 F. App'x at 29). As Plaintiff has plausibly alleged, Defendants sued to collect a debt that they knew was unenforceable. This too is a "threat to take an[] action that cannot legally be taken . . . ." 15 U.S.C. § 1692e(5).

To be sure, just filing an unsuccessful lawsuit to collect a debt does not violate the FDCPA. *See Heintz v. Jenkins*, 514 U.S. 291, 295–96 (1995). However, as already explained, Plaintiff has plausibly alleged not just that Defendants sued to collect the Oaklawn debt, but that they knew the Oaklawn debt was not enforceable yet made statements and threats to collect the debt anyway. This conduct (if proven) violates § 1692e(5).

*(d) Plaintiff Plausibly States a 15 U.S.C. § 1692f Claim.*

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Defendants argue that Plaintiff's § 1692f claims "fails for the same reasons as the § 1692e(5) claim." Because Defendants' motion to dismiss the § 1692f

claim fails, their challenge to the § 1692f claim also fails. *See Am. Elec. Power Serv. Corp. v. Fitch*, No. 22-3005, 2022 WL 3794841, at *6 (6th Cir. Aug. 30, 2022) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.").

*(e) Plaintiff Fails to Plausibly State a 15 U.S.C. § 1692d Claim.*

"A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d lists six non-exhaustive examples of harassment, oppression, or abuse. *Id.* § 1692d(1)–(6). The Sixth Circuit has interpreted the terms "harass, oppress, or abuse" in light of the listed examples, which "concern tactics intended to embarrass, upset, or frighten a debtor." *See Harvey*, 453 F.3d at 330; *Currier*, 762 F.3d at 534 (citing *Ltd., Inc. v. Comm'r*, 286 F.3d 324, 332 (6th Cir. 2002) ("under the rule of noscitur a sociis, the court should view the undefined term in light of its associates"). Moreover, the Sixth Circuit has held that "the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor." *Harvey*, 453 F.3d at 330; *see also id.* at 330–31 ("*Any* attempt to collect a defaulted debt will be unwanted by a debtor, but employing the court system in the way alleged by Harvey cannot be said to be an abusive tactic under the FDCPA." (emphasis in original)).

To plausibly state a § 1692d claim under *Harvey*, Plaintiff cannot allege only that Defendants litigated against Plaintiff to collect the Oaklawn debt "without the immediate means of proving the debt." *Harvey*, 453 F.3d at 330. Thus, actions consistent with debt-collection litigation—such as "dismissing Plaintiff's legitimate contractual defense, threatening and then filing a lawsuit for nearly $12,000 . . . , filing an amended complaint after Plaintiff retained counsel,

[and] propounding burdensome discovery" (Resp., ECF No. 21 at PageID.347)—do not alone plausibly state a § 1692d claim. Furthermore, although Plaintiff specifies two actions that Defendants took beyond ordinary litigation conduct, neither sufficiently distinguishes Plaintiff's case from *Harvey*.

First, as discussed above, Plaintiff has plausibly alleged that Defendants "maintain[ed] the litigation . . . after receiving affirmative proof of non-liability (*id.*). But knowingly litigating a meritless claim is not so much more harassing, oppressive, or abusive than litigating a claim "without the immediate means of proving the debt" that the former is a § 1692d violation whereas the latter is not. Indeed, neither litigation rises to the level of the extreme examples listed in § 1692d. *See, e.g.*, 15 U.S.C. § 1692d(1) ("The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person."). Therefore, neither litigation states a claim under § 1692d when combined with the filing of a debt-collection lawsuit.

Second, Plaintiff alleges that Defendant Goodman told Plaintiff, "That's not how I understood it and [I] went to law school, and [you] did not, and [I have] been practicing law for almost 30 years" (Am. Compl. ¶ 98). To be sure, Defendant Goodman's alleged comment was demeaning and rude to Plaintiff. But it was not similarly abusive to the "obscene or profane language" language prohibited by § 1692d(2); nor was it similarly harassing to the "repeated[] or continuous[]" telephone calls prohibited by § 1692d(5). Consequently, Defendant Goodman's comment—even considered alongside Defendants' other litigation conduct—was not sufficiently harassing, oppressive, or abusive to violate § 1692d. Plaintiff has failed to state claim under this section.

### 3. <u>Michigan Law Claims</u>

Plaintiff asserts that Defendants violated the MRCPA and committed five torts under Michigan law (Am. Compl. ¶¶ 172–290). Applying Michigan law, *see Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)), the Court holds that Plaintiff states a claim under the MRCPA but fails to state a claim of any common law tort.

#### *(a) MRCPA (Second Cause of Action)*

Section 445.252 of the Michigan Compiled Laws prohibits "regulated persons" from committing certain acts related to debt collection. MICH. COMP. LAWS ANN. § 445.252. A "regulated person" includes "[a]n attorney who is handling a claim or collection on behalf of a client and in the attorney's own name." *Id.* § 445.251(g)(xi). Defendants assert that "the MRCPA claims rest on the identical factual allegations as the FDCPA claims and fail for the same reasons" (Reply, ECF No. 22 at PageID.365). Hence, to the extent Plaintiff's FDCPA claims have stated a claim for relief, Plaintiff's MRCPA claims also state a claim for relief. *See Am. Elec. Power Serv. Corp.*, 2022 WL 3794841, at *6.

Plaintiff contends that "Michigan courts have recognized that the MRCPA provides *additional* protections beyond the FDCPA, including MCL 445.252(q)'s[3] prohibition on '[u]sing a harassing, oppressive, or abusive method to collect a debt,' which tracks but is not limited to the FDCPA standard" (Resp., ECF No. 21 at PageID.348 (emphasis in original)). To start, § 445.252(n) nearly mirrors § 1692d. *Compare* MICH. COMP. LAWS ANN. § 445.252(n) (prohibiting "[u]sing a harassing, oppressive, or abusive method to collect a debt") *with* 15 U.S.C. § 1692d (prohibiting "conduct the natural consequence of which is to harass, oppress, or abuse any

---

[3] Plaintiff cited the wrong subsection. *See* MICH. COMP. LAWS ANN. § 445.252(n).

person in connection with the collection of a debt"). And Plaintiff cited no case interpreting § 445.252(n) more broadly than § 1692d (Resp., ECF No. 21 at PageID.347–348). Therefore, the Court dismisses Plaintiff's § 445.252(n) claim also for failure to state a claim. *See Am. Elec. Power Serv. Corp.*, 2022 WL 3794841, at *6.

*(b) Abuse of Process (Third Cause of Action)*

"To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 312 N.W.2d 585, 594 (Mich. 1981) (citing *Spear v. Pendill*, 130 N.W. 343, 344 (Mich. 1911)). "[A] plaintiff making out a claim for abuse of process must allege a use of process for a purpose outside of the intended purpose and must allege with specificity an act which itself corroborates the ulterior motive." *Young v. Motor City Apartments Ltd. Dividend Hous. Ass'n No. 1 & No. 2*, 350 N.W.2d 790, 795 (Mich. App. Ct. 1984).

Issuing a summons and complaint is not an abuse of process. *Friedman*, 312 N.W.2d at 595. "This action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Spear*, 130 N.W. at 344 (collecting cases). Furthermore, "the ulterior purpose has to be something other than settling a suit." *Lawrence v. Burdi*, 886 N.W.2d 748, 754 (Mich. App. Ct. 2016) (citing *Friedman*, 312 N.W.2d at 594–95). It is not an abuse of process to attempt "to prevail over the defenses and counterclaims of the opposing party and obtain a judgment authorizing appropriate damages." *Young*, 350 N.W.2d at 795. Nor does a party abuse legal process by the "filing of a 'groundless' suit" or subjecting the plaintiff to "harassment, defamation, exposure to excessive litigation costs, or even coercion to discontinue business." *Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 835 (Mich. Ct. App. 1986) (citing *Young*, 350 N.W.2d at 795–96).

Plaintiff claims that Defendants' ulterior purpose was "to coerce payment of a debt Defendants knew was contractually unenforceable, using the cost, stress, and reputational pressure of litigation to extract money that could not be legally demanded" (Resp., ECF No. 21 at PageID.348). In other words, Plaintiff alleges that Defendants subjected Plaintiff to "harassment" and "excessive litigation costs." *Early Detection Ctr., P.C.*, 403 N.W.2d at 835. But Michigan courts have held that these actions do not show a purpose sufficiently "collateral to the action" to establish an ulterior purpose. *Young*, 350 N.W.2d at 795. Plaintiff's abuse of process claim therefore fails on the first element.

Plaintiff's abuse of process claim also fails on the second element—an irregular use of process. Plaintiff asserts that Defendants' use of process was irregular because they "fil[ed] an *amended complaint* after Plaintiff retained counsel, propound[ed] burdensome discovery designed to increase litigation pressure, and ma[de] an intimidating, credential-invoking communication designed to discourage Plaintiff from exercising her rights" (Resp., ECF No. 21 at PageID.349 (emphasis in original) (citing Am. Compl. ¶¶ 97–99)). But these acts "depict nothing inconsistent with the zealous representation of claims that is inherent in our adversary system," *Young*, 350 N.W.2d at 795, even if Defendants filed a "'groundless' suit," *Early Detection Ctr., P.C.*, 403 N.W.2d at 835. For these reasons, Plaintiff cannot plausibly allege either element of an abuse of process claim.

*(c) Silent Fraud (Fourth Cause of Action) and Negligent Misrepresentation (Sixth Cause of Action)*

"That concealment of material facts that one under the circumstances is bound to disclose may constitute actionable fraud is not open to question." *Groening v. Opsata*, 34 N.W.2d 560, 564 (Mich. 1948) (citations omitted). Additionally, a plaintiff asserting negligent misrepresentation must show "that a party justifiably relied to his detriment on information

provided without reasonable care by one who owed the relying party a duty of care." *L. Offs. of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 81 (Mich. App. Ct. 1989) (citation omitted). However, an attorney owes no duty to disclose facts to her client's adversary. *Friedman*, 312 N.W.2d at 591.

Oaklawn hired Defendants as attorneys to collect the debt Plaintiff allegedly owed Oaklawn (Am. Compl. ¶¶ 23–24, 32, 58–67, 72, 94–98, 117–47). Thus, Defendants were Oaklawn's attorneys, even if they were also debt collectors under the FDCPA and MRCPA. As Oaklawn's attorney, Defendants had no obligation to disclose facts to Plaintiff, Oaklawn's adversary. *See Friedman*, 312 N.W.2d at 591. Plaintiff cites no contrary authority (Resp., ECF No. 21 at PageID.349–50). *See Am. Elec. Power Serv. Corp.*, 2022 WL 3794841, at *6. Consequently, Plaintiff fails to state a claim of silent fraud and negligent misrepresentation.

*(d) Interference with Third-Party Beneficiary Rights (Seventh Cause of Action)*

Except for intended third-party beneficiaries, *Schmalfeldt v. N. Point Ins. Co.*, 670 N.W.2d 651, 654 (Mich. 2003), "only parties to a contract may sue upon it." *People's Sav. Bank v. Geistert*, 235 N.W. 888, 892 (Mich. 1931). Thus, even if Plaintiff were a third-party beneficiary to the Cigna–Oaklawn contract, Plaintiff could not sue Defendants for breach of this contract because Plaintiff does not allege that Defendants were parties to it (*see* Am. Compl. ¶ 285). Plaintiff's interference with third-party beneficiary rights claim fails to state a claim.

*(e) Tortious Interference with Contractual Relations (Eighth Cause of Action)*

"The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 848–49 (Mich. Ct. App. 2005) (citations omitted). "One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act

with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Badiee v. Brighton Area Schs.*, 695 N.W.2d 521, 539 (Mich. 2005) (alterations omitted) (quoting *CMI Int'l, Inc. v. Intermet Int'l Corp.*, 649 N.W.2d 808, 812 (Mich. 2002)). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI Int'l, Inc.*, 649 N.W.2d at 812 (citations omitted).

The Amended Complaint attaches an Explanation of Benefits indicating that Oaklawn's contract with Cigna prohibited Oaklawn from billing Plaintiff after the time to submit a claim to Cigna passed (Am. Compl. Ex. 8, ECF No. 17-8 at PageID.269). Plaintiff also alleged that the Cigna–Oaklawn contract prohibited Oaklawn from billing Plaintiff (*id.* ¶ 285). Plaintiff therefore plausibly alleges that Oaklawn breached its contract with Cigna when Oaklawn billed Plaintiff (*id.* ¶¶ 52–58). Nonetheless, Plaintiff does not plausibly allege that Defendants instigated Oaklawn's breach. According to Plaintiff, Oaklawn allegedly breached its contract with Cigna not just by litigating against Plaintiff to collect the debt, but also by sending bills to Plaintiff at the wrong address (*id.* ¶¶ 52–56). Defendants could not plausibly have instigated these breaches because Oaklawn had not yet retained Defendants (*see id.* ¶ 58). As to the debt collection litigation, Oaklawn retained Defendants as attorneys, which implies that Oaklawn controlled Defendants' actions, not vice versa (Am. Compl. ¶¶ 23–24, 32, 58–67, 72, 94–98, 117–47). For these reasons, Plaintiff has not plausibly alleged that Defendants instigated Oaklawn's breach of its contract with Cigna. Hence, Plaintiff has failed to state a claim for tortious interference with a contractual relationship.

*(f) Civil Conspiracy (Fifth Cause of Action)*

Plaintiff must prove a "separate, actionable, tort" on which to base her civil conspiracy claim. *Early Detection Ctr., P.C.*, 403 N.W.2d at 836 (citing *Cousineau v. Ford Motor Co.*, 363 N.W.2d 721, 730 (Mich. Ct. App. 1985)). Because Plaintiff has not done so, she fails to state a claim of civil conspiracy.

**4. <u>Supplemental Jurisdiction</u>**

Defendants argue that '[i]f the Court dismisses Plaintiff's federal FDCPA claims, it should decline to exercise supplemental jurisdiction over the remaining state law claims" (Mot., ECF No. 19 at PageID.312). Because the Court finds that Plaintiff has stated a claim under several provisions of the FDCPA, the Court presently retains jurisdiction of Plaintiff's MRCPA claims, which closely resembles her FDCPA claims. *See* 28 U.S.C. § 1367(a).

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 19) is GRANTED in part and DENIED in part; specifically, the Motion is GRANTED as to Plaintiff's Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, and DENIED as to Plaintiff's First and Second Causes of Action.

**IT IS FURTHER ORDERED** that Defendants shall file an Answer to the First Amended Complaint (ECF No. 17) no later than September 18, 2026.

Dated: August 28, 2026

/s/ Jane M. Beckering
JANE M. BECKERING
United States District Judge