**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

NICOLE GOODWIN,

Plaintiff, | Case No. 1:26-CV-10
v. | Hon. Jane M. Beckering

GOODMAN FROST, PLLC; ROBERT J. GOODMAN; and TIMOTHY J. FROST

Defendants.

---

## ANSWER TO FIRST AMENDED COMPLAINT

Defendant Goodman Frost, PLLC ("Firm"), Robert Goodman and Timothy Frost (jointly, "Defendants"), by and through their counsel Maddin Hauser Roth & Heller, PC, respond to Plaintiff's First Amended Complaint as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against the Defendants pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 and the Michigan Collection Practices Act ("MCPA") for Defendant Goodman Frost PLLC, Mr. Goodman, and Mr. Frost's unlawful conduct. Defendants Goodman Frost PLLC, Mr. Goodman, and Mr. Frost conspired with Oaklawn in attempting to collect an alleged $11,974.46, plus recoverable costs, interest, and/or fees, which it knew were not the Plaintiff's full responsibility. In addition, all Defendants had actual knowledge that the debt was barred by a contract Oaklawn held with Cigna, and Plaintiff was a third-party beneficiary of the contract. Yet after having knowledge communicated to Defendant Goodman Frost PLLC, Mr. Goodman, and Mr. Frost verbally and in writing, they filed litigation in 10th District Court, Calhoun County, Michigan, using false and misleading statements to the state court

and consumers in the state court proceeding coupled with an unfair practice to attempt to obtain a judgment, and thereby ratifying their violations by filing an amended complaint.

**ANSWER:** Denied. Defendants deny that they conspired with Oaklawn, misrepresented the debt, engaged in a predatory scheme, or knowingly pursued a barred debt. Defendants further state that the claims are barred by res judicata and that they acted as Oaklawn's attorneys in a contested collection matter.

2. There was a related action between the parties, ELLA E.M. BROWN CHARITABLE CIRCLE V GOODWIN, 2025-25-05613-GC (10th District Court – Calhoun County), arising from the same date of service, billing, and collection practices at issue in this case. The matter has been closed and is no longer pending.

**ANSWER:** Admitted that a related state-court action arose from the same services and billing dispute and is closed. The judgment entered in that action is final and has preclusive effect as stated below.

3. Plaintiff's offer of judgment was a strategic litigation compromise made to mitigate further economic harm and avoid additional attorney fees, and shift attorney fees to Oaklawn if they refused the offer. It did not constitute an admission of legal liability for the amount demanded in the complaint, nor did it ratify Defendants' representations regarding the full balance.

**ANSWER:** Admitted that Plaintiff made an offer of judgment under MCR 2.405; denied that it was merely a non-preclusive strategic compromise or that it negated the judgment's legal effect. Under Hanley, an accepted, entered, and satisfied offer is final on the merits.

4. On December 8, 2025, Plaintiff Nicole Goodwin offered a stipulation to enter judgment under MCR 2.405 in the State Court Action against her:

a. Sum Certain and Inclusivity. Judgment shall be entered in favor of Plaintiff, and against Defendant in the total amount of $900.00 (comprised of $150.00 emergency co-pay + $750.00 deductible). This amount is inclusive of all costs and interest then accrued as of the date of the service of this offer." (Exhibit 1)

b. Scope limited to Plaintiff's claims only. This offer resolves only the claims asserted by Plaintiff against Defendant in the operative complaint in this action. It does not resolve, affect, waive, or release any counterclaim, cross-claims, third-party claims, or claims by or against any non-parties." (Exhibit 1)

**ANSWER:** Admitted that Plaintiff made the offer and that its stated terms speak for themselves. Defendants deny any characterization that the offer prevented the resulting judgment from having ordinary preclusive effect.

5. On December 17, 2025, Defendant Goodman Frost, PLLC filed their Acceptance of the offer of judgment. (Exhibit 2)

**ANSWER:** Admitted that Goodman Frost accepted the offer on December 17, 2025. The acceptance, together with entry and satisfaction of the judgment, supports finality on the merits.

6. On December 23, 2025, a Proposed Judgment was filed with the court, which was approved to form and substance by both parties. (Exhibit 3)

**ANSWER:** Admitted that the proposed judgment was filed and approved as to form and substance. Defendants deny any allegation inconsistent with the judgment's legal effect.

7. The 10th District Court signed the Proposed Judgement on December 29, 2025. (Exhibit 12)

**ANSWER:** Admitted that the 10th District Court entered the judgment on December 29, 2025. Defendants deny any contrary characterization of that judgment.

8. The judgment did not adjudicate any federal statutory claims, did not resolve any claim concerning Defendants' collection conduct, and did not address the legality of Defendants' debt-collection practices under federal or Michigan law.

**ANSWER:** Denied. The judgment was a final adjudication on the merits, and Plaintiff's related claims arose from the same transaction and could have been raised as counterclaims in the state-court action.

9. Plaintiff expressly alleges and affirms that this action does not challenge, disturb, invalidate, or seek relief from the stipulated judgment entered in the related state-court matter, Ella E.M. Brown Charitable Circle d/b/a Oaklawn Hospital v. Goodwin, Case No. 25-05613-GC (10th District Court, Calhoun County, Michigan), resolving the sum certain of $900.00.

**ANSWER:** Denied. Plaintiff cannot unilaterally limit the preclusive effect of the judgment by characterization, and Defendants were in privity with Oaklawn as its attorneys and agents in the collection action.

10. Plaintiff expressly alleges that this action is not barred by the doctrine of res judicata or claim preclusion. Under Sixth Circuit precedent, a prior state-court judgment precludes a subsequent federal action only where there is a final judgment on the merits involving the same parties or their privies and the same claim or cause of action, meaning claims that were actually litigated or could have been litigated in the prior proceeding.

**ANSWER:** Denied. Paragraph 10 states legal conclusions concerning claim preclusion. To the extent a response is required, the state-court judgment was final on the merits, the claims arose from the same transaction, and Defendants were in privity with Oaklawn.

11. Plaintiff's FDCPA and MCPA claims arise from Defendants' post-default debt-collection conduct, including the content of collection communications, representations made in pleadings, and continuation of collection after dispute and documentary proof of non-liability. These statutory claims arise from Defendants' methods of collection, not from the existence or non-existence of the underlying medical debt.

**ANSWER:** Denied. Plaintiff's claims arise from the same collection transaction, including the collection letter and state-court action. Recharacterizing the claims as challenges to collection methods does not avoid claim preclusion.

12. The related state-court collection action resolved only a narrow sum-certain debt claim and did not adjudicate, and could not have adjudicated, Plaintiff's federal statutory claims under the Fair Debt Collection Practices Act, her claims for statutory damages, or her independent common-law tort claims arising from Defendants' debt-collection conduct, misuse of judicial process, and unauthorized disclosure of confidential medical information. Plaintiff seeks redress here for distinct injuries and violations that were not decided and were not capable of full and fair adjudication in the limited-jurisdiction state-court collection proceeding. Accordingly, because the causes of action, rights vindicated, and damages sought in this case are separate and distinct from those resolved by the stipulated judgment in the state-court action, claim preclusion and issue preclusion do not apply under Sixth Circuit or Michigan law.

**ANSWER:** Denied. Michigan district courts have jurisdiction over counterclaims regardless of amount under MCL 600.8401(2), so these claims could have been raised in the state action. Plaintiff's disclaimer cannot defeat claim preclusion, and Defendants were in privity with Oaklawn as its attorneys and agents.

13. The Michigan 10th District Court collection action was a limited-jurisdiction proceeding focused on a contract debt claim. Plaintiff's federal statutory damages claims under 15 U.S.C. §1692k, including statutory damages and attorney fees, were not litigated, adjudicated, or resolved. The limited scope of the proceeding and the summary nature of the MCR 2.405 judgment prevented full and fair litigation of Plaintiff's federal statutory rights.

**ANSWER:** Denied. Paragraph 13 states legal conclusions concerning the jurisdiction and scope of the state-court proceeding. To the extent a response is required, the court could have adjudicated related counterclaims, and the MCR 2.405 judgment was final on the merits.

14. Defendants Goodman Frost, PLLC, Goodman, and Frost are sued here for their independent statutory misconduct as debt collectors under federal law. Their liability arises from their own representations and litigation conduct. Plaintiff does not seek to impose liability derivative of Oaklawn's contractual claims.

**ANSWER:** Denied. The acts Plaintiff challenges were performed by Defendants in their representative capacity as Oaklawn's attorneys. Plaintiff cannot avoid privity or claim preclusion by relabeling those representative acts as independent misconduct.

15. Regardless of the ultimate contractual merits, Defendants' representations about enforceability and their continuation of collection activity after documentary proof of non-liability constitute independent statutory violations.

**ANSWER:** Denied. Enforceability was a contested legal question, not an established fact Defendants knowingly misrepresented. Advancing an ultimately unsuccessful claim, particularly where a judgment was entered, does not itself establish an FDCPA violation.

16. This action arises from a calculated and predatory scheme by a medical provider and its debt-collection agents to extract payment for medical charges that were contractually barred and

legally unenforceable. Plaintiff Nicole Goodwin sought emergency medical treatment at Oaklawn Hospital, only to be subjected to a series of administrative failures, including negligent registration and a failure to timely bill her insurance provider, Cigna. Despite having actual knowledge that their own contractual breaches prohibited them from billing the patient, Defendants Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost initiated a coercive litigation campaign in Michigan state court to collect nearly $12,000 in unauthorized charges. A complaint must serve as a persuasive opening salvo that informs the court of the nature of the dispute and the specific relief sought.

**ANSWER:** Denied. Defendants deny any calculated or predatory scheme, knowledge that the charges were unenforceable, or improper litigation campaign. Defendants acted in a legitimate effort to collect a disputed debt through authorized legal process.

17. Central to this action is the unauthorized and offensive disclosure of Plaintiff's highly sensitive and protected medical records. Without Plaintiff's consent, authorization, or a valid court order, Oaklawn Hospital intentionally transmitted Plaintiff's complete medical history—including diagnoses, laboratory results, and provider notes—to a third-party law firm engaged in debt collection. This disclosure far exceeded the information reasonably necessary to validate a debt and constituted a flagrant intrusion into Plaintiff's private affairs. The act of disclosure itself is a distinct and actionable event, separate from the underlying billing dispute, and serves as the basis for Plaintiff's common-law privacy and confidentiality claims.

**ANSWER:** Denied. Defendants deny that Oaklawn or Defendants made an unlawful disclosure or that the information provided was unrelated to verification of the invoice and services. Defendants deny any actionable invasion of privacy or confidentiality.

18. Through this litigation, Plaintiff seeks to hold Defendants accountable for systematic violations of the Fair Debt Collection Practices Act (FDCPA) and the Michigan Collection Practices

Act (MCPA). The conduct at issue involves the misuse of the judicial process to pressure a consumer into paying a non-existent debt and the subsequent ratification of these violations through the filing of an amended complaint. By filing meritless pleadings and misleading the state court regarding the enforceability of the debt, Defendants engaged in an abuse of process and silent fraud. This complaint provides the required short and plain statement of the claims showing that Plaintiff is entitled to relief for the economic and emotional harm caused by these deceptive practices.

**ANSWER:** Denied. Defendants deny misuse of judicial process, coercion, meritless or misleading pleadings, silent fraud, and any violation of the FDCPA or MCPA. Filing and prosecuting a contested collection action is a lawful means of debt collection.

19. Ultimately, this lawsuit is brought to vindicate Plaintiff's rights as a consumer and a patient. Plaintiff seeks compensatory damages for the significant emotional distress and financial burden of defending against bad-faith litigation, statutory damages under federal and state collection laws, and exemplary damages for the willful and reckless disregard of her privacy and legal protections. By bringing these claims, Plaintiff intends to ensure that the framework of the litigation clearly establishes the illegality of Defendants' concerted efforts to circumvent insurance contracts through judicial coercion and unauthorized medical disclosures.

**ANSWER:** Denied. Defendants deny that Plaintiff suffered damages caused by unlawful conduct or that she is entitled to compensatory, statutory, exemplary, or other relief.

20. Plaintiff Goodwin is a natural person who lives and works in Calhoun County, Michigan, in the district.

**ANSWER:** Admitted that Plaintiff is a natural person residing in Calhoun County, Michigan. Defendants lack knowledge or information sufficient to admit the allegation concerning where Plaintiff works and therefore deny the same.

21. Plaintiff is a "consumer," as defined in 15 U.S.C. § 1692a(3), in that she is a natural person obligated or allegedly obligated to pay a debt incurred primarily for personal, family, or household purposes.

**ANSWER:** Admitted that Plaintiff is a natural person and that the alleged services were for personal purposes. Defendants deny any remaining legal characterization or allegation inconsistent with this response.

22. Goodman Frost PLLC advertises "Unparalleled reputation for honesty and integrity; governed by FDCPA guidelines, and we maintain its standards unequivocally."[1] Goodman Frost PLLC is a professional limited liability company organized under the laws of the State of Michigan, and its principal place of business is located at 29100 Northwestern Highway, Suite 405, Southfield, MI 48034.

**ANSWER:** Admitted that Goodman Frost, PLLC is a Michigan professional limited liability company with its principal office at the stated address, to the extent public records and the Firm's records so reflect. Defendants lack knowledge sufficient to admit the advertising characterization and deny the same.

23. Goodman Frost, PLLC is a law firm/office. Its Registered Resident Agent is Robert J. Goodman.

**ANSWER:** Admitted that Goodman Frost, PLLC is a law firm and that Robert J. Goodman is its registered resident agent. Defendants deny any remaining allegation or implication of unlawful conduct.

24. Goodman Frost, PLLC represents creditors against consumers in state court litigation in the State of Michigan.

**ANSWER:** Admitted that Goodman Frost, PLLC's practice includes representing creditors in state-court litigation. Defendants deny that this fact establishes unlawful collection conduct or liability under any statute or common-law theory.

25. Defendants Goodman Frost, PLLC, and its attorneys are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6), as their principal business purpose is the collection of debts, and they regularly collect or attempt to collect debts owed or asserted to be owed to another.

**ANSWER:** Paragraph 25 states a legal conclusion to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations as applied to the facts of this case and deny any FDCPA violation.

26. Goodman Frost, PLLC is a "debt collector" under the FDCPA. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013); see also *Kistner v. Law Office of Michael P. Margelefsky*, LLC, 518 F.3d 433, 438 (6th Cir. 2008).

**ANSWER:** Paragraph 26 states a legal conclusion and cites authority to which no responsive pleading is required. To the extent a response is required, Defendants admit that at times Goodman Frost, PLLC acts as a "debt collector."

27. Goodman Frost, PLLC states in its letters to debtors, "GOODMAN FROST, PLLC, is a debt collector." (Exhibit 4).

**ANSWER:** Admitted only that the Firm's letters may contain the quoted language, subject to the exhibit's contents. Defendants deny that the statement is false, misleading, or actionable.

28. Robert J. Goodman is a natural person, not known to be a member of the Armed Services. He is the managing partner at Goodman Frost, PLLC.

**ANSWER:** Admitted that Robert J. Goodman is a natural person not in the armed services and managing partner of the Firm. Admitted that Robert J. Goodman lives in Royal Oak, MI, in Oakland County.

29. Defendant Goodman is a "debt collector" under the FDCPA. See *Heintz v. Jenkins*, 514 U.S. 291 (1995); see also *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013); see also *Kistner v. Law Office of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008).

**ANSWER:** Paragraph 30 states a legal conclusion and cites authority to which no responsive pleading is required. To the extent a response is required, Defendants admit that, from time to time, Mr. Goodman acts as a "debt collector" under the FDCPA and deny the remaining allegations.

30. Timothy J. Frost is a natural person, not known to be a member of the Armed Services. He is a partner of Goodman Frost, PLLC.

**ANSWER:** Admitted that Timothy J. Frost is a natural person not in the armed services and partner of Goodman Frost, PLLC.

31. Defendant Frost is an "aggressive and tenacious lawyer" at Goodman Frost.

**ANSWER:** Denied to the extent Paragraph 32 characterizes Mr. Frost or implies misconduct. Defendants lack knowledge sufficient to admit the source or context of the quoted description and therefore deny the same.

32. Defendant Frost is a "debt collector" under the FDCPA. See *Heintz v. Jenkins*, 514 U.S. 291 (1995); see also *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013); see also *Kistner v. Law Office of Michael P. Margelefsky*, LLC, 518 F.3d 433, 438 (6th Cir. 2008).

**ANSWER:** Paragraph 33 states a legal conclusion and cites authority to which no responsive pleading is required. To the extent a response is required, Defendants admit that from time to time, Mr. Frost acts as a debt collector under the FDCPA.

33. MCL 445.251(g)(xi) includes within the definition of "regulated person" an "attorney handling claims and collection on behalf of a client and in the attorney's own name."

**ANSWER:** Paragraph 34 states a legal conclusion concerning a statute. To the extent a response is required, Defendants deny the allegations to the extent they vary from the verbatim text of the statute.

34. Defendants Goodman Frost, Goodman and Frost each are a "regulated person" under the MCPA. *Misleh v. Timothy E. Baxter & Assocs.*, 786 F. Supp. 2d 1330, 1338 (E.D. Mich. 2011).

**ANSWER:** Denied. Defendants deny that the MCPA applies as alleged, that the Firm is a collection agency under the Michigan Occupational Code, or that the cited authority establishes liability. Claims duplicating the FDCPA allegations need not be addressed separately.

35. ELLA E. M. BROWN CHARITABLE CIRCLE d/b/a Oaklawn Hospital, is a Non-profit Corporation organized under the Laws of the State of Michigan and its principal place of business is located at 200 N MADISON ST, MARSHALL, MI 49068. The resident Agent Name is Gregg Beeg.

**ANSWER:** Admitted that Oaklawn is a Michigan nonprofit corporation with the stated principal office and resident agent, to the extent public records and the pleading so reflect. Defendants deny any remaining allegation.

36. Goodman Frost, PLLC holds itself out to the public that it "has perfected the collection process."




**ANSWER:** Admitted only that the Firm may have used the quoted marketing language. Defendants deny that the statement establishes any unlawful conduct or liability.

37. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

**ANSWER:** Denied. Defendants deny acting through any unpleaded persons or entities, except authorized attorneys and personnel acting within their roles, and deny any resulting liability.

38. Joinder of Plaintiff's claims against Defendants is proper under Fed. R. Civ. P. 20(a)(2) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and common questions of law or fact will arise.

**ANSWER:** Paragraph 39 states a legal conclusion concerning joinder to which no responsive pleading is required. To the extent a response is required, Defendants deny that joinder establishes liability or that Plaintiff has stated a viable claim.

39. This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692, 28 U.S.C. §§1331, as the action arises under the laws of the United States.

**ANSWER:** Paragraph 40 states legal conclusions concerning subject-matter jurisdiction. To the extent a response is required, Defendants do not contest the Court's jurisdiction to hear a properly pleaded federal claim but deny any underlying FDCPA or MRCPA violation.

40. In addition, this Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:** Paragraph 41 states a legal conclusion concerning supplemental jurisdiction. To the extent a response is required, Defendants deny that Plaintiff has stated viable federal or state claims and reserve all objections under 28 U.S.C. § 1367.

41. The state-law claims arise from the same nucleus of operative facts as the federal claims, involve overlapping evidence and witnesses, and are expected to be resolved in a single judicial proceeding. The exercise of supplemental jurisdiction is not barred by 28 U.S.C. § 1367(b), and none of the discretionary grounds for declining jurisdiction under 28 U.S.C. § 1367(c) applies.

**ANSWER:** Paragraph 42 states legal conclusions concerning supplemental jurisdiction. To the extent a response is required, Defendants deny that the alleged state-law claims are viable and deny that the Court must exercise supplemental jurisdiction.

42. Venue and personal jurisdiction over the Defendants in this District:

a. Plaintiff resides in the District.

b. Defendant Goodman Frost PLLC, Mr. Goodman, and Mr. Frost filed litigation in Calhoun County 10th District Court

c. Defendants filed pleadings and motions in the District.

d. Defendant's conduct at issue occurred within the District.

**ANSWER:** Admitted in part that Plaintiff resides in the District and that the state-court action was filed in Calhoun County. Defendants lack knowledge or information sufficient to admit the remaining allegations concerning conduct and filings in the District and therefore deny the same.

43. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Defendants previously initiated litigation against Plaintiff in this District, filed pleadings and motions here, and caused judicial proceedings to occur here. Plaintiff's claims arise directly out of Defendants' conduct in that prior action.

**ANSWER:** Paragraph 44 states a legal conclusion concerning venue. To the extent a response is required, Defendants deny that venue establishes any unlawful conduct, causation, or liability.

44. Plaintiff sought emergency medical treatment from Oaklawn Hospital on March 20, 2023.

**ANSWER:** Admitted that medical records reflect that Plaintiff sought emergency medical treatment from Oaklawn Hospital on or about March 20, 2023 and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

45. Plaintiff at the time of services provided Oaklawn Hospital with her information, including her mailing address, phone number, email address, and insurance information card.

**ANSWER:** Admitted that Plaintiff provided information to Oaklawn at the time of services. On information and belief, Defendants further admit that Plaintiff provided erroneous information to Oaklawn, including erroneous information concerning her insurance.

47. Plaintiff was insured by an Employee Retirement Income Security Act ("ERISA") employer-provided insurance plan underwritten by CIGNA.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 concerning Plaintiff's insurance coverage and therefore deny the same.

48. Oaklawn Hospital does not employ its own emergency room doctors; it contracts with Kalamazoo Emergency Associates ("KEA"), a Professional Corporation of a physician-owned group. Kalamazoo Emergency Associates and Oaklawn bill consumer patients differently.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 concerning Oaklawn's staffing and KEA's billing practices and therefore deny the same.

49. Kalamazoo Emergency Associates billed CIGNA for the services on May 18, 2023, and processed and paid the claim on May 22, 2023. (Exhibit 5 - Redacted).

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 concerning KEA's claim submission and payment and therefore deny the same.

50. Because Kalamazoo Emergency Associates timely billed CIGNA the claim was paid and processed under the plan.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 concerning KEA's claim processing and therefore deny the same.

51. Oaklawn Hospital employees or agents, through negligence or ineptitude during the registration process, did not properly notify Plaintiff Goodwin of any outstanding charges.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 concerning Oaklawn's registration procedures and therefore deny the same. On information and belief, Defendants state that Plaintiff provided inaccurate information concerning her insurance.

52. Oaklawn Hospital generated Account #42192 where they billed for $11,974.46. (Exhibit 6).

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 concerning Oaklawn's account and billing records and therefore deny the same.

53. Oaklawn Hospital claims to have generated and mailed at least three statements to the "863 Gorsline Rd" address. (Exhibit 6)

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 concerning Oaklawn's mailing of statements and therefore deny the same.

54. Plaintiff Goodwin never received those notices.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 concerning Plaintiff's receipt of notices and therefore deny the same.

55. Oaklawn Hospital, its employees, or agents should have received return mail from the United States Postal Service ("USPS") stating that there was no such address.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 concerning USPS mail and Oaklawn's receipt of returned mail and therefore deny the same.

56. Oaklawn Hospital, its employees, or agents should have acted in a timely manner when they received the undeliverable mail and attempted to reach out to Defendant Goodwin, by email, phone, text, or electronic communication in their patient portal to seek updated address and insurance information.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 concerning Oaklawn's internal follow-up procedures and therefore deny the same.

57. Plaintiff Goodwin had no bills, communications, or knowledge that any balance was owed by her until September 13, 2024, which was 1 year, 5 months, and 24 days after she received service, or 543 days.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 concerning Plaintiff's prior knowledge and subjective state and therefore deny the same.

58. On September 13, 2024, Defendant Goodman Frost PLLC sent a letter, Reference Number: 24E01226. (Exhibit 7). The letter was sent to the Plaintiff Goodwin, at the proper address, "8631 Gorsline Rd, Battle Creek, Michigan."

**ANSWER:** Admitted that Goodman Frost, PLLC sent a collection letter on or about September 13, 2024, to the address stated, subject to the letter's contents. Defendants deny any characterization inconsistent with the letter.

59. This letter stated that Plaintiff Goodwin had until October 25, 2024, to dispute the debt by contacting Defendant Goodman Frost PLLC's office. (Exhibit 4).

**ANSWER:** Admitted that the letter advised Plaintiff of a deadline to dispute the debt, subject to the letter's contents. Defendants deny any allegation that the notice was legally deficient.

60. Plaintiff Goodwin reached out to Defendant Goodman Frost PLLC and started communication by phone and email with Defendant Goodman Frost PLLC and Defendant Goodman personally. (Exhibit 13)

**ANSWER:** Admitted that Plaintiff communicated with Goodman Frost, PLLC and Robert Goodman by phone and email. Defendants deny any characterization of those communications as unlawful or harassing.

61. Within the 30-day validation period provided in Defendants' September 13, 2024, letter, Plaintiff disputed the alleged debt in writing and provided insurance documentation demonstrating non-liability.(Exhibit 13)

**ANSWER:** Denied. Defendants deny that Plaintiff submitted a qualifying written dispute as alleged; Exhibit 13 does not establish that proposition. In any event, Defendants provided a detailed invoice and medical records before filing suit.

62. Plaintiff emailed Goodman Frost and emailed correspondence disputing the debt and requesting verification, attaching exhibits showing written communication. (Exhibit 13)

**ANSWER:** Admitted that emails were exchanged concerning the account, but denied that Exhibit 13 establishes a qualifying written dispute or a failure to verify. Plaintiff received verification materials by email, which was a valid communication medium under Regulation F.

63. Plaintiff Goodwin stated that she was shocked that there was a bill and did not understand because she had insurance and had not been given any prior notice.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 concerning Plaintiff's subjective reaction and therefore deny the same. Defendants deny that any communication was unlawful.

64. Defendant Goodman informed her that it had not been billed to insurance and that Plaintiff Goodwin should work on making it billed to insurance. (Exhibit 13)

**ANSWER:** Admitted that Mr. Goodman discussed insurance and billing with Plaintiff. Defendants deny that he admitted the debt was invalid or assumed any duty to provide Plaintiff legal advice.

65. Defendant Goodman agreed to send Plaintiff Goodwin a copy of the detailed invoice. (Exhibit 13)

**ANSWER:** Admitted that Mr. Goodman agreed to send Plaintiff a detailed invoice, subject to the invoice's contents. Defendants deny any remaining allegation or legal implication.

66. Upon receiving the invoice dated September 30, 2024, statement # 21328622, it showed the address listed as "863 Gorsline Rd." which Plaintiff Goodwin brought to the attention of Defendant Goodman and the Defendant firm Goodman Frost PLLC. (Exhibit 6)

**ANSWER:** Admitted that an invoice was sent and that it displayed the address stated, subject to the exhibit's contents. Defendants deny that the address issue establishes any FDCPA or tort violation.

67. During phone calls between Plaintiff Goodwin and Defendant Goodman, several ways to correct the insurance billing problem were discussed. Defendant Goodman entered into a verbal contract that provided Plaintiff Goodwin would keep in touch with his office every two weeks, and worked to have the bill submitted to insurance, the office would take no action on the debt, and would not sue Plaintiff Goodwin. (Exhibit 13)

**ANSWER:** Denied. Defendants deny entering into a binding agreement to suspend all collection activity or forgo suit. Any communications were made in the context of attempting to resolve a disputed account and were subject to the parties' ongoing discussions.

68. Oaklawn created a "Continuity of Care Document" on September 25, 2024, and transmitted the document to Defendant Goodman Frost PLLC, the protected health information containing all notes of the March 20, 2023, for Plaintiff Goodwin. (Exhibit 7 – Redacted copy)

**ANSWER:** Admitted only that Oaklawn transmitted records to Goodman Frost in connection with the account. Defendants deny that the transmission was unlawful, unauthorized, excessive, or actionable.

69. The Continuity of Care Document is a standardized, electronic summary of a patient's essential health information, used to share data between different healthcare providers for better care coordination, especially during transitions like hospital discharge or specialist referrals, containing history, medications, allergies, and problem lists in a human-readable yet machine-processable XML format.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the technical description in Paragraph 69 and therefore deny the same. Defendants deny that the description establishes any violation by them.

70. Continuity of Care Document is a medical record protected under HIPAA.

**ANSWER:** Paragraph 70 states a legal conclusion concerning HIPAA. To the extent a response is required, Defendants deny that the description establishes an actionable violation by any Defendant.

71. That document provided

a. Date of Service

b. Demographics, age, date of birth, sex, etc

c. Medical history

d. Current treatment, laboratory, radiology notice, treating provider notes, systems, diagnosis, physical notes, laboratory order, radiology orders, discharge information, provider information

**ANSWER:** Admitted only that the records may contain categories of information described in Paragraph 71, subject to the records themselves. Defendants deny that the information was unlawfully transmitted or unnecessary to verify the account.

72. Defendant Goodman provided a copy of the invoice and medical records from the visit via email. (Exhibit 6 & Exhibit 7)

**ANSWER:** Admitted that Mr. Goodman provided an invoice and medical records by email. Defendants deny that this failed to verify the debt; the materials identified the services and amount, and electronic delivery was permissible under Regulation F.

73. Plaintiff Goodwin did not provide any release for Defendant Goodman to have access to her protected medical records.

**ANSWER:** Denied. Defendants deny that Plaintiff's personal release was required for counsel to receive account materials from its client for collection and verification, and deny any unlawful access or use of records.

74. Plaintiff Goodwin did not consent to having her medical records sent over an unsecured, unencrypted email.

**ANSWER:** Denied. Plaintiff chose and used email to communicate about the debt, and the record does not establish an unlawful transmission. Regulation F permits email communications where the consumer used email and did not opt out.

75. Defendant Goodman Frost, Defendant Goodman, and Defendant Frost are sending protected health information ("PHI") via unsecured email, subjecting consumers to possible breaches.

**ANSWER:** Denied. Goodman Frost, Robert Goodman, and Timothy Frost deny that sending account materials by email violated any law or subjected Plaintiff to an actionable breach.

76. Standard email lacks 100% encryption, leaving data vulnerable to interception, making it a HIPAA violation for PHI without extra safeguards.

**ANSWER:** Paragraph 76 states a legal conclusion concerning email encryption and HIPAA. To the extent a response is required, Defendants deny the allegations as applied to them and deny any actionable breach. Plaintiff does not cite to any provision of HIPAA that supports her contention that any email concerning the collection of medical debt requires "100% encryption." Under 45 C.F.R. § 164.312(e)(2)(ii), encryption of electronic protected health information (ePHI) in transit is classified as an "addressable" implementation specification, not a "required" one

77. Upon Information and belief, Defendant Goodman Frost PLLC lacks proper access controls, audit controls, integrity controls, ID authentication, and transmission security mechanisms.

**ANSWER:** Defendants deny these allegations.

78. The HIPAA encryption requirements only occupy a small section of the Technical Safeguards in the HIPAA Security Rule (45 CFR §164.312), yet they are some of the most

significant requirements in terms of maintaining the confidentiality of electronic Protected Health Information (ePHI) and for determining whether a data breach is a notifiable incident under the HIPAA Breach Notification Rule.

**ANSWER:** Paragraph 78 states legal conclusions and regulatory assertions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations as applied to them. HIPAA's Privacy Rule expressly permits disclosure of PHI for "payment" purposes, which includes debt collection

79. In addition to being significant requirements, when encryption solutions are implemented that comply with NIST SP 800-111 for data at rest and NIST SP 800-52 for data in transit, the encryption solutions contribute toward compliance with a recognized security framework as required by the 2021 amendment to the HITECH Act (HR 7898).

**ANSWER:** Paragraph 79 states legal conclusions and technical assertions to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations as applied to them or their activities.

80. In the course of providing that treatment, Oaklawn obtained Plaintiff's highly sensitive and confidential medical information, including but not limited to diagnoses, treatment notes, provider observations, laboratory results, radiology records, and discharge information.

**ANSWER:** Admitted that Oaklawn obtained medical information in providing treatment. Defendants lack knowledge or information sufficient to admit the full scope of that information and therefore deny the same.

81. Oaklawn owed Plaintiff a duty under Michigan common law to maintain the confidentiality of Plaintiff's medical information and to refrain from disclosing such information except as authorized by law or by Plaintiff's informed consent.

**ANSWER:** Paragraph 81 states a legal conclusion concerning Oaklawn's duties. Defendants lack knowledge sufficient to admit the alleged duty and deny the same; in any event, the allegation does not establish liability by these Defendants.

82. Without Plaintiff's authorization, without Plaintiff's consent, and without a valid court order or subpoena, Oaklawn intentionally transmitted Plaintiff's complete medical records from the March 20, 2023, encounter to Defendant Goodman Frost, PLLC, a law firm engaged in debt-collection activities.

**ANSWER:** Denied. Defendants lack knowledge sufficient to admit the circumstances of Oaklawn's transmission, deny that receipt by counsel was unauthorized or required a subpoena, and state that records were received for debt verification and collection.

83. The records disclosed went far beyond any information reasonably necessary to identify, bill, or validate an alleged medical debt, and instead included detailed clinical and treatment information wholly unrelated to collection purposes.

**ANSWER:** Denied. The invoice and records were relevant to the services and account being collected, and Defendants deny that the materials exceeded what was reasonably necessary or created an actionable claim.

84. Plaintiff did not execute a HIPAA authorization or any other written release permitting Oaklawn to disclose her full medical records to a third-party debt collector or collection attorney.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiff executed an authorization and therefore deny the same. Defendants deny that the receipt of collection-related records was unlawful.

85. The disclosure of Plaintiff's complete medical records was not required to collect, bill, or verify the existence, amount, or status of any alleged debt.

**ANSWER:** Denied. The invoice and supporting records were relevant to identifying, substantiating, and verifying the services and alleged debt. Defendants deny that their use was unlawful.

86. Plaintiff Goodwin provided Defendant Goodman Frost, PLLC, through Robert J. Goodman, copies of her insurance card and insurance information so the item could be billed.

**ANSWER:** Admitted that Plaintiff provided insurance information to Goodman Frost through Mr. Goodman. Defendants deny any characterization that this established non-liability or required dismissal of the account.

87. Oaklawn Hospital submitted the claim to Cigna on December 12, 2024. (Exhibit 8).

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 concerning Oaklawn's submission to Cigna and therefore deny the same.

88. Cigna Health Care Processed Claim number XXXXXXXXX2666 on December 14, 2024. (Exhibit 8).

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 concerning Cigna's processing and therefore deny the same.

89. Cigna Health Care denied the claim on December 14, 2024. (Exhibit 8).

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 concerning Cigna's claim determination and therefore deny the same.

90. In the Explanation of Benefits ("EOB"), Cigna showed that Plaintiff Goodwin did not owe any amount, $0.00.

**ANSWER:** Defendants lack knowledge or information sufficient to admit the contents and legal effect attributed to the EOB in Paragraph 90 and therefore deny the same. Defendants deny that the EOB alone established that no debt was owed or bound Defendants.

91. The Cigna EOB further stated a reason

a. "AO - HEALTH CARE PROFESSIONAL: **THIS CLAIM WAS NOT RECEIVED ON TIME, SO WE CANNOT PAY THE CLAIM. YOUR CONTRACT WITH CIGNA DOES NOT ALLOW YOU TO BILL THE PATIENT AFTER THE TIME LIMIT**. IF YOU DID SUBMIT THE CLAIM ON TIME, PLEASE RESEND THE CLAIM ALONG WITH PROOF OF TIMELY SUBMISSION TO THE ADDRESS ON THE PATIENT'S ID CARD. PLEASE REFER TO YOUR CONTRACT FOR INFORMATION ON CLAIM FILING DEADLINES." (emphasis added) (Exhibit 8).

**ANSWER:** Admitted only that the EOB may contain the quoted language, subject to the exhibit's contents. Defendants deny that the EOB conclusively established Plaintiff's legal non-liability, the meaning of the Oaklawn-Cigna agreement, or Defendants' knowledge of any contractual bar.

92. Upon Information and Belief, Oaklawn Hospital received the same copy of the EOB that Plaintiff Goodwin received.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 concerning Oaklawn's receipt of the EOB and therefore deny the same.

93. Upon Information and Belief, Oaklawn Hospital had appeal rights they could have used; if they felt Cigna's denial was not proper, they could have appealed, they did not.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 concerning Oaklawn's appeal rights and actions and therefore deny the same.

94. Plaintiff Goodwin provides the EOB to Defendant Goodman Frost, PLLC via Defendant Robert J. Goodman, a copy of the EOB.

**ANSWER:** Admitted that Plaintiff provided an EOB to Mr. Goodman. Defendants deny that providing the EOB conclusively established the legal status of the account or required Defendants to abandon Oaklawn's claim.

95. After the Cigna EOB was provided to Defendant Goodman, Plaintiff Goodwin and Defendant Goodman had a phone call.

**ANSWER:** Admitted that a phone call occurred. Defendants lack knowledge or information sufficient to admit the full contents of the conversation and therefore deny the same.

96. Plaintiff Goodwin stated that conversations with Cigna Claims and the EOB she got stated that she owed nothing for this bill.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96 concerning Plaintiff's statements and subjective understanding and therefore deny the same.

97. Plaintiff Goodwin had been told that, because the hospital failed to timely bill the matter, she had no liability for the service.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97 concerning Plaintiff's conversations with Cigna and therefore deny the same.

98. When Plaintiff Goodwin told Defendant Goodman this, she was told, That's not how I understood it and he went to law school, and she did not, and he had been practicing law for almost 30 years.

**ANSWER:** Denied as stated. Defendants deny that Mr. Goodman belittled or attacked Plaintiff; any statement concerning professional experience did not constitute harassment, intimidation, or an admission that the debt was invalid.

99. Plaintiff Goodwin felt the tone of communication change to being belittled, insulted, and feeling like she was attacked.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99 concerning Plaintiff's subjective feelings and therefore deny the same. Defendants deny that their conduct was insulting or abusive.

100. As a direct result of Defendants' conduct, Plaintiff Goodwin experienced persistent and escalating stress beginning in or about September 2024 and continuing through the pendency of Defendants' collection and litigation activities. Upon Information and belief, Defendant Goodman Frost, PLLC, contacted Oaklawn Hospital about the contract between Oaklawn Hospital and Cigna.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 concerning Plaintiff's distress and alleged communications with Oaklawn and therefore deny the same. Defendants deny causation and any unlawful conduct.

101. Plaintiff experienced ongoing anxiety related to the threatened and actual filing of litigation, including fear of an improper judgment, wage garnishment, damage to credit, and inability to meet basic financial obligations.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 concerning Plaintiff's subjective anxiety and therefore deny the same. Defendants deny that any alleged harm was caused by unlawful conduct.

102. Plaintiff suffered significant sleep disruption, including difficulty falling asleep, frequent nighttime waking, and early-morning waking caused by intrusive thoughts about Defendants' demands and legal threats.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102 concerning Plaintiff's sleep and therefore deny the same. Defendants deny causation and liability.

103. Plaintiff experienced physical manifestations of emotional distress, including nausea, gastrointestinal upset, headaches, of heightened collection activity and court-related communications.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103 concerning Plaintiff's physical symptoms and therefore deny the same. Defendants deny causation and liability.

104. Plaintiff experienced persistent worry and rumination that interfered with her ability to concentrate at work and perform ordinary daily tasks.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104 concerning Plaintiff's concentration and daily activities and therefore deny the same. Defendants deny causation and liability.

105. Plaintiff suffered feelings of humiliation, helplessness, and fear as a result of being sued for amounts she did not believe she legally owed.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105 concerning Plaintiff's feelings and therefore deny the same. Defendants deny that lawful litigation caused compensable harm.

106. Plaintiff experienced increased irritability, emotional exhaustion, and loss of enjoyment of normal activities during the period Defendants pursued collection and litigation.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106 concerning Plaintiff's emotional condition and therefore deny the same. Defendants deny causation and liability.

107. Plaintiff expended substantial time and emotional energy responding to Defendants' communications, gathering documents, contacting her insurer, and preparing to defend herself against the threatened loss of property and financial security.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107 concerning Plaintiff's time and emotional effort and therefore deny the same. Defendants deny causation and liability.

108. Plaintiff's emotional distress was not fleeting or trivial but persisted over an extended period and intensified as Defendants escalated their collection efforts and initiated judicial proceedings.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108 concerning the duration and intensity of Plaintiff's distress and therefore deny the same. Defendants deny causation and liability.

109. Plaintiff's distress was foreseeable given the nature of Defendants' conduct, including the use of litigation pressure and demands for payment of disputed and allegedly unenforceable medical charges.

**ANSWER:** Denied. Defendants deny that any alleged distress was foreseeable, caused by unlawful conduct, or compensable, and deny that their lawful collection efforts created liability.

110. As a direct result of Defendants' conduct, Plaintiff was forced to retain legal counsel to defend against threatened and filed litigation seeking amounts she believed were not legally owed.

**ANSWER:** Denied. Plaintiff's decision to retain counsel was voluntary, and Defendants deny that any unlawful conduct compelled it or makes Defendants responsible for the resulting fees.

111. Plaintiff experienced significant stress and anxiety related to the financial burden of hiring and paying an attorney, including concern about her ability to afford legal representation while meeting ordinary living expenses.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111 concerning Plaintiff's financial and emotional condition and therefore deny the same. Defendants deny causation and liability.

112. Plaintiff experienced heightened emotional distress upon realizing that defending herself would require ongoing legal fees, uncertainty regarding total costs, and the risk of additional expenses if Defendants' litigation continued.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112 concerning Plaintiff's distress and legal expenses and therefore deny the same. Defendants deny causation and liability.

113. The necessity of retaining counsel caused Plaintiff persistent worry, disrupted sleep, and increased anxiety, particularly regarding the possibility of prolonged litigation and escalating legal costs.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113 concerning Plaintiff's sleep and anxiety and therefore deny the same. Defendants deny causation and liability.

114. Plaintiff experienced feelings of fear and helplessness stemming from the realization that she could not adequately protect her rights without professional legal assistance and that failure to do so risked an improper judgment.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114 concerning Plaintiff's fear and helplessness and therefore deny the same. Defendants deny causation and liability.

115. Plaintiff expended substantial emotional energy coordinating with counsel, gathering documents, recounting events, and preparing to defend against Defendants' claims, which further compounded her stress and emotional exhaustion.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115 concerning Plaintiff's emotional expenditure and therefore deny the same. Defendants deny causation and liability.

116. Plaintiff's stress related to hiring and paying an attorney was ongoing and foreseeable, given Defendants' escalation of collection efforts into formal litigation.

**ANSWER:** Denied. Defendants deny that Plaintiff's alleged stress was foreseeable, caused by unlawful conduct, or compensable, and deny that the escalation described was improper.

117. On or about May 15, 2025, Defendant Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost filed a complaint they dated and signed on April 29, 2025, in the 10th District Court, Calhoun County, State of Michigan, against Plaintiff Nicole Goodwin ("State Court Action") (Exhibit 9).

**ANSWER:** Admitted that Goodman Frost, PLLC filed a collection complaint in the 10th District Court on or about May 15, 2025, on Oaklawn's behalf. Defendants deny that the filing was unlawful or that the individuals acted outside their roles as counsel.

118. The State Court Action was filed was captioned Ella E.M. Brown Charitable Circle DBA Oaklawn Hospital v Nicole Goodwin. It was assigned a case number 25-05613-GC.

**ANSWER:** Admitted that the state-court action was captioned as alleged and assigned Case No. 25-05613-GC, subject to the court record.

119. The Complaint alleged four counts

a. Breach of Contract

b. Account Stated

c. Unjust Enrichment

d. Quantum Meruit

**ANSWER:** Admitted that the state-court complaint asserted counts for breach of contract, account stated, unjust enrichment, and quantum meruit, subject to the pleading. Defendants deny any characterization that the claims were improper.

120. The State Court Action Complaint alleges an amount due of $11,974.46, plus costs, interest, and/or fees in each of the four causes of action; however, Defendant Goodman Frost, PLLC, Defendant Goodman, and Defendant Frost had actual knowledge that the debt was barred by Oaklawn Hospital's Contract with Cigna Health Insurance Company.

**ANSWER:** Denied. Defendants deny having actual knowledge that the debt was contractually barred. Whether Oaklawn could bill Plaintiff under its provider agreement with Cigna was a contested legal question, and the amount sought in litigation was not a knowing false representation.

121. Defendant Goodman Frost, PLLC, served the State Court Action Complaint on Plaintiff.

**ANSWER:** Admitted that Goodman Frost, PLLC served the state-court complaint on Plaintiff, subject to the court record. Defendants deny any allegation that service was improper.

122. The filing of the State Court action and complaint against the Plaintiff Goodwin for an amount more than was actually owed, as the Defendants had actual knowledge the debt was barred by contract with Cigna.

**ANSWER:** Denied. Filing the state-court action for the amount claimed was a lawful collection activity and did not become unlawful merely because Plaintiff disputed the amount or later obtained a reduced judgment.

123. On September 18, 2025, Defendant Goodman Frost, PLLC, filed a pre-trial statement.

**ANSWER:** Admitted that Goodman Frost, PLLC filed a pretrial statement on or about September 18, 2025, subject to the court record.

124. In the pre-trial statement, Goodman Frost, PLLC, filed a statement against the court that “Damages: $11,974.46, in addition to accruing cost and interest. Plaintiff also seeks recoverable attorney fees.” (Exhibit 10)

**ANSWER:** Admitted that the pretrial statement contained the quoted damages position, subject to the filing’s contents. Defendants deny that the statement was false, misleading, or made with knowledge of unlawful liability.

125. Defendants Goodman Frost, PLLC, Goodman, and Frost knew that the amount of the debt they filed with the court was not actually due and owing, and they willfully attempted to mislead the court.

**ANSWER:** Denied. Defendants deny that they knew the amount claimed was not due, willfully attempted to mislead the court, or made any false representation. The amount and enforceability of the debt were contested issues for the state court.

126. Plaintiff Goodwin filed her own pre-trial statement. She stated, "Motion to dismiss Plaintiffs' claim as the bill is not legally owed by the defendant due to the Plaintiffs' failure to timely submit the claim to the defendant's insurance, Cigna." (Exhibit 10)

**ANSWER:** Admitted that Plaintiff filed a pretrial statement containing the quoted language, subject to the court record. Defendants deny any remaining characterization or legal implication.

127. Plaintiff Goodwin further stated, "Defendant disputes owing any amount."

**ANSWER:** Admitted that Plaintiff stated she disputed owing an amount, subject to the court record. Defendants deny that the statement established the legal invalidity of Oaklawn's claim.

128. Plaintiff Goodwin further stated, "Insurance (Cigna) Denial letter states the provider breached their contract by failing to file the claim on time, therefore charges cannot be billed to the patient."

**ANSWER:** Admitted that Plaintiff made the quoted statement concerning Cigna's denial, subject to the court record. Defendants deny that the statement conclusively established Defendants' knowledge or Plaintiff's legal non-liability.

129. Plaintiff Goodwin attended a Zoom pre-trial conference on September 24, 2025, and requested a continuance to secure an attorney.

**ANSWER:** Admitted that Plaintiff attended a pretrial conference and requested a continuance, to the extent reflected in the court record. Defendants deny any remaining characterization.

130. Plaintiff Goodwin hired Lighthouse Litigation PLLC under a limited scope agreement to draft a demand letter to Goodman Frost, PLLC in an attempt to get them to dismiss the case, as the debt was barred by contract.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130 concerning Plaintiff's private agreement with Lighthouse

Litigation and therefore deny the same. Defendants deny that the demand letter established any liability.

131. Lighthouse Litigation, PLLC, sent the letter via email to Defendant Goodman and Defendant Frost; no response was provided to the letter.

**ANSWER:** Admitted only that a demand letter was sent by email. Defendants deny that the absence of a separate response constituted an admission, waiver, or evidence of unlawful conduct.

132. Plaintiff Goodwin hired Lighthouse Litigation to defend her in the state court action.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 132 concerning Plaintiff's retention of counsel and therefore deny the same. Defendants deny causation or liability for any resulting fees.

133. Lighthouse Litigation entered its notice of appearance on November 6, 2025, and appeared at a pre-trial conference via Zoom on the same day.

**ANSWER:** Admitted that Lighthouse Litigation filed a notice of appearance and participated in a pretrial conference, to the extent reflected in the court record. Defendants deny any remaining characterization.

134. Defendant Goodman Frost, PLLC and Defendant Goodman filed an amended complaint with the court and served it on Lighthouse Litigation, PLLC.

**ANSWER:** Admitted that Goodman Frost, PLLC and Mr. Goodman filed and served an amended complaint, subject to the court record. Defendants deny that filing or service was unlawful or retaliatory.

135. Defendant Goodman Frost sent their “First request for admission, interrogatories, and request for production of documents to the defendant.” On November 10, 2025.

**ANSWER:** Admitted that Goodman Frost, PLLC served written discovery requests on or about November 10, 2025, subject to the court record. Defendants deny that the requests were improper or abusive.

136. Plaintiff Goodwin and her counsel had to spend time responding to the request for admission and interrogatories.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 136 concerning Plaintiff’s time and effort and therefore deny the same. Defendants deny causation and liability.

137. On December 2, 2025, Plaintiff, through her counsel, had to file an answer to the state action amended complaint.

**ANSWER:** Admitted that Plaintiff, through counsel, filed an answer to the amended complaint, to the extent reflected in the court record. Defendants deny that this procedural step establishes unlawful conduct or recoverable damages. Plaintiff, through the advice of her counsel, paid the debt at issue.

138. Defendant Goodman asked on December 3, 2025, for an Authorization to access Plaintiff's medical records.

**ANSWER:** Admitted that Mr. Goodman requested an authorization for access to medical records, subject to the request’s contents. Defendants deny that the request was improper or unlawful.

139. Plaintiff Goodwin, through her counsel, objects to such an authorization.

**ANSWER:** Admitted that Plaintiff, through counsel, objected to the requested authorization, subject to the record. Defendants deny any remaining characterization or legal implication.

140. Defendant Goodman asked for a more limited Authorization to access Plaintiff's medical records for just the date of service.

**ANSWER:** Admitted that Mr. Goodman requested a more limited authorization concerning the date of service, subject to the request's contents. Defendants deny that the request was improper or unlawful.

141. Plaintiff Goodwin, through her counsel, objects to such an authorization.

**ANSWER:** Admitted that Plaintiff, through counsel, objected to the limited authorization, subject to the record. Defendants deny any remaining characterization or legal implication.

142. Plaintiff Goodwin, through her counsel, on December 8, 2025, made a request for a jury trial.

**ANSWER:** Admitted that Plaintiff requested a jury trial on or about December 8, 2025, subject to the court record. Defendants deny any remaining characterization.

143. On December 23, 2025, a Proposed Judgment was filed with the court, which was approved to form and substance by both parties.

**ANSWER:** Admitted that a proposed judgment was filed on December 23, 2025 and approved as to form and substance, subject to the court record. Defendants deny any contrary legal characterization.

144. Plaintiff Goodwin, through her counsel, on December 8, 2025, filed an Offer of Judgment under MCR 2.405 for the emergency room co-pay $150 and the deductible maximum amount of $750.00

**ANSWER:** Admitted that Plaintiff made an offer of judgment for $900, consisting of the stated amounts, subject to the offer's terms. Defendants deny that any disclaimer in the offer prevented the resulting judgment from having ordinary preclusive effect.

145. Plaintiff Goodwin, through her counsel, on December 9, 2025, sent her first Request for Admission and Interrogatories.

**ANSWER:** Admitted that Plaintiff, through counsel, served written discovery requests on or about December 9, 2025, subject to the court record. Defendants deny any remaining characterization.

146. Defendant Goodman Frost accepted the Offer of Judgment on December 17, 2025.

**ANSWER:** Admitted that Goodman Frost accepted the offer of judgment on December 17, 2025, subject to the court record. Defendants deny any contrary characterization.

147. On December 23, a proposed judgment was filed with the court, which had been approved by both parties as to form and substance.

**ANSWER:** Admitted that a proposed judgment was filed on December 23, 2025 and approved by both parties as to form and substance, subject to the court record. Defendants deny any contrary characterization.

148. The state collection action adjudicated only a narrow monetary claim under Michigan district court jurisdiction, not statutory debt-collection conduct.

**ANSWER:** Denied. Paragraph 148 states a legal conclusion concerning the state-court judgment. The judgment was final on the merits, related claims could have been raised as counterclaims under MCL 600.8401(2), and Defendants were in privity with Oaklawn.

## FIRST CAUSE OF ACTION - DEFENDANT GOODMAN FROST PLLC, ROBERT J. GOODMAN, & TIMOTHY J. FROST VIOLATION OF FAIR DEBT COLLECTION PRACTICE ACT

(15 U.S.C. § 1692 et seq.)

149. Plaintiff incorporates all the above paragraphs of this Complaint as though fully stated herein.

**ANSWER:** Defendants incorporate by reference their responses to the preceding paragraphs as though fully set forth herein.

150. At all relevant times Defendants, in the ordinary course of its business, regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

**ANSWER:** Admitted that Defendants regularly collect or attempt to collect debts on behalf of clients in the relevant capacity. Defendants deny that their conduct violated the FDCPA or any other law.

151. The foregoing acts and omissions of Defendant Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost, constitute numerous and multiple violations of the FDCPA 15 U.S.C. § 1692 et. seq.

**A. Parties and Debt**

a. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

b. The alleged obligation arises from personal medical services and constitutes a "debt" under 15 U.S.C. § 1692a(5).

c. At all relevant times, Defendants regularly collected or attempted to collect consumer debts owed or asserted to be owed to another and are therefore "debt collectors" within the meaning of 15 U.S.C. § 1692a(6).

d. Defendants acted in their capacity as debt collectors, not as providers of legal advice to Plaintiff.

B. **Collection Activity**

a. Defendants attempted to collect an alleged medical debt in the amount of $11,974.46 on behalf of Ella E.M. Brown Charitable Circle d/b/a Oaklawn Hospital through written communications, litigation conduct, and oral representations made in connection with a state-court judicial proceeding.

b. On or about September 13, 2024, Defendant Goodman Frost, PLLC sent Plaintiff a written debt-collection letter via United States mail to Plaintiff's residence, identifying itself as a debt collector and demanding payment of the alleged medical debt. The letter represented, expressly or implicitly, that Plaintiff was legally obligated to pay the full amount demanded and constituted a communication in connection with the collection of a debt within the meaning of 15 U.S.C. §§ 1692a(2), 1692e.

c. After Plaintiff timely disputed the alleged debt and provided information demonstrating that the charges were barred by Oaklawn Hospital's provider contract with Plaintiff's health insurer, Defendants nevertheless continued collection activity rather than ceasing collection pending meaningful verification, in violation of the FDCPA.

d. On or about May 15, 2025, Defendants Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost, acting as debt collectors, filed a civil complaint in the 10th District Court for Calhoun County, Michigan, captioned Ella E.M. Brown Charitable Circle d/b/a Oaklawn Hospital v. Nicole Goodwin, seeking to collect the alleged medical debt of $11,974.46, plus costs, interest, and attorney fees.

e. The filing and prosecution of a civil collection lawsuit to obtain payment of a consumer debt constitutes collection activity under the FDCPA, as litigation is a means by which debt collectors induce payment. The Sixth Circuit has repeatedly recognized that debt-collection litigation and related court filings are subject to the FDCPA

f. After filing the initial complaint, Defendants filed an amended complaint in the state-court action, again asserting that Plaintiff owed $11,974.46 and re-pleading multiple collection theories, despite having received documentation establishing that Plaintiff owed no personal liability for the alleged charges.

g. Defendants further engaged in collection activity by filing pretrial statements and other written submissions to the Michigan court affirmatively representing that Plaintiff owed damages in the amount of $11,974.46, together with costs, interest, and recoverable attorney fees, notwithstanding Defendants' knowledge that the alleged debt was contractually barred and disputed.

h. Defendants represented to the state court and to Plaintiff that the full $11,974.46 was legally due and collectible, despite possessing the Cigna EOB explicitly stating that Oaklawn's contract prohibited billing the patient.

i. In addition to written communications and pleadings, Defendants made oral and verbal representations in connection with the Michigan state-court proceedings and related communications asserting that Plaintiff was legally responsible for the alleged debt and that litigation was a lawful and proper means of collection.

j. Defendants' written mail communications, court filings, amended pleadings, pretrial submissions, and verbal statements were all undertaken **for the purpose of collecting a consumer debt** and constitute a continuous course of collection conduct governed by the FDCPA.

k. Through this course of collection activity, Defendants used false, misleading, and deceptive representations and unfair means in connection with the collection of an alleged debt, including misrepresenting the legal status and enforceability of the debt and pursuing judicial action that could not legally be taken.

**C. Statutory Violations**

a. Defendants attempted to collect an alleged medical debt of $11,974.46 on behalf of Oaklawn Hospital. *15 U.S. C. § 1692e(2) (A)*

**ANSWER:** Denied. Defendants did not falsely represent the character, amount, or legal status of the debt or in any other way violate the FDCPA. The state-court judgment confirms an obligation, and the amount sought in litigation reflected a contested legal position and not a misrepresentation.

152. Defendants represented to the state court and to Plaintiff that the full $11,974.46 was legally due and collectible, despite possessing the Cigna EOB explicitly stating that Oaklawn's contract prohibited billing the patient."

**ANSWER:** Denied. Defendants deny representing that an amount was legally due while knowing the contrary. Whether Oaklawn could bill Plaintiff under its Cigna agreement was disputed, and a good faith litigation position is not an FDCPA misrepresentation.

153. Defendants falsely represented that Plaintiff was legally obligated to pay the alleged balance when Defendants knew or should have known that the provider contract barred patient billing.

**ANSWER:** Denied. Defendants deny that they knew or should have known that the balance was unenforceable and deny that the Cigna materials conclusively established that proposition. Defendants acted on a contested legal claim, a claim that was disputed, in part, because Plaintiff provided Oaklawn with erroneous information that impaired Oaklawn's ability to submit a timely claim.

154. A debt collector violates § 1692e(2)(A) when it attempts to collect sums not legally owed. *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

**ANSWER:** Paragraph 154 states a legal conclusion and cites authority to which no responsive pleading is required. To the extent a response is required, Defendants deny that the cited rule establishes a violation on these facts.

155. Defendants threatened and initiated litigation to collect a debt that could not legally be enforced against Plaintiff.

**ANSWER:** Denied. Filing a collection lawsuit is an action, not a threat, and the fact that litigation may be unsuccessful or produce a reduced judgment does not violate § 1692e(5).

156. Filing a lawsuit on a debt known to be unenforceable constitutes a violation of § 1692e(5). *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014).

**ANSWER:** Paragraph 156 states a legal conclusion and cites authority to which no responsive pleading is required. To the extent a response is required, Defendants deny that filing the action was legally unavailable or violated § 1692e(5).

157. Plaintiff timely disputed the debt in email to Defendants.

**ANSWER:** Denied. Plaintiff compromised the debt by paying it, on the advice of counsel.

158. Defendants failed to provide meaningful verification demonstrating Plaintiff's legal liability before resuming collection and filing suit.

**ANSWER:** Denied

159. Plaintiff Goodwin was provided evidence from Cigna that the debt was barred by contract with Oaklawn, and she had no liability to any part of the debt.

**ANSWER:** Denied. Defendants deny that Plaintiff submitted a qualifying written dispute and deny that they failed to provide verification. Before filing suit, Defendants provided a detailed invoice and medical records; Plaintiff chose email, used it to dispute the account, and received verification materials by email.

160. Litigation activity is "collection activity" subject to § 1692g(b). *Scott v. Trott Law, P.C.*, 60 F. App'x 387, 394 (6th Cir. 2019).

**ANSWER:** Paragraph 160 states a legal conclusion and cites authority to which no responsive pleading is required. To the extent a response is required, Defendants deny that the cited authority makes the challenged litigation a violation of § 1692g(b).

161. Defendants used unfair and unconscionable means by leveraging the judicial process to collect a debt barred by contract, which Plaintiff was a third-party beneficiary of, and insurance law.

**ANSWER:** Denied. Filing and prosecuting a collection lawsuit is a lawful means of debt collection, not an unfair or unconscionable practice. A dispute about the debt makes litigation contested, not unfair.

162. Defendants violated 15 U.S.C 1692f by using unfair and unconscionable means to attempt to collect an alleged debt by withholding a reply to Plaintiff's timely response for validation and verification of the alleged debt before filing a Summons and Complaint in the court of the STATE OF MICHIGAN IN THE 10th DISTRICT COURT.

**ANSWER:** Denied. Defendants did not withhold verification; they provided an invoice and medical records before filing suit. Filing the summons and complaint was not an unfair means of collection.

163. Then, Defendants further knowingly and willfully violated the FDCPA by filing an amended complaint after they knew Plaintiff Goodwin was represented by counsel and again disputed the debt with the EOB from Cigna showing no debt was owed.

**ANSWER:** Denied. Defendants deny knowingly or willfully violating the FDCPA by filing an amended complaint after Plaintiff obtained counsel or supplied the EOB. The amended pleading was ordinary litigation conduct on Oaklawn’s behalf.

164. Defendants Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost engaged in conduct the natural consequence of which was to harass, oppress, and abuse Plaintiff in connection with the collection of an alleged debt, in violation of 15 U.S.C. § 1692d.

**ANSWER:** Denied. Defendants deny engaging in conduct whose natural consequence was to harass, oppress, or abuse Plaintiff. A single disputed conversation and the filing of a collection lawsuit do not satisfy § 1692d. This claim has been dismissed by the Court. See ECF No. 23 at 21-22 (holding that Defendants' litigation conduct and Defendant Goodman's comment were not sufficiently harassing, oppressive, or abusive to violate § 1692d).

165. Defendants' harassing and abusive conduct included, but was not limited to:

a. Continuing to pursue collection litigation after receiving documentary proof that Plaintiff owed no personal liability for the alleged debt;

b. Using the authority and coercive power of judicial process as an intimidation tool rather than as a legitimate means of dispute resolution;

c. Making belittling and demeaning statements to Plaintiff during collection communications, including statements implying Plaintiff's lack of legal education rendered her understanding irrelevant;

d. Escalating collection pressure through litigation after Plaintiff disputed the debt and provided insurance documentation establishing non-liability;

e. Exploiting Plaintiff's lack of representation at the time to exert psychological and economic pressure through threatened and actual court proceedings.

**ANSWER:** Denied. Defendants deny each alleged instance of harassment or abuse. The allegations describe lawful litigation and a disputed communication, not threats of violence, obscene language, repeated calls intended to annoy, or similar conduct targeted by § 1692d.

166. The cumulative effect of Defendants' conduct would cause the least sophisticated consumer to feel intimidated, coerced, and abused, and had the natural consequence of harassing and oppressing Plaintiff in violation of § 1692d.

**ANSWER:** Paragraph 166 states a legal conclusion concerning the least sophisticated consumer. To the extent a response is required, Defendants deny that their conduct would mislead or abuse such a consumer.

167. Defendants' conduct went beyond the mere filing of a collection lawsuit and constituted an abusive course of conduct designed to pressure Plaintiff into paying a debt Defendants knew or should have known was not legally owed.

**ANSWER:** Denied. Defendants deny that their conduct went beyond filing and prosecuting a lawful collection lawsuit or that they pursued an abusive course of conduct.

168. As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1692d, Plaintiff suffered actual damages, including emotional distress, anxiety, humiliation, loss of sleep, and loss of time, and is entitled to statutory damages, costs, and reasonable attorney fees pursuant to 15 U.S.C. § 1692k.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168 concerning Plaintiff's alleged damages and therefore deny the same. Defendants deny causation and entitlement to statutory damages, costs, or fees.

169. Defendants' representations would mislead the least sophisticated consumer into believing the debt was valid and legally enforceable. *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015).

**ANSWER:** Paragraph 169 states a legal conclusion and cites authority to which no responsive pleading is required. To the extent a response is required, Defendants deny that their representations would mislead the least sophisticated consumer.

170. As a direct and proximate result of Defendants' violations of the Fair Debt Collection Practices Act, Plaintiff suffered actual damages, including but not limited to emotional distress, anxiety, humiliation, loss of sleep, and physical manifestations of stress; loss of time responding to unlawful collection efforts; and out-of-pocket expenses incurred defending against an improper lawsuit.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 170 concerning Plaintiff's alleged damages and therefore deny the same. Defendants deny causation and entitlement to relief.

171. Plaintiff is further entitled to statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A), together with costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3).

**ANSWER:** Denied. Plaintiff is not entitled to statutory damages, costs, or attorney fees because Defendants deny any FDCPA violation and deny that Plaintiff can establish entitlement under § 1692k.

## SECOND CAUSE OF ACTION DEFENDANT GOODMAN FROST PLLC, ROBERT J. GOODMAN, & TIMOTHY J. FROST VIOLATION OF MICHIGAN COLLECTION PRACTICE ACT

(M.C.L. § 445.251 et seq.)

172. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

**ANSWER:** Defendants incorporate by reference their responses to the preceding paragraphs as though fully set forth herein.

173. Defendants are “regulated persons’ under MCL 445.251(g)(xi).

**ANSWER:** Denied. Defendants deny that the MCPA applies as alleged or that the cited designation establishes liability. A law firm is not a “collection agency” under the Michigan Occupational Code, and duplicative FDCPA allegations need not be separately addressed.

174. Defendants violated MCL 445.252(e), (f)(i), (f)(ii), and (q) by misrepresenting Plaintiff’s legal liability and filing litigation to collect a non-existent debt.

**ANSWER:** Denied. Defendants deny misrepresenting Plaintiff’s legal liability or filing litigation to collect a nonexistent debt. The debt and its enforceability were contested, and the state-court action was a lawful collection effort.

175. These violations were willful, entitling Plaintiff to damages and attorney fees under MCL 445.257.

**ANSWER:** Denied. Defendants deny any willful violation of the MCPA and deny that Plaintiff is entitled to damages or attorney fees under MCL 445.257.

176. Defendant is a "collection agency" as that term is defined in the Michigan Occupational Code (“MOC”), M.C.L. § 339.901(b).

**ANSWER:** Denied. Goodman Frost, PLLC is a law firm, not a “collection agency” within the Michigan Occupational Code’s definition relied upon by Plaintiff. Defendants therefore deny liability under the MOC.

177. Plaintiff is a debtor as that term is defined in M.C.L. § 339.901(f).

**ANSWER:** Paragraph 177 states a legal conclusion concerning the term “debtor.” To the extent a response is required, Defendants deny that the designation establishes any violation or liability.

178. Defendant's foregoing acts in attempting to collect the alleged debt violated the following provisions of the MOC:

a. M.C.L. § 339.915(e), by making an inaccurate, misleading, untrue or deceptive statement or claim in a communication to collect a debt;

b. M.C.L. § 339.915(f)(i), by misrepresenting in a communication with a debtor the legal status of a legal action being taken or threatened;

c. M.C.L. § 339.915(f)(ii), by misrepresenting in a communication with a debtor the legal rights of the creditor or debtor; and

d. M.C.L. § 339.915(q), by failing to implement a procedure designed to prevent a violation by an employee.

**ANSWER:** Denied. Defendants deny each alleged MOC violation, including any inaccurate statement, misrepresentation, or failure to implement procedures. Plaintiff's MCPA allegations duplicate her FDCPA theories and do not establish an independent claim.

179. Plaintiff has suffered damages as a result of these violations of the MOC.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 179 concerning Plaintiff's damages and therefore deny the same. Defendants deny causation and entitlement to relief.

180. These violations of the MOC were willful.

**ANSWER:** Denied. Defendants deny that any alleged MOC violation was willful and deny that Plaintiff is entitled to enhanced damages or fees.

181. Defendant Goodman Frost PLLC's used an abusive method to collect an alleged debt in violation of M.C.L. § 445.252 (n) when Goodman Frost PLLC' filed a Summons and

Complaint in the STATE OF MICHIGAN IN THE 10th DISTRICT COURT without first verifying and validating the alleged debt as required by 15 U.S.C § 1692g(b).

**ANSWER:** Denied. Defendants did not use an abusive collection method or fail to verify the debt before filing suit. They provided an invoice and medical records, and filing a contested lawsuit was lawful. This specific claim under § 445.252(n) has been dismissed. See ECF No. 23 at 23-24 (holding that § 445.252(n) mirrors § 1692d and Plaintiff failed to state a claim under either).

182. Defendant Goodman Frost PLLC's violated M.C.L. §445.252(q) by failing to implement a procedure designed to prevent each of the above listed MCPA violations by its employees.

**ANSWER:** Denied. Defendants deny that Goodman Frost, PLLC failed to implement procedures or that any alleged MCPA violation occurred. Plaintiff has not pleaded an independent procedure-based violation.

183. Defendants are sued solely for debt-collection conduct governed by the FDCPA and MCPA. Plaintiff does not allege legal malpractice, negligence in the provision of legal services, or breach of professional duty owed to a client.

**ANSWER:** Admitted only that Plaintiff labels her claims as debt-collection claims and does not plead malpractice. Defendants deny any implication that those labels establish a viable MCPA or other claim.

184. As a direct and proximate result of Defendants' willful violations of the Michigan Collection Practices Act, Plaintiff suffered actual damages, including emotional distress, anxiety, humiliation, loss of time, and out-of-pocket expenses.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 184 concerning Plaintiff's damages and therefore deny the same. Defendants deny willfulness, causation, and entitlement to relief.

185. Plaintiff seeks recovery of actual damages, statutory damages where applicable, injunctive relief, and reasonable attorney fees and costs pursuant to MCL 445.257.

**ANSWER:** Denied. Plaintiff is not entitled to actual, statutory, injunctive, attorney-fee, or other relief under MCL 445.257 because Defendants deny any MCPA violation and deny that the statute authorizes the relief sought on these facts.

**The claims in ¶¶ 186-290 were dismissed by the Court's August 28, 2026 Order, ECF 23. To the extent a response is required to the dismissed claims, Defendants deny those allegations, as provided by FRCP 8(b)(3).**

291. WHEREFORE, Plaintiff Nicole Goodwin respectfully requests that judgment be entered in her favor and against Defendants, jointly and severally where permitted by law, and that the Court award the following relief:

**ANSWER:** Denied. Defendants deny that Plaintiff is entitled to judgment, joint and several liability, or any relief because she has not stated a viable claim against Defendants.

292. An award of all compensatory and actual damages proven at trial, including but not limited to:

a. Emotional distress, anxiety, humiliation, loss of sleep, and physical manifestations of stress;

b. Loss of time, loss of productivity, and interference with daily activities;

c. Out-of-pocket expenses incurred responding to unlawful collection activity and defending against improper litigation;

d. Economic harm and litigation-related losses proximately caused by Defendants' conduct.

**ANSWER:** Denied. Defendants deny that Plaintiff suffered compensable actual damages or that any alleged emotional, financial, or litigation-related harm was caused by Defendants' conduct.

293. **Statutory Damages**

a. Statutory damages pursuant to *15 U.S.C. § 1692k(a)(2)(A)* for Defendants' violations of the Fair Debt Collection Practices Act;

b. Statutory damages pursuant to *MCL 445.911(2)* for violations of the Michigan Consumer Protection Act, in the amount of $250.00 or actual damages, whichever is greater;

c. All statutory damages authorized under the Michigan Collection Practices Act, *MCL 445.251 et seq.*

**ANSWER:** Denied. Plaintiff is not entitled to statutory damages under the FDCPA, MCPA, or any other statute because Defendants deny the alleged violations and deny that the cited provisions apply.

294. An award of exemplary damages under Michigan common law to compensate Plaintiff for indignity, humiliation, mental suffering, and emotional harm caused by Defendants' willful, reckless, and malicious conduct, including but not limited to the misuse of judicial process and the unauthorized disclosure of confidential medical information.

**ANSWER:** Denied. Plaintiff is not entitled to exemplary damages because Defendants deny willful, reckless, malicious, or unlawful conduct and deny causation.

295. An award of reasonable attorneys' fees, litigation expenses, and taxable costs as authorized by statute, including but not limited to *15 U.S.C. § 1692k(a)(3)*, *MCL 445.257*, and *MCL 445.911(2)*.

**ANSWER:** Denied. Plaintiff is not entitled to attorney fees, litigation expenses, or taxable costs because Defendants deny liability and deny that the cited statutes authorize recovery on these facts.

296. Declaratory and injunctive relief declaring Defendants' conduct unlawful and enjoining

**ANSWER:** Denied. Plaintiff is not entitled to declaratory or injunctive relief because Defendants deny any unlawful conduct and the pleading does not establish a basis for equitable relief.

297. Defendants from engaging in the deceptive, unfair, or abusive practices alleged herein.

**ANSWER:** Denied. Defendants deny engaging in deceptive, unfair, or abusive practices and deny that an injunction is warranted.

298. An award of pre-judgment and post-judgment interest as permitted by law.

**ANSWER:** Denied. Plaintiff is not entitled to pre-judgment or post-judgment interest absent an underlying entitlement to damages or other relief.

299. Such other, further, and additional relief as the Court deems just, equitable, and proper.

**ANSWER:** Denied. Defendants deny that Plaintiff is entitled to any other or further relief.

WHEREFORE, there being no just cause otherwise, Defendants pray for judgment in their favor and for their costs in defending this action.

## AFFIRMATIVE DEFENSES

Without waiving or limiting any of the foregoing responses or defenses, and without assuming any burden of proof that would otherwise rest with Plaintiff, Defendants assert the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE – Res Judicata / Claim Preclusion

Plaintiff's claims are barred, in whole or in part, by the doctrine of res judicata. The state-court judgment entered on December 29, 2025, in *Ella E.M. Brown Charitable Circle d/b/a Oaklawn Hospital v. Goodwin, Case* No. 25-05613-GC (10th District Court, Calhoun County, Michigan), was a final adjudication on the merits under MCR 2.405. See Hanley v. Mazda Motor Corp., 239 Mich. App. 596, 602 (2000). Plaintiff's FDCPA claims arise from the same transaction—the collection letter and state-court collection action—and could have been raised as compulsory counterclaims in the state-court proceeding. Michigan district courts have jurisdiction over counterclaims regardless of amount in controversy. MCL 600.8401(2). Defendants are in privity with Oaklawn as its attorneys, acting in a principal-agent relationship.

### SECOND AFFIRMATIVE DEFENSE – Failure to State a Claim

Plaintiff's Complaint fails to state a claim upon which relief can be granted under each cause of action asserted. Plaintiff's FDCPA claims fail because filing and prosecuting a debt-collection lawsuit—even one that results in a reduced judgment—does not violate the statute.

### THIRD AFFIRMATIVE DEFENSE – Bona Fide Error (15 U.S.C. § 1692k(c))

To the extent any act or omission by Defendants is determined to have violated any provision of the FDCPA, such violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c). Defendants maintained reasonable procedures to comply with the FDCPA,

including advising Plaintiff of her dispute rights, providing a detailed invoice and medical records upon request, and engaging in good-faith communications regarding the insurance billing issue prior to filing suit. Any alleged error in the amount sought or the legal characterization of the debt was a good-faith legal position on a contested question—namely, whether the Oaklawn-Cigna provider agreement barred patient billing and whether Plaintiff interfered with Oaklawn's ability to get paid on the debt—and not a knowing or reckless misrepresentation.

**FOURTH AFFIRMATIVE DEFENSE – Plaintiff's Interference with Collection and Provision of Inaccurate Insurance Information**

Plaintiff contributed to the circumstances giving rise to this dispute by providing inaccurate or incomplete insurance information during the registration process at Oaklawn Hospital, which resulted in the hospital's inability to timely and accurately bill Plaintiff's insurer, Cigna. According to the record, Oaklawn initially misdirected billing to Blue Cross Blue Shield—an insurer Plaintiff had not used for years—rather than to Cigna, and Plaintiff's own registration information contributed to this error. Additionally, despite Plaintiff's agreement to cooperate in resolving the insurance billing issue, Cigna was unable to obtain necessary billing codes from Oaklawn's billing department, and Plaintiff did not ensure that accurate and complete insurance information was properly communicated to the hospital. These failures interfered with the orderly resolution of the account, prolonged the collection process, and contributed to any alleged injury Plaintiff may have suffered. Defendants are therefore entitled to a reduction or elimination of any damages claimed.

**FIFTH AFFIRMATIVE DEFENSE – Litigation Privilege**

Defendants' conduct in filing, prosecuting, and amending the state-court complaint, propounding discovery, and filing pretrial statements was protected by the litigation privilege. Under Michigan law, statements made in the course of judicial proceedings that are relevant to the matter at issue are absolutely privileged. *Couch v. Schultz*, 193 Mich. App. 292, 294-95 (1992). Defendants' pleadings, filings, and litigation conduct were made in the course of and were relevant to the state-court collection action and are immune from tort liability.

**SIXTH AFFIRMATIVE DEFENSE – Failure to Mitigate Damages**

Plaintiff failed to take reasonable steps to mitigate her alleged damages, including by failing to timely assert her defenses in the state-court action, failing to promptly provide accurate and complete insurance information, and failing to avail herself of other available remedies. Any damages Plaintiff claims to have suffered were caused or exacerbated by her own failure to mitigate.

**SEVENTH AFFIRMATIVE DEFENSE – Reservation of Defenses**

Defendants reserve the right to assert additional affirmative defenses as they become known through the course of discovery or further proceedings in this matter.

WHEREFORE, Defendants Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost respectfully request that the Court dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice, award Defendants their costs and reasonable attorney fees as permitted by law, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

MADDIN, HAUSER, ROTH & HELLER, P.C.

By: */s/ Kathleen H. Klaus*
Kathleen H. Klaus (P67207)
One Towne Square, Fifth Floor
Southfield, MI 48076
Telephone: (248) 359-7520
Email: kklaus@maddinhauser.com
*Attorneys for Defendants Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost*

Dated: September 17, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered to receive electronic notifications in this case.

*/s/ Kathleen H. Klaus*
Kathleen H. Klaus (P67207)