**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

NICOLE GOODWIN,

Plaintiff, Case No. 1:26-cv-10

v. HON. JANE M. BECKERING

GOODMAN FROST, PLLC, ROBERT J. GOODMAN, and TIMOTHY J. FROST,

Defendants.
_______________________________________/

**DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S OPINION AND ORDER [ECF NO. 23] AND BRIEF IN SUPPORT**

Defendants Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost (collectively, "Defendants"), by and through their undersigned counsel, respectfully move this Court for reconsideration of the portion of its Opinion and Order dated August 28, 2026 (ECF No. 23, PageID 370-397) (the "Opinion") that denied Defendants' Motion to Dismiss (ECF No. 19) as to Plaintiff's claims under 15 U.S.C. § 1692g(b) of the Fair Debt Collection Practices Act ("FDCPA").

**Motion**

1. This motion is brought pursuant to W.D. Mich. LCivR 7.4(a) and Fed. R. Civ. P. 59(e) and 60(b).

2. As stated more fully in the accompanying brief in support, reconsideration is warranted on four independent grounds. *First*, Plaintiff's own admissions in the Amended Complaint and its exhibits establish that she initiated and maintained email communications with Defendants about the debt, that she sent her dispute by email, and that she received verification

materials by email. Under the Consumer Financial Protection Bureau's ("CFPB") Regulation F, 12 C.F.R. Part 1006, these facts establish that email was a valid communication medium between the parties. *Second*, the Court's ruling that "in § 1692g(b), Congress required that debt collectors mail, not email, verification" (Opinion at 16) imposed a "mail-only" requirement that conflicts with the CFPB's comprehensive regulatory framework under Regulation F, which took effect on November 30, 2021, and which expressly permits debt collectors to communicate with consumers by email and provides that verification and required disclosures may be conveyed electronically under specified circumstances. *Third*, the Court raised and decided the mail-versus-email textual distinction *sua sponte*—an argument Plaintiff never advanced—thereby violating the principle of party presentation recently reaffirmed by the Supreme Court in *Margolin v. National Association of Immigration Judges*, 608 U.S. 339 (2026). *Fourth*, the Court's determination that Defendants are not in privity with Oaklawn—the dispositive basis for rejecting Defendants' res judicata defense—rested on *McPherson v. Alten Homes, Inc.*, ___ Mich App ____ (Case No. 368756), 2025 WL 3246902 (Mich. Ct. App. Nov. 20, 2025), a case cited by neither party and factually distinguishable from this case. Defendants were never given the opportunity to address whether *McPherson* is analogous, further implicating the party-presentation principle.

3. Defendants therefore respectfully ask the Court to reconsider its August 28, 2026 Opinion.

4. Defendants sought plaintiff's concurrence in the relief sought and plaintiff did not give her concurrence.

**Brief in Support**

Under W.D. Mich. LCivR 7.4(a), a motion for reconsideration may be granted where the movant demonstrates "a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled" and that "correcting the defect will result in a different disposition of the case." LCivR 7.4(a). The movant must demonstrate that the court and parties were misled by pointing to a "palpable defect," which includes situations where the court overlooked or misapprehended material legal authority or controlling law. *Ritchie v. Coldwater Community Schools*, 2013 WL 12421757 (W.D. Mich July 29, 2013), citations omitted.

As set forth below, reconsideration is warranted because the Court's ruling rests on a legal defect the Court decided an issue that no party presented in violation of the principle of party presentation, and because the Court's privity analysis relied on an authority neither party cited that is factually distinguishable from this case.

## I. THE COURT'S RULING ON § 1692G(B) RESTS ON A LEGAL ERROR REGARDING EMAIL AS A PERMISSIBLE COMMUNICATION MEDIUM

The factual record as alleged in the Amended Complaint and its attached exhibits, conclusively establishes that Plaintiff initiated and maintained a course of email communications with Defendants regarding the debt at issue. These admissions demonstrate that email was not a medium unilaterally imposed by Defendants, but was the medium Plaintiff herself chose and consistently used throughout the parties' communications.

Specifically, the Amended Complaint and its exhibits reflect the following:

- Plaintiff "reached out to Defendant Goodman Frost PLLC and started communication by phone and email." (Am. Compl. ¶ 60, PageID 182)
- Plaintiff "disputed the charges by email to Mr. Goodman." (Am. Compl. Ex. 12, ECF, PageID 285.)

- "[A]fter no response, [Plaintiff] emailed again a couple of days later to ensure that the dispute was received, which he finally replied that it was." (*Id.*)
- Plaintiff "emailed Goodman Frost and emailed correspondence disputing the debt." (Am. Compl. ¶ 62, PageID 182.)
- Defendant Goodman "sent the hospital invoice to [Plaintiff's] email." (Am. Compl. Ex. 12, PageID 286.)
- Defendant Goodman "sent me a response email attaching debt verification and my medical records." (Plaintiff's Affidavit, PageID 286.)
- Plaintiff emailed the Explanation of Benefits to Defendant Frost. (Am. Compl. Ex. 12, PageID 287.)
- Lighthouse Litigation sent its demand letter "via email to Defendant Goodman and Defendant Frost." (Am. Compl. ¶ 131, PageID 190.)

These admissions establish three critical facts: (1) Plaintiff chose email as her preferred medium for communicating about the debt; (2) Plaintiff sent her dispute by email; and (3) Plaintiff received verification materials by email.

Despite this clear evidence that Plaintiff initiated and engaged in email communication, the Court *sua sponte* held that "in § 1692g(b), Congress required that debt collectors mail, not email, verification." *See* Opinion, PageID 385. While this conclusion is grounded in the statutory text of § 1692g(b) as originally enacted in 1977, it fails to account for the CFPB's comprehensive regulatory framework under Regulation F, 12 C.F.R. Part 1006, which took effect on November 30, 2021. Regulation F was promulgated specifically to "implement and interpret" the FDCPA's consumer protections, "including by clarifying how they apply to newer communication

technologies." 85 Fed. Reg. 76,887 (Nov. 30, 2020). The Court's ruling imposes a "mail-only" requirement that is inconsistent with this regulatory framework in several critical respects.

*First*, Regulation F defines "communication" broadly. Under 12 C.F.R. § 1006.2(d), a "communication" in the debt collection context means the conveying of information regarding a debt through "any medium." The Official Interpretation of the rule expressly includes email. The CFPB's use of this expansive definition reflects its understanding that the FDCPA's protections are not limited to physical mail.

*Second*, Regulation F establishes specific "safe harbor" procedures under which a debt collector may send emails to consumers. Under 12 C.F.R. § 1006.6(d)(3)-(4), a debt collector may communicate with a consumer by email if certain conditions are met. One of those safe harbors, § 1006.6(d)(4)(i)(A), provides that a debt collector may email a consumer if "the consumer used the email address to communicate with the debt collector about the debt and the consumer has not since opted out[.]" The factual record here satisfies this safe harbor precisely: Plaintiff used her email address to communicate with Defendants about the debt, and there is no allegation that she ever opted out of email communications.

*Third*, and most directly relevant, Regulation F addresses the delivery of validation information and required disclosures. Under 12 C.F.R. § 1006.34(a)(1)(i), a debt collector must provide validation information by "sending the consumer a validation notice in the manner required by § 1006.42." Section 1006.42(a)(1) provides that required disclosures may be sent "in writing or electronically" so long as they are delivered "in a manner that is reasonably expected to provide actual notice, and in a form that the consumer may keep and access later." This provision directly authorizes electronic delivery of the very validation information at issue in § 1692g(b).

*Fourth*, the CFPB's Final Rule expressly stated the Bureau's intent to modernize the FDCPA to account for newer communication technologies. The Bureau explained that "newer communication technologies, such as emails and text messages, may be used in debt collection" and that the rule was designed to "clarif[y] how [consumer protections] apply to newer communication technologies." 85 Fed. Reg. at 76,734, published November 30, 2020. This authoritative statement of regulatory intent underscores that the CFPB—the agency Congress charged with implementing and enforcing the FDCPA—does not interpret the statute as limiting debt collection communications, including verification, to physical mail.

Taken together, these regulatory provisions demonstrate that the Court's interpretation of § 1692g(b) as requiring physical mailing creates a conflict with the CFPB's comprehensive regulatory framework. Where, as here, the consumer herself chose email as the communication medium, sent her dispute by email, and received verification materials through email, the regulatory framework supports treating email delivery as compliant with § 1692g(b). At a minimum, this regulatory framework—which the Court's Opinion did not address—constitutes a "palpable defect" warranting reconsideration under LCivR 7.4(a).

*Finally*, in reaching its conclusion, the Court *sua sponte* drew a distinction between "mail" and "communication" in the FDCPA's text. The Court reasoned that "Congress could have required debt collectors to send consumers verification by a 'communication,' which FDCPA broadly defined as 'conveying of information regarding a debt directly or indirectly to any person *through any medium*'" but instead "specified the medium of transmission—mail." *See* Opinion, PageID 385 (emphasis in original). In support, the Court cited *Lopez-Campos v. Raycraft*, 175 F.4th 713, 723 (6th Cir. 2026) (quoting *Bruce v. Adams & Reese, LLP*), 168 F.4th 367, 383 (6th

Cir. 2026)), for the proposition that "[w]hen Congress deliberately uses different words, we presume those words to have different meanings."

This textual argument was never raised by Plaintiff. Plaintiff's § 1692g(b) claim, as framed in the Amended Complaint, was that Defendants "failed to provide meaningful verification demonstrating Plaintiff's legal liability before resuming collection and filing suit." (Am. Compl. ¶ 158, PageID 195.) Plaintiff's Response brief (ECF No. 21) did not argue that verification was received but through an improper medium. Rather, Plaintiff's theory was that Defendants failed to provide *any* meaningful verification—not that the medium of delivery was deficient. The mail-versus-email distinction was raised by the Court entirely on its own initiative.

## II. THE PRINCIPLE OF PARTY PRESENTATION WARRANTS RECONSIDERATION.

The principle of party presentation is a foundational tenet of our adversarial system. As the Supreme Court has explained, the principle that points not argued will not be considered, "distinguishes our adversarial system of justice from an inquisitorial one." *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in judgment)). Because courts are "essentially passive instruments of government," they "rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'" *United States v. Sineneng-Smith,* 590 U.S. 371, 375-76.

The Supreme Court has recently and repeatedly reaffirmed this principle. In *Clark v. Sweeney*, 607 U.S. 7 (2025) (per curiam), the Court summarily reversed the Fourth Circuit for "granting relief based on a claim that [a party] never asserted and that the [other party] never had the chance to address." *Id.* at 9. The Court held that the appellate court "transgressed the party-presentation principle" by deciding the case on a ground no party had advanced. *Ibid.* Most recently, in *Margolin v. National Association of Immigration Judges,* 608 U.S. 339 (2026) (per curiam), the Supreme Court reaffirmed that "[f]ederal courts adhere to the principle of party presentation," that

courts "rely on the parties to 'frame the issues for decision' and decide 'only the questions presented,'" and that a "'drasti[c]' departure from the principle of party presentation 'constitute[d] an abuse of discretion.'" *Id.* at 343. The Court in *Margolin* emphasized that "[f]ederal courts are not 'roving commissions'" and may not "'sally forth each day looking for wrongs to right.'" *Id.*

The Court's § 1692g(b) ruling presents precisely the kind of departure from party presentation that *Margolin*, *Clark*, and *Sineneng-Smith* prohibit. The Court decided the § 1692g(b) claim on the basis of a mail-versus-email textual distinction that Plaintiff never argued. Plaintiff's theory, as pleaded in the Amended Complaint and briefed in her Response, was that Defendants failed to provide meaningful verification at all, not that verification was provided through an incorrect medium. Specifically, Plaintiff alleged that Defendants "failed to provide meaningful verification demonstrating Plaintiff's legal liability before resuming collection and filing suit." (Am. Compl. ¶ 158, PageID 195). Her Response brief (ECF No. 21) argued that the verification Defendants provided was substantively inadequate. At no point did Plaintiff contend that the *medium* of delivery rendered the verification deficient.

Rather than evaluating whether Defendants provided *meaningful* verification (Plaintiff's actual theory), the Court held that Defendants' verification was deficient because it was delivered by *email* rather than *mail*—a theory Plaintiff never advanced. This is precisely the kind of judicial recasting that the Supreme Court has condemned. By raising the mail-versus-email distinction *sua sponte*, the Court deprived Defendants of the opportunity to brief the issue. Had Plaintiff raised this argument, Defendants would have presented the comprehensive Regulation F framework discussed in Section II above, including the regulatory provisions expressly authorizing electronic delivery of validation information and required disclosures. Defendants were denied that opportunity.

## III. THE COURT'S PRIVITY RULING RESTS ON A FACTUALLY DISTINGUISHABLE CASE THAT NEITHER PARTY CITED

The Court's rejection of Defendants' *res judicata* defense turned entirely on the privity element. The Court found that the first two elements of res judicata were satisfied—the state court judgment was a final adjudication on the merits, and several of Plaintiff's FDCPA claims arose from the same transaction and could have been raised in the prior action. (Opinion at 8-11.) Nevertheless, the Court held that Defendants were not in privity with Oaklawn, relying principally on *McPherson v. Alten Homes, Inc.*, No. 368756, 2025 WL 3246902 (Mich. Ct. App. Nov. 20, 2025). *See* Opinion, PageID 382.

*McPherson* was cited by neither party. *McPherson* involved the legal relationship between an individual shareholder and the corporation he solely owned. After McPherson suffered injuries because a railing collapsed at a rented house, he sued the sole shareholder, Alvin Sallen, who was dismissed because he was not the landlord. McPherson then sued Alten Homes, Inc., the corporation that owned the house. The Michigan Court of Appeals found no privity because Sallen and Alten Homes had different "common potential liability," Sallen could not be held liable for the injuries, whereas Alten Homes could be. 2025 WL 3246902, at *4. The case thus turned on the principle of corporate separateness: a shareholder is a distinct legal person from the corporation he owns.

This case bears no resemblance to *McPherson* in at least four critical respects.

*First*, in *McPherson*, the shareholder and the corporation occupied fundamentally different legal positions with respect to the plaintiff's tort claim—only the corporation could be liable as the landlord. Here, by contrast, every act Plaintiff complains of was performed by Defendants as Oaklawn's attorneys in the debt collection effort. Defendants sent the collection letter on Oaklawn's behalf, filed the state court complaint on Oaklawn's behalf, propounded discovery on

Oaklawn's behalf, and filed the pretrial statement on Oaklawn's behalf. (Am. Compl. ¶¶ 58-60, 117-120, 123-124, 134-137, PageID 182, 189 - 190). Unlike the shareholder in *McPherson*, Defendants' alleged liability arises entirely from acts they took in their representative capacity—not from some independent, individual conduct.

*Second*, *McPherson* involved the corporate-separateness doctrine, which treats a shareholder and its corporation as legally distinct persons. But the attorney-client relationship is "a quintessential principal-agent relationship." *CIR v. Banks*, 543 U.S. 426, 436 (2005). The Supreme Court in *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), expressly recognized that claim preclusion may apply where there is a "pre-existing substantive legal relationship" between the nonparty and a party to the judgment. The attorney-client relationship is precisely such a relationship. *McPherson's* shareholder-corporation analysis does not govern the agent-principal dynamic at issue here.

*Third*, in *McPherson*, Sallen and Alten Homes lacked a "substantial identity of interests" because they occupied different legal positions with respect to the plaintiff's claim. Here, Defendants' and Oaklawn's interests in the debt collection action were entirely aligned. Defendants were collecting the very debt on Oaklawn's behalf, and every alleged FDCPA violation arises from their execution of that shared objective. Under Michigan law, privity exists when a nonparty is "so identified in interest with another that he represents the same legal right." *Peterson Novelties, Inc. v. City of Berkeley*, 259 Mich. App. 1, 12-13 (2003). Defendants plainly represented the same legal right as Oaklawn in the debt collection action.

*Fourth*, the Court applied the general rule from *Howell v. Vito's Trucking*, 386 Mich 37, 45 (1971) that a party appearing in a representative capacity in one action cannot claim the benefit of *res judicata* in a subsequent action involving the same party in his individual capacity. But

*Howell* is not precedential under Michigan law [MCR 7.215(J)(1)] and recognized an exception: this rule is "denied application . . . where a party to one action in his individual capacity and to another action in his representative capacity is in each case asserting or protecting his individual rights." *Id.* (citations omitted). Defendants had a direct personal interest in the collection proceeding—their fee recovery depended on collecting the debt, and, as this very lawsuit demonstrates, a finding that collection conduct was improper exposes them to personal FDCPA liability. Thus, Defendants were effectively protecting their individual rights in both proceedings, and the Howell exception applies.

As discussed more fully above, federal courts "rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'" *Margolin, supra.* The Court's *sua sponte* introduction of *McPherson* presents the same party-presentation concern as its *sua sponte* introduction of the mail-versus-email distinction. Defendants were never given the opportunity to argue that *McPherson* is factually distinguishable, that the *Howell* exception applies, or that the Supreme Court's recognition of preclusion through pre-existing substantive legal relationships in governs over an unpublished state appellate decision about corporate separateness.

If the Court had afforded Defendants the opportunity to address *McPherson*, Defendants would have presented the distinctions set forth above. This failure to allow briefing on the dispositive authority constitutes a palpable defect warranting reconsideration.

## IV. CONCLUSION.

For the foregoing reasons, Defendants respectfully request that this Court reconsider its Opinion and Order. Specifically, Defendants request reconsideration of (a) the Court's ruling denying Defendants' Motion to Dismiss as to Plaintiff's § 1692g(b) claim; and (b) the Court's determination that Defendants are not in privity with Oaklawn for *res judicata* purposes.

**Local Rule 7.3(b)(i) Certificate of Compliance** The undersigned certifies that this motion and supporting brief contain 3140 words, using the word-count feature on Microsoft Word.

Respectfully submitted,

MADDIN, HAUSER, ROTH & HELLER, P.C.

By: *<u>/s/ Kathleen H. Klaus</u>*
Kathleen H. Klaus (P67207)
One Towne Square, Fifth Floor
Southfield, MI 48076
Telephone: (248) 359-7520
Email: kklaus@maddinhauser.com
*Attorneys for Defendants Goodman Frost, PLLC, Robert J. Goodman, and Timothy J. Frost*

Dated: September 17, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered to receive electronic notifications in this case.

<u>/s/ Kathleen H. Klaus</u>
Kathleen H. Klaus (P67207)